IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTRAL VALLEY CHRYSLER-JEEP INC., et al., <br><br> Plaintiff, <br><br> vs. <br><br> CATHERINE E. WITHERSPOON, <br><br> Defendant. | No. CV-F-04-6663 REC/LJO <br><br> ORDER GRANTING MOTIONS TO INTERVENE BY SIERRA CLUB, NATURAL RESOURCES DEFENSE COUNCIL AND ENVIRONMENTAL DEFENSE AND BY BLUEWATER NETWORK, GLOBAL EXCHANGE, AND RAINWATER FOREST ACTION NETWORK (Docs. 17 & 26) |

On July 25, 2005, the court heard the respective motions to intervene filed by Sierra Club, Natural Resources Defense Council, and Environmental Defense and by Bluewater Network, Global Exchange, and Rainforest Action Network.

Upon due consideration of the arguments and the record herein, the court grants the respective motions to intervene.

On December 7, 2004, plaintiffs filed a Complaint for Declaratory and Injunctive Relief against defendant. On February 16, 2005, plaintiffs filed a First Amended Complaint (FAC).

1

Plaintiffs in the FAC include the following automobile dealerships located in Modesto, Turlock, Merced, Madera, Lemoore, Tulare, and Porterville: Central Valley Chrysler-Jeep, Inc.; Kitahara Pontiac GMC Buick, Inc.; Madera Ford Mercury, Inc.; Madera Chevrolet; Frontier Dodge, Inc.; Tom Fields Motors, Inc.; Pistoresi Chrysler Dodge Jeep; Bob Williams Chevrolet; Courtesy Oldsmobile Cadillac, Inc.; Merle Stone Chevrolet, Inc.; Merle Stone Porterville, Inc.; Sturgeon and Beck Incorporated; and Swanson Fahrney Ford, Inc.  General Motors Corporation and DaimlerChrysler Corporation are also plaintiffs.  The Tulare County Farm Bureau and the Alliance of Automobile Manufacturers are also plaintiffs.  The defendant is Catherine E. Witherspoon in her official capacity as Executive Officer of the California Air Resources Board.

The FAC alleges that it is an action for declaratory and injunctive relief under the Supremacy Clause in Article VI of the United States Constitution and 42 U.S.C. § 1983.  The FAC challenges the requirements of A.B. 1493, codified at California Health and Safety Code § 43018.5, and the regulation proposed by the California Air Resources Board (CARB) set forth in Resolution No. 04-28, dated September 24, 2004.  The FAC alleges that CARB has interpreted the statute to require the adoption and enforcement of rules to limit the release of carbon dioxide from new motor vehicles sold in California beginning in the 2009 model year, which starts in calendar year 2008.  The FAC, which is very verbose, alleges the following claims for declaratory and

2

1 injunctive relief:

2     1.   Count I - Preemption under the Energy Policy and Conservation Act of 1975 (EPCA), 49 U.S.C. §§ 329021-32919, specifically Section 32919(a).

    2.   Count II - Preemption under § 209(a) of the Federal Clean Air Act, 42 U.S.C. § 7543(a).

    3.   Count III - Preemption under the foreign policy of the United States and the foreign affairs powers of the Federal Government.

    4.   Count IV - Violation of the Dormant Commerce Clause of the United States Constitution.

    5.   Count V - Violation of the Sherman Act, 15 U.S.C. § 1.

12 The FAC prays for a declaratory judgment that "the regulation adopted by CARB and Defendant on September 24, 2004, in Resolution 04-28 violates federal law" and for a preliminary and permanent injunction enjoining Defendant "from implementing or enforcing the regulation adopted by CARB in Resolution 04-28, or any substantially similar regulation."

18     The Sierra Club, Natural Resources Defense Council, and Environmental Defense (hereinafter sometimes referred to as the Sierra Club Applicants) have filed a motion to intervene in this action as party defendants pursuant to Rule 24, Federal Rules of Civil Procedure.

23     In addition, Bluewater Network, Global Exchange, and Rainforest Action Network (hereinafter sometimes referred to as the Bluewater Applicants) have filed a motion to intervene in this action as party defendants pursuant to Rule 24.

