1

2

3

4

5

6                IN THE UNITED STATES DISTRICT COURT FOR THE

7                     EASTERN DISTRICT OF CALIFORNIA

8

9   CENTRAL VALLEY CHRYSLER-JEEP, )        No. CV-F-04-6663 REC
    INC., et al.,                )
10                               )        ORDER DENYING DEFENDANT'S
                                 )        MOTION TO DISMISS FIRST
11                               )        AMENDED COMPLAINT (Doc. 30)
                    Plaintiff,   )        AND CERTIFYING VENUE ISSUE
12                               )        FOR IMMEDIATE APPEAL
              vs.                )        PURSUANT TO 28 U.S.C. §
13                               )        1292(b)
                                 )
14  CATHERINE D. WITHERSPOON,    )
                                 )
15                               )
                    Defendant.   )
16                               )
    _____)
17

18          On July 25, 2005, the court heard defendant's Motion to

    Dismiss the First Amended Complaint.
19
            Upon due consideration of the record and the arguments of
20
    the parties, the court denies this motion for the reasons set
21
    forth herein.
22
            On December 7, 2004, plaintiffs filed a Complaint for
23
    Declaratory and Injunctive Relief against defendant.  On February
24
    16, 2005, plaintiffs filed a First Amended Complaint (FAC).
25
            Plaintiffs in the FAC include the following automobile
26

                                    1

dealerships located in Modesto, Turlock, Merced, Madera, Lemoore,
Tulare, and Porterville: Central Valley Chrysler-Jeep, Inc.;
Kitahara Pontiac GMC Buick, Inc.; Madera Ford Mercury, Inc.;
Madera Chevrolet; Frontier Dodge, Inc.; Tom Fields Motors, Inc.;
Pistoresi Chrysler Dodge Jeep; Bob Williams Chevrolet; Courtesy
Oldsmobile Cadillac, Inc.; Merle Stone Chevrolet, Inc.; Merle
Stone Porterville, Inc.; Sturgeon and Beck Incorporated; and
Swanson Fahrney Ford, Inc.  General Motors Corporation and
DaimlerChrysler Corporation are also plaintiffs.  The Tulare
County Farm Bureau and the Alliance of Automobile Manufacturers
are also plaintiffs.  The defendant is Catherine E. Witherspoon
in her official capacity as Executive Officer of the California
Air Resources Board.

The FAC alleges an action for declaratory and injunctive
relief under the Supremacy Clause in Article VI of the United
States Constitution and 42 U.S.C. § 1983.  The FAC challenges the
requirements of A.B. 1493, codified at California Health and
Safety Code § 43018.5, and the regulation proposed by the
California Air Resources Board (CARB) set forth in Resolution No.
04-28, dated September 24, 2004.  The FAC alleges that CARB has
interpreted the statute to require the adoption and enforcement
of rules to limit the release of carbon dioxide from new motor
vehicles sold in California beginning in the 2009 model year,
which starts in calendar year 2008.  The FAC, which is very
verbose, alleges the following claims for declaratory and
injunctive relief:

2

1.  Count I - Preemption under the Energy
Policy and Conservation Act of 1975 (EPCA),
49 U.S.C. §§ 329021-32919, specifically
Section 32919(a).

2.  Count II - Preemption under § 209(a) of
the Federal Clean Air Act, 42 U.S.C. §
7543(a).

3.  Count III - Preemption under the foreign
policy of the United States and the foreign
affairs powers of the Federal Government.

4.  Count IV - Violation of the Dormant
Commerce Clause of the United States
Constitution.

5.  Count V - Violation of the Sherman Act,
15 U.S.C. § 1.

The FAC prays for a declaratory judgment that "the regulation

adopted by CARB and Defendant on September 24, 2004, in

Resolution 04-28 violates federal law" and for a preliminary and

permanent injunction enjoining Defendant "from implementing or

enforcing the regulation adopted by CARB in Resolution 04-28, or

any substantially similar regulation."

Defendant has filed a motion to dismiss the FAC on the

following grounds: (1) venue is improper in the Fresno Division

and the case should be transferred to the Sacramento Division,

and (2) the primary jurisdiction doctrine requires dismissal of

Count II.[1]

---

[1]Defendant also moved to dismiss the FAC on the ground that
the case is not ripe because final action had not been taken to
adopt the regulatory amendments set forth in Resolution 04-28 and
for other reasons.  However, in her reply brief, defendant limited
this aspect of her motion to dismiss to a stay pending final
adoption and approval of the proposed regulatory amendments.  Just
prior to oral argument, the plaintiffs and defendant stipulated to
the withdrawal of this ground for dismissal of the action, without

1    **1.   Intra-District Venue**.

2    The FAC alleges in pertinent part:

3          33.  Each of the dealer plaintiffs and
          members of plaintiff Tulare County Farm
4          Bureau are residents of this District, and
          each will suffer harm in this District as a
5          result of Defendant's actions.  Each of the
          manufacturers represented by the Alliance as
6          a plaintiff does business in this District
          and will also suffer harm in this District as
7          a result of CARB's regulations.  Venue in
          this Court is proper under 28 U.S.C. §
8          1391(b).

9    Defendant moves the court to transfer venue of this action

10   from the Fresno Division to the Sacramento Division.  In so

11   moving, defendant concedes that venue in the Eastern District of

12   California is proper.  She also emphasizes that this motion is

13   not based on the convenience of the parties or witnesses.

14   Rather, relying on Rule 3-120(d), Local Rules of Practice,

15   defendant contends that this is a civil action "arising in"

16   Sacramento County and not in any of the counties covered by the

17   Fresno Division of the Eastern District.

18   Plaintiffs have the burden of showing that venue is proper

19   in the Fresno division of the Eastern District of California.

