IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTRAL VALLEY CHRYSLER VALLEY JEEP, INC., et al.,<br><br>            Plaintiff,<br>     vs.<br>CATHERINE E. WITHERSPOON,<br><br>            Defendants.<br>_____/ | CASE NO. **CV-F-04-6663 AWI LJO**<br><br>**ORDER ON DEFENDANT'S AND DEFENDANT INTERVENORS' MOTION TO MODIFY THE SCHEDULING ORDER** |

Defendant Catherine Witherspoon and Defendant Intervenors Sierra Club, Natural Resources Defense Council, Environmental Defense, Bluewater Network, Global Exchange, and Rainforest Action Network (collectively "defendants") move to modify the Court's Scheduling Order. The matter came on regularly for hearing on July 17, 2006 in Department 8 of the above-entitled court. Plaintiffs appeared by counsel Timothy Jones, Andrew Clubok, Michael Scoville and by telephone by Raymond Ludwiszewski. Defendants appeared by counsel Ellen Peter, Linda Berg, David Bookbinder, and by telephone by Caryn Craig. Having considered the moving and opposition papers, as well as the arguments of counsel and the Court's file, the Court issues the following order.

**FACTUAL AND PROCEDURAL BACKGROUND**

This action was filed on December 7, 2004. The First Amended Complaint ("FAC") challenges the requirements of A.B. 1493, codified at California Health and Safety Code § 43018.5, and the

regulations proposed by the California Air Resources Board (CARB) set forth in Resolution No. 04-28, dated September 24, 2004. The FAC alleges that CARB has interpreted the statute to require the adoption and enforcement of rules to limit the release of carbon dioxide from new motor vehicles sold in California beginning in the 2009 model year, which starts in calendar year 2008.

The FAC alleges the following claims for declaratory and injunctive relief:

1. Count I - Preemption under the Energy Policy and Conservation Act of 1975 (EPCA), 49 U.S.C. §§ 32902-32919, specifically Section 32919(a).
2. Count II - Preemption under § 209(a) of the Federal Clean Air Act, 42 U.S.C. § 7543(a).
3. Count III - Preemption under the foreign policy of the United States and the foreign affairs powers of the Federal Government.
4. Count IV - Violation of the Dormant Commerce Clause of the United States Constitution.
5. Count V - Violation of the Sherman Act, 15 U.S.C. § 1.

On September 20, 2005, this Court issued a Scheduling Order which, among other things, set a trial date of January 16, 2007. The Scheduling Order stated, "The Court understands the need to retain the above trial date due to the issues involved in this case." The Order then alerted the parties to the "flux" then existing in this District but that all efforts would be undertaken to keep the trial date. (Scheduling Order p. 15 ("As of the date of this Scheduling Conference, the Fresno Division of this Court is in flux as to availability of judges on the selected trial date. If the case is transferred to a different trial judge, the transfer will be with the acknowledgment that the trial date is firm."))

On March 14, 2006, defendants filed an application to modify the Scheduling Order. On April 4, 2006, the Court modified the schedule, leaving the trial date unchanged.

On March 23, 2006, the Court issued a protective order for the handling of confidential documents which would be produced by plaintiffs. On June 20, 2006, defendants again filed a request to hold a "status conference" for the purpose of modifying the Scheduling Order and continuing the trial date. The Court denied the request by order on June 26, 2006 and stated, "Should the case be reassigned to the replacement for Senior District Court Judge Oliver Wanger, it is expected that the trial date will not change." Thereafter, the case was reassigned from District Court Judge Robert E. Coyle, retired, to

District Court Judge Anthony W. Ishii. This motion followed, via *ex parte* application.

## ANALYSIS & DISCUSSION

**Standard of Good Cause for Continuance**

Pursuant to F.R.Civ.P. 16(b)(2) and (3), district courts must enter scheduling orders to establish deadlines for, among other things, "to file motions" and "to complete discovery." "A schedule shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." F.R.Civ.P. 16(b). The scheduling order "shall control the subsequent course of the action unless modified by a subsequent order." F.R.Civ.P. 16(e).