The Sierra Club is a national nonprofit environmental organization with approximately 700,000 members, including thousands of members in California. The Sierra Club is dedicated to exploring, enjoying and protecting the wild places of the earth; to practicing and promoting the responsible use of the earth's ecosystems and resources; to educating and enlisting humanity to protect and restore the quality of natural and human environments; and to using all lawful means to carry out these objectives. One of Sierra Club's major programs is its national Global Warming and Energy Campaign, which seeks to promote solutions to global warming using current and cutting edge technologies, and securing promulgation of the proposed regulatory amendments set forth in Resolution 04-28 (referred to by the movants as the "Pavley regulations") was among the top priorities of this campaign.

National Resources Defense Council (NRDC) has approximately 489,000 members, with 94,000 members in California. NRDC uses law, science and the support of its members to protect wildlife and wild places and to ensure a safe and healthy environment for all living things. One of NRDC's top priorities is to reduce air pollution that endangers public health and welfare and causes global warming.

Environmental Defense (ED) has over 400,000 members nationally, with more than 30,000 in California. ED specializes in the development of innovative, scientifically sound, market-based solutions to environmental problems. ED works extensively

4

on the international, national and state level to address the causes and effects of global warming through its Climate and Air Program.

Bluewater Network is a national non-profit organization dedicated to finding innovative solutions to protecting the earth's finite resources, including halting global warming and reducing air and water pollution. Bluewater Network has over 8,000 member, including 3,000 members in California. A focal point of Bluewater Network's activities is the Global Warming Campaign, which, in January 2001, launched the idea to regulate greenhouse gas emissions from motor vehicles in California.

Global Exchange (GX) is a San Francisco-based human rights organization that promote environmental, political, and social justice. GX has 15,000 members in the United States, including 5,000 members in California. Several of GX's programs target global warming and climate change, including the Jumpstart Ford campaign and the Clean Car campaign. Through these programs, GX promotes the use of alternative-fuel vehicles, including electric and hybrid-electric vehicles, to reduce greenhouse gas emissions.

Rainforest Action Network (RAN) is a non-profit organization that advocates protection of forests and their natural ecosystems. RAN has 15,000 members in the United States of which approximately 10,000 are Californians. RAN's Zero Emission Campaign endeavors to halt global climate change by encouraging the automotive industry to reduce greenhouse gas emissions.

All of the applicants for intervention supported the

5

proposed regulatory amendments during the legislative and administrative processes that led to their passage. Their respective staffs' lobbied to secure the passage of A.B. 1493. Sierra Club, NRDC, ED, and Bluewater Network were recognized as "co-sources" of the bill. Sierra Club, NRDC, ED and Bluewater Network testified at CARB's hearings on the proposed regulatory amendments, and all applicants have worked to educate the public about the importance of A.B. 1493 and the proposed regulatory amendments.

A. <u>Intervention As Of Right</u>.

Rule 24(a), Federal Rules of Civil Procedure, which governs intervention as of right, provides in pertinent part:

> Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the interest is adequately protected by existing parties.

An applicant may intervene as of right pursuant to Rule 24(a) if the following elements are satisfied: (1) the motion must be timely; (2) the applicant must have a "significant protectable interest" relating to the property or transaction which is the subject of the action; (3) the applicant must be situated such that disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by

the parties to the action.  <u>Smith v. Marsh</u>, 194 F.3d 1045, 1049 (9th Cir. 1999).  The court must interpret the rule broadly in favor of intervention.  <u>Forest Conservation Council v. U.S. Forest Service</u>, 66 F.3d 1489, 1493 (9th Cir. 1995).

There is no dispute by plaintiffs that these applications for intervention are timely, that these applicants have a significant protectable interest in the subject of this action, and that the disposition of this action may impair or impede the applicants' ability to protect that interest.

Therefore, the focus of these motions is on the final requirement, i.e., that the applicants' interest will be inadequately represented by the Executive Director of CARB.