20   Piedmont Label Company v. Sun Garden Packing Company, 598 F.2d

21   491, 496 (9th Cir. 1979); see also Nissan Motor Co., Ltd. v.

22   _____

23   prejudice to its renewal, pending completion of the final approval
     process by September 20, 2005.  By notice filed on September 16,
24   2005, defendant advised the court that California's Office of
     Administrative Law approved the proposed regulatory amendments on
25   September 15, 2005 and that the state administrative process
     necessary to the approval of the regulatory amendments is now
26   complete.  Therefore, the court rules that this action is ripe for
     review based on the grounds initially asserted by plaintiffs.

4

1    <u>Nissan Computer Corporation</u>, 89 F.Supp.2d 1154, 1161 (C.D.Cal.),

2    <u>aff'd on other grounds</u>, 264 F.3d 675 (9th Cir. 2000).[2]

3         Prior to 1990, 28 U.S.C. § 1391(b) provided that

4    federal question civil actions "may be brought only in the

5    judicial district where all defendants reside, or in which the

6    claim arose, except as provided by law."  Section 1391(b) was

7    amended in 1990 to provide, in pertinent part, that federal

8    question civil actions

9         may, except as otherwise provided by law, be
           brought only in (1) a judicial district where
10        any defendant resides, if all defendants
           reside in the same State, (2) a judicial
11        district in which a substantial part of the
           events or omissions giving rise to the claim
12        occurred ..., or (3) a judicial district in
           which any defendant may be found, if there is
13        no district in which the action may otherwise
           be brought.
14

15    Although the parties generally agree that cases construing

16    Section 1391(b) control construction of Local Rule 3-120(d), the

17    parties dispute the applicability of decisions construing Section

18    1391(b) as in effect prior to 1990.  Defendant relies on such

19    cases and plaintiffs argue that those decisions have no value.

20    However, this dispute is immaterial to the resolution of the

21    motion.  In <u>Sutain v. Shapiro and Lieberman</u>, 678 F.2d 115, 117

22         [2]Plaintiffs, citing <u>Murphy v. Schneider Nat'l, Inc.</u>, 362 F.3d
23    1133 (9th Cir. 2004), argue that the court must accept plaintiffs'
      allegations of venue as true as well as any evidence plaintiffs put
24    forward in opposition to the motion to dismiss and to require that
      defendant present evidence in support of the contention that venue
25    in this division is improper. However, <u>Murphy</u> has no relevance to
      the resolution of this motion.  <u>Murphy</u> was discussing a venue
26    motion based on a forum-selection clause, a fact not present in
      this action.

1   (9th Cir. 1982), the Ninth Circuit, quoting <u>Commercial Lighting</u>

2   <u>Products, Inc. v. United States District Court</u>, 537 F.2d 1078,

3   1080 (9th Cir. 1976), construed the term "claim arose" for

4   purposes of Section 1391(b) to mean that venue is proper "'in any

5   district in which a substantial part of the acts, events, or

6   omissions occurred that gave rise to the claim for relief.'"

7   Because the Ninth Circuit's construction of the term "claim

8   arose" for purposes of Section 1391(b) prior to the 1990

9   amendment essentially tracks the current language of Section

10  1391(b), cases from the Ninth Circuit applying Section 1391(b)

11  prior to the amendment remain authoritative.

12      The essential issue is the relevance of harm to the

13  plaintiffs in determining intra-district venue.

14      Defendant contends that where the harm occurs is not

15  relevant to a determination of venue where venue is based on

16  where the claim arises.  In so contending, defendant relies on

17  <u>Leroy v. Great Western United Corp.</u>, 443 U.S. 173 (1979) and

18  <u>District 1, Pacific Coast District, M.E.B.A. v. Alaska</u>, 682 F.

19  797 (9th Cir. 1982).

20      In <u>Leroy</u>, the plaintiff was a Delaware corporation with

21  headquarters in Texas that brought an action in the Northern

22  District of Texas against Idaho state officials challenging an

23  Idaho state statute that imposed restrictions on corporate

24  takeovers of companies having substantial assets in Idaho.  The

25  district court ruled in pertinent part that venue in Texas under

26  Section 1391(b) did not lie because the defendants did not reside

6

in Texas and the claim arose in Idaho.  The Court of Appeals
reversed the district court on this issue, holding that, because
the allegedly invalid restraint against the corporation occurred
in Texas, Texas was the judicial district in which the claim
arose.  The Supreme Court reversed the Court of Appeal, holding
in pertinent part:

> Nor, as the District Court correctly
> concluded, is venue available under §
> 1391(b).  The first test of venue under that
> provision - the residence of the defendants -
> obviously points to Idaho rather than Texas.
> The Court of Appeals reasoned, however, under
> the second relevant test that the claim arose
> in Dallas because that is the place where the
> Idaho officials 'invalidly prevented Great
> Western from initiating a tender offer for
> Sunshine.' ... The court buttressed its
> conclusion by noting that a single action
> against the officials of New York, Maryland,
> and Idaho could not have been instituted in
> any one place unless the claim was treated as
> having arisen in Dallas ....
>
> The easiest answer to this latter argument is
> that Great Western's complaint did not in
> fact raise justiciable claims against any
> officials save those in Idaho.  But that is
> not the only answer.  Although the legal
> issues raised in the complaint challenging
> the constitutionality of the statutes of
> three different States were similar, and the
> convenience of Great Western would obviously
> be served by consolidating the three claims
> for trial in one district, the general venue
> statute does not authorize the plaintiff to
> rely on either of those reasons to justify
> its choice of forum.
>
> In most instances, the purpose of statutorily
> specified venue is to protect the *defendant*
> against the risk that a plaintiff will select
> an unfair or inconvenient place of trial.
> For that reason, Congress has generally not
> made the residence of the plaintiff a basis
> for venue in nondiversity cases ... The

desirability of consolidating similar claims
in a single proceeding may lead defendants,
such perhaps as the New York and Maryland
officials in this case, to waive valid
objections to otherwise improper venue.  But
that concern does not justify reading the
statute to give the plaintiff the right to
select the place of trial that best suits his
convenience.  So long as the plain language
of the statute does not open the severe type
of 'venue gap' that the amendment giving
plaintiffs the right to proceed in the
district where the claim arose was designed
to close, there is no reason to read it more
broadly on behalf of plaintiffs.