Scheduling orders "are the heart of case management," *Koplve v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd Cir. 1986), and are intended to alleviate case management problems, *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). A "scheduling conference order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded without peril." *Johnson*, 975 F.2d at 610. In *Johnson*, 975 F.2d at 609, the Ninth Circuit Court of Appeals explained:

> . . . Rule 16(b)'s "good cause" standard primarily concerns the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed.R.Civ.P. 16 advisory committee's notes (1983 amendment) . . . Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. . . . [T]he focus of the inquiry is upon the moving party's reasons for seeking modification. . . . If that party was not diligent, the inquiry should end.

Parties must "diligently attempt to adhere to that schedule throughout the subsequent course of the litigation." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999); *see Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D. W.Va. 1995). In addressing the diligence requirement, this Court has noted:

> Accordingly, to demonstrate diligence under Rule 16's "good cause" standard, the movant may be required to show the following: (1) that she was diligent in assisting the Court in creating a workable Rule 16 order, *see In re San Juan Dupont*, 111 F.3d at 228; (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, *see Johnson*, 975 F.2d at 609; and (3) that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order, *see Eckert Cold Storage*, 943 F.Supp. at 1233.

*Jackson*, 186 F.R.D. at 608.

/////

/////

**Defendants' Stated Reason for Continuance**

The main argument for continuance is the recent and on-going production of plaintiffs' confidential documents and defendants' inability to review the 1.2 million plus pages of confidential documents and be prepared for the depositions.

**Delay/Diligence**

The parties dispute who is responsible for the delay in the production of the confidential documents. These documents were the subject of the Court's protective order. On the one hand, defendants argue that it was the plaintiffs' fault as they worked out the security access as between competitor plaintiffs. On the other hand, plaintiffs argue that it was defendants' delay - both before and after the protective order was signed due to delay in negotiating the protective order and in selecting and implementing the web repository. (See Exhibits one and two to the hearing on the motion.)

Defendants' focus of their diligence is post-protective order. The evidence establishes that defendants have not moved as diligently as possible throughout the entire course of the litigation. There was delay in negotiating the protective order and in implementing the web repository. Plaintiffs, on the other hand, are not entirely blameless. Some issues were complicated by plaintiffs, such as security measures to accommodate co-plaintiff competitors. (This is not a Court criticism, but rather, a recognition of fact.) Yet, this motion does not require plaintiffs to establish their diligence.

The Court, nevertheless, finds that defendants have established good cause for continuance of the non-expert discovery cut off due to the volume of produced documents and evidence of some unforseen difficulties in implementing the web repository. Accordingly, the Court will grant the request to continue the non-expert discovery cut off, but only for the purposes of conducting depositions. This continuance does not reopen written discovery.

**Prejudice to Plaintiffs**

Plaintiffs have demonstrated that they would be prejudiced by a delay of the trial date. The focus then becomes one of degree and balancing.

Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *See*

*Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 961 (9th Cir. 2001) ("A district court's decision regarding a continuance is given great deference, and will not be disturbed on appeal absent clear abuse of [the court's] discretion.") (internal quotation omitted); *United States v. 2.61 Acres of Land*, 791 F.2d 666, 671 (9th Cir.1985) ("Absent a showing of prejudice suffered by the appellant ⋯ this Court will not disturb the ruling below.").

Defendants submit the declaration of Paul Hughes for the proposition that the manufacturers will have time and ability to comply with the regulations if trial is continued into late 2007. Counter declarations and evidence submitted by plaintiffs presents further evidence of prejudice than is addressed by Mr. Hughes. Plaintiffs have shown that a delay in the trial will impact their ability to plan, research and implement the technologies necessary to comply with the Regulations. They have shown that the uncertainty of the legality of the Regulations is currently adversely impacting the ongoing value of plaintiff automobile dealerships. Plaintiffs' declarations address the lead time necessary to implement the technology, even in light of later years of compliance. (Austin Decl.; Reginald Modlin Decl.) These declarations show that plaintiffs will suffer prejudice from the trial continuance.