With respect to this factor, the Ninth Circuit sets forth the following standards in <u>Southwest Center for Biological Diversity v. Berg</u>, 268 F.3d 810, 822-823 (9th Cir. 2001):

> In determining whether a would-be intervener's interests will be adequately represented by an existing party, courts consider:
>
> (1) whether the interest of a present party is such that it will undoubtedly make all the intervener's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervener would offer any necessary elements to the proceedings that the other parties would neglect.
>
> ... The prospective intervener bears the burden of demonstrating that the existing parties may not adequately represent its interest ... However, the burden of showing inadequacy is 'minimal,' and the applicant

7

>     need only show that representation of its
>     interests by existing parties 'may be'
>     inadequate. In assessing the adequacy of
>     representation, the focus should be on the
>     'subject of the action,' not just the
>     particular issues before the court at the
>     time of the motion.

However, "'a presumption of adequate representation generally arises when the representative is a governmental body or officer charged by law with representing the interests of the absentee.'" Forest Conservation Center v. U.S. Forest Service, 66 F.3d 1489, 1499 (9th Cir. 1995). In Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir.), cert. denied, 540 U.S. 1017 (2003), further explained:

>     The most important factor in determining the
>     adequacy of representation is how the
>     interest compares with the interests of
>     existing parties ... When an applicant for
>     intervention and an existing party have the
>     same ultimate objective, a presumption of
>     adequacy of representation arises ... If the
>     applicant's interest is identical to that of
>     one of the present parties, a compelling
>     showing should be required to demonstrate
>     inadequate representation ....
>
>     There is also an assumption of adequacy when
>     the government is acting on behalf of a
>     constituency that it represents ... In the
>     absence of a 'very compelling showing to the
>     contrary,' it will be presumed that a state
>     adequately represents its citizens when the
>     applicant shares the same interest ... Where
>     the parties share the same ultimate
>     objective, differences in litigation strategy
>     do not normally justify intervention. ....

The Bluewater Applicants contend that, if allowed to intervene, they intend to present an argument that defendant has stated she does not currently intend to include that the

8

1  Bluewater Network applicants believe is "fundamental to
2  preventing preemption of the Greenhouse Gas Statute", to wit:

> that manufacturers may comply with the
> Greenhouse Gas regulations by producing
> vehicles, such as plug-in hybrid electric
> vehicles, that rely on electricity or other
> non-gas powered sources, the regulation of
> which does not related to fuel economy
> standards ... CARB's history of focusing on
> gas powered vehicles, and its failure to make
> this critical argument, demonstrate that the
> Bluewater Applicant's interests will not be
> adequately represented by CARB.

9  In the reply brief, the Bluewater Applicants expand on their
10 position that defendant will not adequately represent their
11 interests:

> The difference of interest between CARB and
> Bluewater Applicants has been demonstrated in
> the history of the Greenhouse Gas Law and the
> drafting of its regulations.  Since the time
> that Bluewater Network first drafted and
> began to work to pass the Greenhouse Gas Law,
> it has been the primary and most vocal
> advocate for non-gas powered vehicle as a
> method of compliance.  In contrast,
> throughout the development of the Greenhouse
> Gas regulations, CARB has failed to seriously
> consider the possibility that automakers can
> achieve emissions reduction targets solely
> with the use of non-gas powered vehicles.
> Based on that assumption, CARB has
> consistently been more focused on developing
> methods of compliance for gas powered
> vehicles ....
>
> It is only through Bluewater Network's
> persistence through written and oral
> presentations and comments, discussions with
> CARB staff, and contributions of technical
> information and studies, that CARB has made
> non-gas powered vehicles a more meaningful
> compliance option ... For instance, at
> Bluewater's request, CARB changed its
> regulations to account for upstream
> greenhouse gas emissions for non-gas powered

9

        vehicles rather than waiting until 20,000 non-gas powered vehicles were on the California roads, as first proposed by CARB ... This full accounting created appropriate incentives for vehicles with the highest climate benefit ... Bluewater's comments and information also resulted in the elimination of 1.2 discount factor for alternative compliance, eliminating an unfair disadvantage for such technologies; guaranteed automakers credit for the electricity use in a plug-in hybrid, giving them the certainty necessary to invest in this new technology; and prompted CARB to give manufacturers credit for emission reductions as a result of electricity use in the first year of the program, rather than the second year, as initially proposed by CARB ....