Moreover, the plain language of § 1391(b)
will not bear the Court of Appeals'
interpretation.  The statute allows venue in
'the judicial district ... in which the claim
arose.'  Without deciding whether this
language adopts the occasionally fictive
assumption that a claim may arise in only one
district, it is absolutely clear that
Congress did not intend to provide for venue
at the residence of the plaintiff or to give
that party an unfettered choice among a host
of different districts ... Rather, it
restricted venue either to the residence of
the defendants or to 'a place which may be
more convenient to the litigants' - i.e.,
both of them - 'or to the witnesses who are
to testify in the case.' ... In our view,
therefore, the broadest interpretation of the
language of § 1391(b) that is even arguably
acceptable is that in the unusual case in
which it is not clear that the claim arose in
only one specific district, a plaintiff may
choose between those two (or conceivably even
more) districts that with approximately equal
plausibility - in terms of the availability
of witnesses, the accessibility of other
relevant evidence, and the convenience of the
defendant (but *not* of the plaintiff) - may be
assigned as the locus of the claim ....

This case is not, however, unusual.  For the
claim has only one obvious locus - the
District of Idaho.  Most importantly, it is
action was taken in Idaho by Idaho residents
- the enactment of the statute by the

8

legislature, the review of Great Western's
filing, the forwarding of the comment letter
by Deputy Administrator Baptie, and the entry
of the order postponing the effective date of
the tender by Finance Director McEldowney -
as well as the future action that may be
taken in the State by its officials to punish
or to remedy any violation of its law, that
provides the basis for Great Western's
federal claim.  For this reason, the bulk of
the relevant evidence and witnesses - apart
from employees of the plaintiff, and
securities experts who come from all over the
United States - is also located in the State.
Less important, but nonetheless relevant, the
nature of this action challenging the
constitutionality of a state statute makes
venue in the District of Idaho appropriate.
The merits of Great Western's claims may well
depend on a proper interpretation of the
State's statute, and federal judges sitting
in Idaho are better qualified to construe
Idaho law, and to assess the character of
Idaho's probable enforcement of that law,
than are judges sitting elsewhere.

We therefore reject the Court of Appeals'
reasoning that the 'claim arose' in Dallas
because that is where Great Western proposed
to initiate its tender offer, and that is
where Idaho's statute had its impact on Great
Western.  Aside from the fact that these
'contacts' between the 'claim' and the Texas
District fall far short of those connecting
the claim and the Idaho District, we note
that this reasoning would subject the Idaho
officials to suit in almost every district in
the country.  For every prospective offeree -
be he in New York, Los Angeles, Miami, or
elsewhere, rather than in Dallas - could
argue with equal force (or Great Western
could argue on his behalf) that he had
intended to direct his broker to accept the
tender and was frustrated in that desire by
Idaho law.  As we noted above, however, such
a reading of § 1391(b) is inconsistent with
the underlying purpose of the provision, for
it would leave the venue decision entirely in
the hands of plaintiffs, rather than making
it 'primarily a matter of convenience of
litigants and witnesses.' ... In short, the

9

1          District of Idaho is the only one in which
           'the claim arose' within the meaning of §
2          1391(b).

3   443 U.S. at 183-187.

4       District 1 involved the Alaska Marine Highway System, which

5   is owned and operated by Alaska and operates ferries between

6   Washington and Alaska as well as between Alaskan ports.  Many of

7   the System's employees live in Washington, the System has a

8   terminal in Seattle, and much of the maintenance is performed in

9   Seattle.  Alaska enacted a statute providing that no employee of

10  the System may be relieved at a duty station or port outside

11  Alaska.  The union sued Alaska and Alaska officials in the

12  Western District of Washington, contending that the statute was

13  unconstitutional.  The district court denied Alaska's motion to

14  dismiss for improper venue, holding that the claim arose in the

15  Western District of Washington under either a "substantial

16  contacts" standard or a more lenient standard applicable to cases

17  involving challenges to statutes.  The Ninth Circuit reversed the

18  district court, holding in pertinent part:

19          In Leroy ... [t]he Supreme Court acknowledged
            that, under the broadest possible reading of
20          section 1391(b), a claim may arise in two or
            more districts only in the unusual case in
21          which the districts may, with approximately
            equal plausibility in terms of the
22          availability of witnesses, the accessibility
            of other relevant evidence, and the
23          convenience of the defendant (but not of the
            plaintiff), be called the locus of the claim.
24          In such a case, the plaintiff may select the
            forum from among these districts.  The Court
25          held, however, that Leroy was not the unusual
            case and that the claim in that case arose in
26          Idaho, not Texas.

First, the Court noted that all of the
defendants' acts were, and their enforcement
of the statute would be, in Idaho.  For that
reason, most of the relevant evidence and
witnesses, besides employees of the plaintiff
and securities experts, were in Idaho.
Second, in deciding the constitutionality of
an Idaho statute, federal judges in Idaho are
better qualified to construe the statute and
to assess the character of Idaho's
enforcement than judges elsewhere.  The Court
rejected the argument that venue lay in Texas
because that was where the tender offeror
suffered harm, noting those contacts with
Texas fell 'far short' of the contacts with
Idaho and that such reasoning would subject
the Idaho officials to suit in many different
districts ....