***Massachusetts v. EPA***

Defendants argue that the Court should continue the trial until after the Supreme Court decides the case of *Massachusetts v. EPA*. At oral argument, defendants argued that identical issues are involved with identical parties as in the instant case. In *Massachusetts v. EPA,* 415 F.3d 50 (D.C. Cir. 2005), *cert. granted,* 2006 WL 1725113, the controversy involved EPA's denial of a petition asking it to regulate carbon dioxide ($CO_2$) and other greenhouse gas emissions from new motor vehicles under § 202(a)(1) of the Clean Air Act. EPA concluded that it did not have statutory authority to regulate greenhouse gas emissions from motor vehicles and that, even if it did, it would not exercise the authority at this time.

Plaintiffs argue that defendants are asking for a stay of this action pending resolution of the case before the Supreme Court, relying on *Landis v. North American*, 299 U.S. 248 (1939). At oral argument, several plaintiffs were identified who are not parties to the *Massachusetts v. EPA* and plaintiffs argued that their interests will be prejudiced by a stay of the proceedings pending the uncertain outcome of the Supreme Court's decision.

In *Landis*, two different utility companies filed suit against the attorney general, members of the SEC, and the Postmaster General ("the defendants") on the ground that a particular statute was unconstitutional. Similar suits had been filed by other utility companies. Almost simultaneously, the SEC filed a bill of complaint in the Southern District of New York compelling other utility companies to comply with the statute. Citing the need for an orderly and economical deposition of the controversy, the defendants in *Landis* moved to stay their case until the resolution of the suit brought by the SEC in the Southern District of New York. The district court granted the motion. The Supreme Court reversed and set forth the test for determining whether the stay was appropriate:

> "[T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."

299 U.S. at 255, 57 S.Ct. 163.

In *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir.2005), relying on *Landis,* the trial court granted a stay pending the outcome of a defendant's Chapter 11 bankruptcy proceedings in another district based on docket efficiency concerns and based on its belief that the stay was "fair and practical" for the parties. *Id.* at 1100, 1105. However, the Ninth Circuit Court vacated the stay, reasoning a stay was not justified under the facts of the case simply based on a balance of hardships or by the prospect of narrowing the issues before the court because of the relief sought in the case. *Id.* at 1112. First, the Lockyer court determined the defendant failed to demonstrate great hardship in being forced to continue its defense stating, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.' " *Id.* Moreover, the Lockyer court found the plaintiff's interests would be harmed by the stay, as he sought injunctive relief for ongoing economic harm. *Id.* at 1112

Thus, the standard is "great hardship" in proceeding with the case as balanced against harm to the plaintiffs.

Here, the plaintiffs have shown a prejudice from delay in the proceedings. Delay impacts the plaintiffs, both manufacturers and dealership plaintiffs, from complying with the Regulations and adversely impacts them economically.

While it may be convenient and helpful to have the Supreme Court's decision prior to the trial in this matter, defendants have not argued that they will be prejudiced from proceeding in this case while *Massachusetts v. EPA* is pending. Moreover, the complaint sets out five claims, only one, and possibly two, of which may be impacted by the *Massachusetts v. EPA* decision. Defendants do not argue that the *Massachusetts v. EPA* will dispose of all possible issues in this case. Accordingly, the request for a stay pending the decision in *Massachusetts v. EPA* is denied.

**Enlarging the Seven Hour Deposition Limit**

Defendants argue that due to the complexity of the case, the court should waive the seven hour time limit on depositions.

F.R.Civ.P. 30(d)(2) places a seven-hour limit on depositions:

> Unless otherwise authorized by the court or stipulated by the parties, a deposition is limited to **one day of seven hours**. The court must allow additional time consistent with Rule 26(b)(2) if needed for a fair examination of the deponent or if the deponent or another person, or other circumstance, impedes or delays examination. (Bold added.)