        CARB's defense of the Greenhouse Gas Regulations retains this same narrow focus. CARB's attorneys have stated that they currently do not intend to include an argument that Bluewater Applicant's believe is fundamental to preventing preemption of the Greenhouse Gas Statute: that manufacturers may comply with the Greenhouse Gas Regulations by producing vehicles, such as plug-in hybrid electric vehicles, that rely on electricity or other non-gas powered sources, the regulation of which does not relate to fuel economy standards ... CARB's history of focusing on gas powered vehicles, and its failure to make this critical argument, demonstrate that the Bluewater Applicant's interests will not be adequately represented by CARB ....

The Bluewater Applicants further argue that defendant will not adequately represent their interests:

        The Bluewater Applicants also have a particular expertise and knowledge base in non-gas powered vehicles that CARB does not possess. This will be critical in raising, developing, and fully fleshing out necessary arguments, including that the Regulations are not preempted because non-gas powered vehicles are a viable compliance option.

10

> This expertise will also be necessary in addressing Plaintiffs' arguments that it is too difficult, too costly, or impossible to comply with the Greenhouse Gas Regulations, especially with regard to the non-gas powered compliance pathway. Just as Bluewater provided an in-depth and independent analysis of the costs of non-gas vehicle compliance options that CARB relied on extensively ..., so too can Bluewater Applicants fulfill such particularized needs in the course of this litigation. CARB does not have limitless man-hours or a limitless budget to devote to this litigation. When faced with a mountain of factual evidence submitted by the many plaintiffs in this action, CARB will have to make choices about how and what to address. Because CARB's priorities and interests differ from Bluewater Applicants' interests, Bluewater Applicants' position will not be fully represented.

The Sierra Club applicants also argue that they have satisfied this factor because their interests and those of defendant are clear and distinct.[1] Applicants contend:

> Sierra Club Applicants seek to promote environmental welfare both in and outside the state of California ....

---

[1] In contending that they have satisfied this factor, the Sierra Club applicants assert that they will be making at least one major dispositive argument in defense of the proposed regulatory amendments that defendant will not be making, to wit: that their proposed motion to dismiss "challenges the ripeness of the instant dispute, based on the fact that the regulations have not been finalized for adoption and CARB will likely seek a waiver from the EPA if the finalized regulations are found to be preempted under Section 209(b) of the Clean Air Act." However, one of the grounds for dismissal of this action raised by defendant in her motion to dismiss is the exact argument described by applicants. Therefore, to the extent that the applicants contend that this factor is satisfied by defendant's failure to raise this proposed ground for dismissal, it is belied by defendant's motion to dismiss. Furthermore, because the regulations have been finally approved by California's Office of Administrative Law, the issue of ripeness is now moot.

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

> Meanwhile, California's greenhouse gas emission law specifically '[r]equires the board to consider the technological feasibility of the regulations and the impacts of the regulations on the economy *of the state*, including specified job, business, and competitive impacts.' ... And '[t]he Air Resources Board's (ARB) mission is to promote and protect the public health, welfare and ecological resources through the effective and efficient reduction of air pollutants in recognition and consideration of the effects on the economy *of the state*.' ... Accordingly, CARB's primary obligation is to consider the interests of California's citizenry, including economic and public welfare concerns. However, many of these interests are different and conflict with Sierra Club Applicants' interests in prioritizing the environment. ...
>
> In addition to their shared interest in protecting California's citizens and resources, Sierra Club Applicants have interests in protecting public health and environmental resources outside of California - an interest CARB lacks ... Sierra Club Applicants have a national presence and scope. CARB does not. It has no presence or legal authority or standing outside of California, and no obligation to consider environmental issues not directly affecting California. CARB's purported interest in other states and countries adopting its standards does not establish a national or global interest, nor do its talks with the Canadian government ....
>
> Furthermore, Sierra Club Applicants' concerns regarding CARB's inability to adequately represent their interests are based on actual instances in which CARB has refused to advocate environmental protection. For example, CARB has declined to enforce zero-emission vehicles mandates, thereby preventing other states from adopting these mandates. ....
>
> ...
>
> The disparities in interests between Sierra