The analysis in Leroy indicates that venue in
this case lies only in Alaska.  First,
because the enactment of the 'Change Port'
statute was, and any enforcement will be, in
Alaska, most of the evidence and witnesses
are there.  Second, it would be preferable
for a federal judge in Alaska to decide these
claims rather than for one in Washington to
do so.  Although the statute in this case
does not seem on its face susceptible of
narrowing interpretations, we cannot say that
the Alaska courts, or a district judge in
Alaska, could not read the statute narrowly
so as to save it from possible constitutional
infirmity.  Thus, even though Alaska appears
to have been able to defend the statute's
constitutionality in Seattle, the State of
Washington cannot be called the locus of
these claims as plausibly as Alaska.

Since Leroy, several courts have held, in
cases involving challenges to the
constitutionality or application of state
statutes, that venue was proper where the
effects of the statutes were felt as well as
where they were enacted and administered ...
Each of these cases, however, involved
districts in only one state.  Thus, the
concern in Leroy that federal judges in a
state are better suited to rule on that
state's statutes than are judges elsewhere
was inapplicable.  Moreover, some of the

11

1          cases failed to discuss Leroy ... To the
           extent that these cases are inconsistent with
2          Leroy, we decline to follow them.

3          This court has stated that a claim arises 'in
           any district in which a substantial part of
4          the act, events, or omissions occurred that
           gave rise to the claim for relief.' ... This
5          'substantial contacts' test suggests that a
           claim may sometimes arise in more than one
6          district.  Leroy did not indicate what
           constitutes the unusual case in which a claim
7          may do so ... Thus, it is unclear what effect
           Leroy had on the 'substantial contacts' test.
8          However, we need not decide that question in
           this case.  We merely hold that, under the
9          analysis of Leroy, venue in this case,
           involving a constitutional challenge to an
10         Alaska statute, lies only in Alaska.

11  682 F.2d at 798-799.

12       Relying on <u>Leroy</u> and <u>District 1</u>, defendant argues that a

13  claim challenging the propriety of a state law does not "arise"

14  where its effects are felt:

15         The location of a state law's effects is
           simply not relevant to venue.  To say
16         otherwise would allow plaintiffs to challenge
           state laws wherever they please.  This would
17         make restrictions on venue meaningless.  And
           it would be bad policy.  After all, as the
18         Supreme Court reminds us, the purpose of
           venue provisions is to protect the <u>defendant</u>
19         from improper venue choices ....

20         In this case, these same principles are at
           play.  Plaintiff Alliance of Automobile
21         Manufacturers brings this case on behalf of
           its members - including plaintiff General
22         Motors Corporation and DaimlerChrysler
           Corporation - who are headquartered
23         throughout the country and who build
           automobiles throughout the country as well
24         ... If venue were appropriate where the
           effects of the challenged proposed regulatory
25         amendments were felt, venue would also be
           appropriate throughout the country.  Such a
26         construction is both implausible and unfair.

                                    12

Instead, the question is where 'a substantial part of the acts, events, or omissions occurred that gave rise to the claim for relief.' ... Here, Plaintiffs bring a facial challenge to the Air Resources Board's proposed regulatory amendments.  Plaintiffs have sued the Air Resources Board's Executive Officer, the person who would issue the final regulatory amendments and who would be responsible for enforcing the then-final regulatory amendments.  Thus, the acts that give rise to Plaintiffs' claims are defendant's Witherspoon's acts to adopt these proposed regulatory amendments.  Defendant's Witherspoon's office and, thus, official residence are in Sacramento ... Within this District, Sacramento is the place where defendant Witherspoon and her staff have taken steps towards adopting these proposed regulatory amendments ... Thus, the acts within this District that Plaintiffs challenge have occurred (and will occur) in Sacramento.  These are the acts that gave rise to Plaintiffs' claims.  And so venue within this District is proper only in the Sacramento District.

However, as plaintiffs argue, the facts in Leroy and in District 1 are sufficiently different from those before the court with respect to the issue of venue to make these cases inapplicable in resolving this motion.  Specifically, this action does not involve an attempted challenge to a state statute in a district court sitting in an entirely different state.  Here, the issue is whether venue is proper in one division as opposed to the other division of the same district court.  The facts of Leroy and District No. 1 are simply too different from those before the court to make either case controlling in the determination of intra-district venue in this action.

Rather, the court concludes that proper intra-district venue

13

1   in this action is controlled by the analysis set forth in <u>Bay</u>

2   <u>County Democratic Party v. Land</u>, 340 F.Supp.2d 802 (E.D.Mich.

3   2004).[3]

4       In <u>Bay City Democratic Party</u>, political parties and other

5   organizations brought a Section 1983 action against Michigan's

6   Secretary of State and Director of Elections, alleging that

7   Michigan's intended provision ballet procedure would violate Help

8   America Vote Act.  The district court rejected the defendants

9   contention that venue was proper only in the judicial district in

10  which the Secretary of State resides, i.e., where the capitol is

11  located.  In so ruling, the district court held in pertinent

12  part:

13          The defendants also claim that no part of the
            claim has occurred in this district since the
14

_____

15      [3]Plaintiffs also refer the court to <u>Myers v. Bennett Law</u>
        <u>Offices</u>, 238 F.3d 1068, 1075-1076 (9th Cir. 2001), wherein the Ninth
16      Circuit held in pertinent part