F.R.Civ.P. 26(b)(2) empowers this Court to "alter" the limits of discovery rules and "the length of depositions."

The Advisory Committee Notes for the 2000 Amendment to F.R.Civ.P. 30(d)(2) address extending the seven-hour limitation:

> For purposes of this durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition. The presumptive duration may be extended, or otherwise altered, by agreement. Absent agreement, a court order is needed. The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order.
>
> Parties considering the time for a deposition – and courts asked to order an extension – might consider a variety of factors. . . . If the examination will cover events occurring over a long period of time, that may justify allowing additional time. In cases in which the witness will be questioned about numerous or lengthy documents, it is often desirable for the interrogating party to send copies of the documents to the witness sufficiently in advance of the deposition so that the witness can become familiar with them. Should the witness nevertheless not read the documents in advance, thereby prolonging the deposition, a court could consider that a reason for extending the time limit. If the examination reveals that documents have been requested but not produced, that may justify further examination once production has occurred.

Defendants do not support their blanket enlargement of the seven hour time limit on depositions. Defendants have not made a particularized showing that expansion of the presumptive seven hour limit

7

will be needed for a fair examination.

Nonetheless, the Court will rely upon, and consider in any future motion, counsel's professionalism in requesting and/or permitting specific depositions to proceed beyond the 7 hour time limit. The Court will expect a stipulation at the deposition, presuming that all counsel are convinced that the 7 hours have been appropriately utilized and more questions are reasonable to fully develop the testimony.

**Additional depositions**

Defendants request that the maximum number of depositions of non-experts be increased to 20. Defendants want to take depositions of at least 12 manufacturers and other individuals. At oral argument, defense counsel increased this request to a total of 27 non-expert depositions.

A stipulation or court order is required if the proposed deposition would result in more than 10 depositions being taken by the deposing party's side (e.g., if the party seeking the deposition is one of several defendants, more than 10 depositions by all defendants). F.R.Civ.P 30(a)(2)(A); see *Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minn.* (D MN 1999) 187 FRD 578, 586 (party must make a 'particularized showing' of why extra depositions are necessary.)

Defendants have not made a particularized showing of the need for more depositions. Plaintiffs, however, agreed at the hearing to a total of 20 depositions. Therefore, pursuant to the parties' stipulation, defendants will be permitted to take a total of 20 non-expert depositions.

Plaintiffs seek an equal number of increased depositions. However, plaintiffs have not made a particularized showing of the need for the additional depositions.

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS the request to modify the Scheduling Order as follows:

| EVENT | OLD DATE | NEW DATE |
|---|---|---|
| Expert Disclosure | May 2, 2006 | Unchanged |
| Rebuttal Expert Disclosure | June 13, 2006 | Unchanged |
| Nonexpert Discovery Cut-off | August 4, 2006 | September 22, 2006 |
| Supplemental Expert Report | August 25, 2006 | October 9, 2006 |

| | | |
|---|---|---|
| Expert Discovery Cut-off | Sept. 29, 2006 | November 10, 2006 |
| Pretrial Motion Filing Deadline | October 27, 2006 | November 8, 2006 |
| Pretrial Motion Hearing Deadline | December 1, 2006 | December 8, 2006 |
| Pretrial Conference | December 15, 2006 | December 20, 2006 |
| Trial | January 16, 2007 | January 30, 2007 at 10:00 |

The Court DENIES the request to modify the seven hour deposition time limit, except as the parties may stipulate.

The Court GRANTS defendants' request, pursuant to the parties' stipulation, for defendants to take up to 20 non-expert depositions.

IT IS SO ORDERED.

**Dated:   July 17, 2006**          /s/ Lawrence J. O'Neill
b9ed48                              UNITED STATES MAGISTRATE JUDGE