12

> Club Applicants and CARB translate into disparities in defending the Greenhouse Gas Regulations. CARB is legally required to prioritize economic and other public interests of the California citizenry. However, Sierra Club Applicants seek to protect public interests nationwide, and environmental protection is their focal point. Sierra Club Applicants respectfully submit that they will defend the legislation with equal or greater vigor than CARB.
>
> In addition to their disparate interests, Sierra Club Applicants have greater access to a broad range of expertise regarding environmental issues than CARB ... Because of their singular focus, concentration of resources, and national scope, the applicants have a more comprehensive understanding of national and global environmental issues. Such expertise is needed in this case, as the issue of how the Greenhouse Gas Regulations differ from fuel economy regulation is a complex technical determination requiring a global knowledge of environmental issues. Sierra Club Applicants are uniquely positioned to assist the Court in making these crucial determinations.
>
> Given these disparities in obligations and expertise, it is certainly not beyond doubt that CARB will make all of Sierra Club Applicants' arguments in this action ... In fashioning appropriate relief and in settlement discussions (if any), CARB may have to compromise on issues that the applicants would not, because it must limit itself to the interests of California's citizens and cannot consider the interests of Sierra Club Applicants' members in other states.

The court concludes that the applicants have established this factor under the minimal showing required by the decisions cited above. This is especially true with the Sierra Club Applicants. It is clear that both the defendant and the applicants share the same ultimate objective in this litigation,

13

i.e., to defend these amendments against the challenges to their legality based on the preemptive effect of federal laws and based on the alleged violations of federal laws.  Defendant is acting to defend in this lawsuit on behalf of the constituency that it represents, i.e., the citizens of this state.  Applicants admit that part of their membership includes this constituency.  Although the applicants argue that their expertise demonstrates that defendant's defense of these regulations will not be adequate, CARB is the state agency charged by law to promulgate and enforce regulations pertaining to the quality of air in California.  Applicants make no showing that defendant is not experienced in this area or that defendant's expertise is not sufficiently developed to adequately defend the proposed regulatory amendments against the challenges made by plaintiffs in this litigation.  Nonetheless, the applicants have demonstrated that they intend to raise arguments that will not be raised by defendant.  Thus, the Bluewater Applicants have demonstrated that defendant will not present the argument that manufacturers may comply with the proposed regulation by producing vehicles the regulation of which does not related to fuel economy standards, thereby preventing preemption.  The Sierra Club Applicants have demonstrated that they will raise a ripeness challenge to this court's subject matter jurisdiction immediately based on the defendant's failure to seek a waiver from the EPA.  The court concludes that these positions are more than a difference in litigation strategy, especially given the

14

1 Ninth Circuit's position that public interest groups are entitled
2 as of right to intervene in an action challenging the legality of
3 measures they have supported.  See Idaho Farm Bureau Federation
4 v. Babbitt, 58 F.3d 1392, 1397 (9th Cir. 1995).

    B.   Permissive Intervention.

Even if the court's conclusion that these applicants are entitled to intervention as of right is erroneous, the court concludes that these applicants are entitled to permissive intervention.

Permissive intervention is governed by Rule 24(b):

> Upon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common ... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

An applicant who seeks permissive intervention must demonstrate that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims.  Donnelly v. Glickman, 159 F.3d 405, 412 (9th Cir. 1998).  "Even if the applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention ... In exercising its discretion, the district court must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties."  Id.

There is no dispute that the applicants satisfy the three threshold requirements.