17          Under [Section 1391(b)], venue is proper in a
            judicial district if 'a substantial part of
18          the events or omissions giving rise to the
            claim occurred' in that district. 28 U.S.C. §
19          1392(b)(2); <u>see also</u> <u>Lamont v. Haig</u>, 590 F.2d
            1124,    1134-35    (D.C.Cir.    1978)('the
20          substantiality of the operative events is
            determined    by    assessment    of    their
21          ramifications for efficient conduct of the
            suit').  With this policy in mind at least one
22          court has found that in a tort action, the
            locus of the injury was the relevant factor
23          ... As noted above, at least one of the
            'harms' suffered by Plaintiff is akin to the
24          tort of invasion of privacy and was felt in
            Nevada.  Accordingly, a substantial part of
25          the events giving rise to the claim occurred
            in Nevada.  Thus, venue was proper.
26

                                14

election directives were drafted in and distributed from Lansing, and no voter's provisional ballot has been ignored so no injury has occurred yet.  However, the language of Section 1391(b)(2) - which permits venue to be laid in a district 'in which a substantial part of the events giving rise to the claim occur' - has been interpreted by the Sixth Circuit to mean a substantial connection to the claim.  After the 1990 amendments to the venue statute, courts 'no longer ask which district among the two or more potential forums is the best venue.  Rather they ask whether the district the plaintiff chose has a substantial connection to the claim, *whether or not other forums had greater contacts*.'  First of Mich., 141 F.3d at 263 ... To establish a substantial connection to the claim, it is generally sufficient to demonstrate that injury or loss alleged in the lawsuit occurred in the chosen venue.  Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 41-43 (1st Cir. 2001).  In cases involving state officials, a substantial connection to the claim occurs not only where the 'triggering event' takes place, but also where the effects of the decision are felt.  See McClure v. Manchin, 301 F.Supp.2d 564, 569 (N.D.W.Va. 2003)(rejecting secretary of state's claim that a state election law challenge must be brought in the district where the state government sits); Emison v. Catalano, 951 F.Supp. 714, 721 (E.D.Pa. 1996)(suits challenging official acts may be brought in the district where the effects of the challenged statute are brought [sic] despite being enacted elsewhere); School Dist. of Philadelphia v. Pennsylvania Milk Marketing Bd., 877 F.Supp. 245, 249 (E.D.Pa. 1995)(rejecting the argument that venue is proper only where official decision was made).  In this case, the effects of the election directive are felt statewide, including within Bay County where one of the plaintiffs is located.

340 F.Supp.2d at 808-809.

The court has reviewed the record in this action and

15

concludes that plaintiffs have demonstrated that venue is proper

in the Fresno Division of the Eastern District of California

under the standards articulated in Bay City Democratic Party.

Consequently, the court denies defendant's motion to dismiss

this action on the ground of improper venue.

At oral argument, plaintiff requested that the court certify

the denial of the motion to dismiss on the ground of venue for

immediate appeal pursuant to 28 1292(b).

Section 1292(b) provides in pertinent part:

> When a district judge, in making in a civil
> action an order not otherwise appealable
> under this section, shall be of the opinion
> that such order involves a controlling
> question of law as to which there is
> substantial ground for difference of opinion
> and that an immediate appeal from the order
> may materially advance the ultimate
> termination of the litigation, he shall so
> state in writing in such order.  The Court of
> Appeals which would have jurisdiction of an
> appeal of such action may thereupon, in its
> discretion, permit an appeal to be taken from
> such order, if application is made to it
> within ten days after the entry of the order;
> Provided, however, That application for an
> appeal hereunder shall not stay proceedings
> in the district court unless the district
> judge or the Court of Appeals or a judge
> thereof shall so order.

Section 1292(b) is to be used only in exceptional situations in

which allowing an interlocutory appeal would avoid protracted and

expensive litigation.  United States Rubber Co. v. Wright, 359

F.2d 784, 785 (9th Cir. 1966).  Plaintiff must demonstrate that

(1) there is a controlling question of law, (2) that there are

substantial grounds for difference of opinion, and (3) that an

1  immediate appeal may materially advance the ultimate termination

2  of the litigation.  In re Cement Antitrust Litigation, 673 F.2d

3  1020, 1026 (9th Cir. 1982).

4       "[A]ll that must be shown in order for a question [of law]

5  to be 'controlling' is that resolution of the issue on appeal

6  could affect the outcome of litigation in the district court."

7  In re Cement Antitrust Litigation, id., 673 F.2d at 1026.

8       Here, the court concludes that the issue of where the claim

9  arose for purposes of intra-district venue is a controlling

10  question of law.

11       To demonstrate "a substantial ground for difference of

12  opinion" on a question for Section 1292(b) certification, the

13  moving party must show more than its own disagreement with a

14  court's ruling.  The term refers to the legal standard applied in

15  the decision for which certification is sought and whether other

16  courts have substantially differed in applying that standard.

17  See Harter v. GAF Corp., 150 F.R.D. 502, 518 (D.N.J. 1993).

18       With regard to this factor, the court concludes that

19  defendant has demonstrated a substantial ground for difference of

20  opinion given defendant's position that the determination of

21  intra-district venue is governed by Leroy and District 1.

22       The court concludes that an immediate appeal of the denial

23  of defendant's motion to transfer venue to the Sacramento

24  division of the Eastern District will materially advance the

25  ultimate termination of this litigation.  This is because a

26  reversal by the Ninth Circuit of this court's ruling on intra-

17

district venue may result in the vacation of any substantive rulings made by this court and the transfer of this action to the Sacramento Division.  See Olberding v. Illinois Cent. R. Co., 346 U.S. 338 (1953); Cottman Transmission Systems, Inc. v. Martino, 36 F.3d 291 (3rd Cir. 1994); Gogolin & Stelter v. Karn's Auto Imports, Inc., 886 F.2d 100 (5th Cir. 1989); see also Bechtel v. Liberty Nat. Bank, 534 F.2d 1335 (9th Cir. 1976).

Accordingly, the court certifies the issue of intradistrict venue under 28 U.S.C. § 1391(b) and Rule 3-120(d), Local Rules of Practice, for immediate appeal pursuant to 28 U.S.C. 1292(b).