Plaintiffs oppose permissive intervention for these applicants on the ground that their intervention will increase the number of briefs in support of defendant on any given motion or issue, much of which will be repetitious. In addition, plaintiffs argue that there is a substantial risk of disputes, undue delay, and prejudice to existing parties if the applicants try to use party status in order to obtain access to the financial records and product plans of the various plaintiffs, including those plaintiffs who have provided confidential business information under seal. Plaintiffs represent that they and defendant are currently working on the terms of a protective order to govern defendant's access to and use of that confidential information. Plaintiffs assert that such a protective order will protect their interests in confidentiality because the protective order would limit access to the relevant confidential information to State officials, "who are accustomed to handling such information and maintaining its confidentiality." However, plaintiffs assert:

> In contrast, plaintiffs do not believe that the confidential business information such as that filed under seal should be made available to the Applicants or that a Protective Order would provide adequate safeguards for the disclosure of such material to the Applicants. For example, the material filed under seal to date relates to such issues as manufacturers' product plans, lead-time requirements, cost projections, and dealers' financial outlook. Although this

16

> information is highly sensitive, plaintiffs recognize that defendant must have some access to it, with appropriate court-ordered limitations.  Defendant's motion to dismiss or transfer this action is based on various assumptions about how the industry will respond to the A.B. 1493 regulations and how CARB's rule affects the dealer plaintiffs and others.  Defendant needs to be able to understand how the facts contained in plaintiffs' confidential business information conflicts with her assumptions.  Applicants, on the other hand, are not involved in the motion to dismiss or transfer, and have no compelling interest in access to confidential business information.
>
> When the case proceeds to the merits, plaintiffs cannot conceive of any arrangement for the treatment of confidential information that would provide adequate protection against the potential disclosure or misuse of the information in these filings by Applicants, other than an Order that limits access to confidential information to defendant and appropriate representatives of defendant.  Disclosing confidential information to defendant under appropriate conditions means disclosing it to State officials whose duties require them to review confidential business information on a regular basis, and who have longstanding protocols in place to protect against disclosure or improper use of information.  Such is not the case with Applicants.  Applicants are private organizations that are not accustomed to handling information of this type, and whose interests and abilities to preserve its confidentiality may be compromised by other competing interests.

The applicants for intervention respond that plaintiffs' concern over "substantial repetition" of arguments and briefs is overstated, noting that many litigations involve more than one party.  The Sierra Club Applicants are represented by a single national law firm that is represented to have over fifty years

17

experience in handling complex and sensitive litigation. Furthermore, the applicants note, they have coordinated their efforts by filing a single reply brief in support of the two motions for intervention, thereby minimizing concerns that the parties and the court will be faced with responding to or reviewing multiple briefs saying essentially the same things.

     The applicants for intervention also respond to plaintiffs' assertion that the applicants cannot be trusted to keep confidential information confidential as absurd, contending that counsel for the respective applicants have been parties to numerous cases involving protective orders in a broad range of complex litigation matters.  The applicants further note that protective orders may be crafted to suit the needs of particular parties, i.e., that the parties may agree to only grant access to specified confidential material.

     The court concludes that the applicants also have demonstrated that they are entitled to permissive intervention.

     However, in so concluding, the court expresses its concern about the risk of undue delay.  The amount of paper already generated in this case is staggering and includes not only the briefs pro and con, but numerous declarations and evidentiary submissions, objections to those declarations and/or evidence, and responses to those objections.  In order to prevent the court and the parties from being overwhelmed, the court will require these Applicants to coordinate their positions with defendant and to only file motions and/or briefs if the defendant refuses to

18

make an argument that the applicants consider relevant.  In imposing this requirement, the court cautions that merely because counsel for the applicants believe that they can word an argument better or that there may be a case that could be cited but was not, counsel for applicants should not file a separate brief.

ACCORDINGLY:

1.  The motions to intervene filed by Sierra Club, Natural Resources Defense Council, and Environmental Defense and by Bluewater Network, Global Exchange, and Rainforest Action Network are granted.

IT IS SO ORDERED.

**Dated: October 20, 2005**             /s/ Robert E. Coyle
668554                                  UNITED STATES DISTRICT JUDGE

19