## 2.  **Primary Jurisdiction**.

Count II of the FAC alleges preemption under the federal Clean Air Act.  Count II alleges in pertinent part:

> 122.  The regulation adopted by CARB on September 24, 2004, in Resolution 04-28, is a standard related to the control of emissions from new motor vehicles.  The regulation is preempted by section 209(a) of the Clean Air Act, 42 U.S.C. § 7543(a).  In addition, the regulation conflicts with the Clean Air Act and stands as an obstacle to the objectives of Congress in its comprehensive approach to environmental regulation of motor vehicles.

> 123.  EPA has determined that regulation of carbon dioxide and greenhouse gases to address global climate change is not authorized by section 202(a) of the Clean Air Act [42 U.S.C. § 7521(a)].  Notice of Denial of Petition for Rulemaking, *Control Emissions from New Highway Vehicles and Engines*, 68 Fed.Reg. 52922 (Sept. 8, 2003).  That authoritative determination by EPA precludes California from adopting any new motor vehicle emission standards for carbon dioxide or greenhouse gases.  California must, at a legal minimum, seek reconsideration of EPA's interpretation of section 202(a) before

18

1                      California may adopt new motor vehicle
emission standards for carbon dioxide or
2                      greenhouse gases.

3    Defendant moves to dismiss Count II based on the primary

4    jurisdiction doctrine, contending that the question raised by

5    Count II, whether the proposed regulatory amendments are

6    preempted by the Clean Air Act, is specifically entrusted to the

7    Administrator of the EPA, with any review by the U.S. Court of

8    Appeals.

9    "The doctrine of primary jurisdiction ... is concerned with

10   promoting proper relationships between the courts and

11   administrative agencies charged with particular regulatory

12   duties." United States v. Western Pacific Railroad, 352 U.S. 59,

13   63 (1956).  The doctrine is applicable in federal courts when an

14   action "requires the resolution of issues which, under a

15   regulatory scheme, have been placed within the special competence

16   of an administrative body." Id. at 64.  As further explained in

17   United States v. General Dynamics Corp., 828 F.2d 1356, 1362 (9th

18   Cir. 1987):

19                      The doctrine of primary jurisdiction operates
as follows: 'When there is a basis for
20                      judicial action, independent of agency
proceedings, courts may route the threshold
21                      decision as to certain issues to the agency
charged with primary responsibility for
22                      governmental supervision or control of the
particular industry or activity involved.'
23                      ... The doctrine applies when 'protection of
the integrity of a regulatory scheme dictates
24                      preliminary resort to the agency which
administers the scheme.' ... Thus, it is the
25                      extent to which Congress, in enacting the
regulatory scheme, intends an administrative
26                      body to have the first word on issues arising

> in judicial proceedings that determines the
> scope of the primary jurisdiction doctrine
> ....
>
> There are four factors uniformly present in
> cases where the doctrine properly is invoked:
> (1) the need to resolve an issue that (2) has
> been placed by Congress within the
> jurisdiction of an administrative body having
> regulatory authority (3) pursuant to a
> statute that subjects an industry or activity
> to a comprehensive regulatory scheme that (4)
> requires expertise or uniformity in
> administration.

If a court refers an issue to an administrative agency pursuant

to the doctrine of primary jurisdiction, the court is not

deprived of subject matter jurisdiction; rather, the court "has

discretion either to retain jurisdiction or, if the parties would

not be unfairly disadvantaged, to dismiss the case without

prejudice." Reiter v. Cooper, 507 U.S. 258, 268 (1993).

Section 7521(a) [Section 202(a) of the Clean Air Act]

provides in pertinent part that

> [t]he Administrator shall by regulation
> prescribe ... in accordance with the
> provisions of this section, standards
> applicable to the emission of any air
> pollutant from any class or classes of new
> motor vehicles or new motor vehicle engines,
> which in his judgment cause, or contribute
> to, air pollution which may reasonably be
> anticipated to endanger public health or
> welfare.

Section 7543(a) [Section 209(a) of the Clean Air Act]

provides in pertinent part:

> No state or any political subdivision thereof
> shall adopt or attempt to enforce any
> standard relating to the control of emissions
> from new motor vehicles or new motor vehicle
> engines subject to this part.  No State shall

20

1          require certification, inspection, or any
           other approval relating to the control of
2          emissions from any new motor vehicle or new
           motor vehicle engine as condition precedent
3          to the initial sale, titling (if any), or
           registration of such motor vehicle, motor
4          vehicle engine, or equipment.

5    However, Section 7543(b) provides in pertinent part:

6          (1) The Administrator shall, after notice and
           opportunity for public hearing, waive
7          application of this section to any State
           which has adopted standards (other than
8          crankcase emission standards) for the control
           of emissions from new motor vehicles or new
9          motor vehicle engines prior to March 30,
           1966, if the State determines that the State
10         standards will be, in the aggregate, at least
           as protective of public health and welfare as
11         applicable Federal standards.  No such waiver
           shall be granted if the Administrator finds
12         that -

13             (A) the determination of the
           State is arbitrary and capricious,
14
               (B) such State does not need
15         such State standards to meet compelling and
           extraordinary conditions, or
16
               (C) such State standards and
17         accompanying enforcement procedures are not
           consistent with section 7521(a) of this
18         title.

19         (2) If such State standard is at least as
           stringent as the comparable applicable
20         Federal standard, such State standard shall
           be deemed to be at least as protective of
21         health and welfare as such Federal standards
           for purposes of paragraph (1).
22
           (3) In the case of any new motor vehicle or
23         new motor vehicle engine to which State
           standards apply pursuant to a waiver granted
24         under paragraph (1), compliance with such
           State standards shall be treated as
25         compliance with applicable Federal standards
           for purposes of this subchapter.
26

21

1    Defendant argues that the doctrine of primary jurisdiction

2  should apply to Count II because the issue whether CARB will

3  receive a waiver of the preemption of emissions has been

4  committed to the Administrator of the EPA by Congress pursuant to

5  Section 7453(b)(1).  Defendant contends:

6          Importantly, the Administrator's discretion
           is significantly circumscribed.  For example,
7          California's regulations 'are presumed to
           satisfy the waiver requirements and ... the
8          burden of proving otherwise is on whoever
           attacks them.'  *MEMA I*, 627 F.2d at 1121.
9          California is given the 'broadest possible
           discretion.'  *Id.* at 1128.  And '[t]he
10         agency's longstanding interpretation [has
           been] that section 209(b) does not require
11         California to establish perfect compliance
           with' the Clean Air Act.  *MEMA III*, 142 F.3d
12         at 463.  Thus, on at least the
           'protectiveness' question, the Administrator

13
               is not to overturn California's
14             judgment lightly.  Nor is he to
               substitute his judgment for that of
15             the State.  There must be clear and
               compelling evidence that the State
16             acted unreasonably in evaluating
               the relative risks of various
17             pollutants in light of the air
               quality, topography, photochemisty,
18             and climate in that State, before
               the EPA may deny a waiver.
19
           H.R. Rep. No. 95-294, at 302 (1977) ... And
20         US EPA has consistently interpreted the
           consistency requirement to be limited to the
21         factual question of whether 'there is
           inadequate lead time to permit the
22         development of the necessary technology given
           the cost of compliance within that time
23         period or the Federal and State test
           procedures impose inconsistent certification
24         requirements.'  *See, e.g.*, California State
           Motor Vehicle Pollution Control Standards;
25         Waiver of Federal Preemption, Decision, 57
           Fed.Reg. 24788, 24789 (1992).  *See also MEMA*
26         *III*, 142 F.3d at 463 (stating that '[n]either

1         the court nor the agency has ever interpreted
2         compliance with section 202(a) to require
     more' than this).

3         In addition, Congress has specifically
     designed how these decisions are to be
4         reviewed by the courts.  Review of any final
     action by the Administrator must be in either
5         the U.S. Court of Appeals for the District of
     Columbia Circuit or, if the final action is
6         'locally or regionally applicable,' in the
     appropriate U.S. Court of Appeals.  42 U.S.C.
7         § 7607(b)(1).  That judicial review is also
     circumscribed to whether the Administrator
8         acted arbitrarily or capriciously, or not
     consistent with law.  *MEMA I*, 627 F.2d at
9         1105-06.  And that judicial review is based
     solely on an administrative record ...
10        Lastly, the District of Columbia Circuit has
     explained that the Administrator's
11        construction of the Clean Air Act is given
     deference because of his agency's 'technical
12        expertise.'  *Id.* at 1106.

13   Relying on this legal exposition, defendant argues:

14        Plaintiffs are attempting to avoid this
     administrative waiver process.  They seek a
15        declaration from this Court that California
     cannot meet the waiver requirements of Clean
16        Air Act section 209(a) because these proposed
     regulatory amendments would be inconsistent
17        with Section 202 of the Clean Air Act.
     Congress has specifically entrusted that
18        decision to the Administrator of US EPA, with
     direct appeal (on an administrative record)
19        to the U.S. Court of Appeals.  This Court
     need not - and should not - insert itself
20        into that process, risking the possibility
     that two courts might reach inconsistent
21        decisions on that question.  Rather, the
     Court should apply the primary jurisdiction
22        doctrine.

23       The court concludes that the primary jurisdiction doctrine

24   does not apply to the allegations of Count II.  The court concurs

25   with plaintiffs that the primary jurisdiction doctrine does not

26   apply because plaintiffs raise "two pure questions of statutory

1 interpretation under the Clean Air Act that can and must be

2 determined by the federal courts." As plaintiffs note, there is

3 no principle of administrative law requiring a court to await an

4 agency's interpretation of the law before the court interprets

5 the law. If an agency has already interpreted a statutory

6 provision, the court looks to that agency interpretation only if

7 the statute at issue is silent or ambiguous on the issue. See

8 Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,

9 467 U.S. 837, 842-843 (1984). Plaintiffs contend:

10        Interpreting the preemptive scope of the
Clean Air Act is no different. To the extent

11        EPA has already interpreted the relevant
provisions - and plaintiffs believe EPA's

12        determination that section 202(a) does not
permit regulation of greenhouse gases forbids

13        CARB's regulation ... - then the Court simply
applies Chevron's two-step test. To the

14        extent there are unanswered questions of
statutory interpretation, the Court answers

15        those questions the same way it answers any
other questions of federal statutory

16        interpretation.

17    Plaintiffs' position is supported by the holding in

18 International Auto. Mfrs. v. Commissioner, 208 F.3d 1 (1st Cir.

19 2000).[4] In International Auto. Mfrs., automobile manufacturers

20 challenged automobile emission standards adopted by

21 Massachusetts, contending that the regulations were preempted by

22

23    [4]Plaintiffs also refer the court to Engine Mfgs. v. South
Coast Air Quality Manag., 541 U.S. 246 (2004), a decision which

24 does not address the issue of primary jurisdiction. Although
plaintiffs assert that "[t]here is no doubt that if 'primary

25 jurisdiction' had been raised in South Coast, it would have been
rejected", because the issue is not raised or discussed in the

26 Supreme Court's opinion, this court concludes that South Coast is
not relevant to resolution of the issue before this court.

the Clean Air Act.  The district court ruled in favor of the
automobile manufacturers.  In an earlier appeal from the district
court's decision, the First Circuit opted to stay its
determination of the matter pending a referral of several
questions to the EPA under the doctrine of primary jurisdiction,
including whether the Massachusetts ZEV mandates were "standards"
for purposes of Section 177 of the Clean Air Act, whether the
California MOAs were "standards" for purposes of Sections 177 and
209, and whether the ZEV mandates were otherwise "identical to
California standards for which a waiver has been granted" as
required by Section 177.  After EPA issued an opinion letter
responding to these questions, a petition for review of that
letter was filed.  In dismissing the petition for review, the
First Circuit ruled in pertinent part:

> The litigation in Appeal No. 99-2245 is an
> unfortunate consequence of our previous
> decision to stay the appeal in No. 98-1036
> pending a primary jurisdiction referral to
> the EPA.  While our intentions in making that
> referral reflected an appropriate respect for
> the policies underlying the doctrine of
> primary jurisdiction, in retrospect our
> referral to the EPA was somewhat inartful.
>
> As is fairly clear from our prior opinion, it
> was our intention to allow the EPA to issue
> binding rulings or decisions on the questions
> of statutory interpretation and application
> that we referred to the agency.  However, in
> hindsight, our decision to invoke the primary
> jurisdiction doctrine sua sponte without any
> briefing from the parties was not a wise one.
> Of the several issues referred for the EPA's
> consideration, it now appears that the agency
> was not in a position to determine any of
> them authoritatively.  For instance, as all
> parties now apparently agree, the ultimate

25

legal determination of whether the Massachusetts regulations are preempted by the CAA is a question of federal preemption law for the courts alone to decide. Similarly, the subsidiary issues of what constitutes a 'standard' under CAA §§ 209 and 177 and whether the ZEV mandates are 'identical' to California standards require us to interpret the CAA for purposes of applying federal preemption law, not for purposes of administering the CAA; as such, the issues fall squarely within this Court's jurisdiction but not within any particular expertise or special administrative competence of the EPA.  Presumably, this is why the EPA's September 15, 1999 opinion letter is written in terms of the EPA's 'beliefs' regarding the various issues referred for its consideration.  In fact, in the No. 99-2245 litigation, the EPA has taken the position that the September 15, 1999 opinion letter was an advisory opinion only, with no independent impact upon the parties. We agree with this characterization.

The Administrative Procedure Act subjects all 'final agency actions' to judicial review ... Agency action is final if it constitutes a '"definitive statement [] of [the agency's] position" with "direct and immediate" consequences.' ... The EPA's opinion letter does not purport to be a definitive statement by the agency of its position on these various issues.  For example, with regard to the question of whether a waiver has been granted for the California MOAs, the EPA makes explicit reference to the pending proceedings on California's request for a 'within the scope' determination of its amended LEV program.  Likewise, the agency takes great pains to limit its conclusion that the MOAs constitute standards for purposes of §§ 209 and 177 to the 'unique circumstances' of this case, expressly suggesting that a different analysis would be appropriate in most cases.  Nor does the opinion letter have any direct or immediate consequences for the parties.  There was no controversy before the agency other than the referral from this Court, and the EPA correctly recognized that this Court will

26

> decide the preemption issues before us on
> appeal, not the agency.  Because the
> September 15, 1999 opinion letter was not
> intended to be a definitive statement of the
> EPA's positions and has no direct or
> immediate impact on the parties, we hold that
> it is not a reviewable final agency action,
> and we dismiss the petition for review ....

208 F.3d at 4-5.

Here, the issue before the court in Count II is whether the
regulations set forth in Resolution No. 04-28 constitute
standards related to the control of emissions from new motor
vehicles and, therefore, preempted by Section 209(a) of the Clean
Air Act.  This is an issue for this court to decide.

The fact that defendant has the ability to seek a waiver of
this preemption, if preemption is ultimately determined by this
court, does not cause the primary jurisdiction doctrine to apply.
As plaintiffs contend:

> This case is entirely different.  Whether
> CARB's 'greenhouse gas' emission standards
> are preempted 'standards' under Section
> 209(a) is a pure question of statutory
> interpretation.  Likewise, whether CARB's
> regulation of 'greenhouse gases' is
> 'consistent with' section 202(a), given that
> EPA has concluded as a matter of statutory
> interpretation that 'greenhouse gases' are
> not 'pollutants' under section 202(a), is a
> pure question of statutory interpretation.
> Of course, if CARB were to seek a waiver from
> EPA, plaintiffs would be perfectly entitled
> to argue that any waiver would be contrary to
> the statute, and EPA's decision could then be
> reviewed by the D.C. Circuit.  That
> possibility is, however, irrelevant.  It is
> no more relevant than the possibility that
> ... Massachusetts might have petitioned for a
> waiver in *AIAM*.
>
> Whether a waiver *can* be sought, or *will* be

27

sought, does not alter the substance of the
statutory interpretation question at issue.
Count II presents pure questions of statutory
interpretation regardless whether a waiver is
sought.  Courts may defer to an agency's
authoritative construction of an ambiguous
federal statute, but courts simply do not
await an agency's attempt at statutory
interpretation.

Therefore, the court denies defendant's motion to dismiss

Count II pursuant to the primary jurisdiction doctrine.[5]

ACCORDINGLY:

1.   Defendant's Motion to Dismiss is denied.

2.   The issue of intradistrict venue is certified for appeal

to the Ninth Circuit Court of Appeal pursuant to 28 U.S.C. §

1292(b).

IT IS SO ORDERED.

**Dated:  October 20, 2005**          **/s/ Robert E. Coyle**
668554                              UNITED STATES DISTRICT JUDGE

---

[5]The parties appear to dispute whether plaintiffs are
precluded from resorting to 42 U.S.C. § 1983 to enforce Section 209
of the Clean Air Act.  However, because this issue is unrelated to
application of the primary jurisdiction doctrine, the court does
not address it further in resolving this motion to dismiss.