IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTRAL VALLEY CHRYSLER-JEEP, et al.,<br><br>                Plaintiffs,<br><br>    v.<br><br>CATHERINE E. WITHERSPOON, in her official capacity as Executive Director of the California Air Resources Board, et al.,<br><br>                Defendants. | CV F 04-6663   AWI LJO (NEW DJ)<br><br>MEMORANDUM OPINION AND ORDER RE DEFENDANT-INTERVENORS' MOTION FOR RECONSIDERATION OF THE ORDER DENYING REQUEST TO MODIFY THE SCHEDULING ORDER<br><br>(Documents #323) |

      This case concerns the legality of environmental regulations imposed by a state administrative agency. Plaintiffs seek declaratory and injunctive relief on the basis that the regulations violate and are preempted by federal law. This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

      In September 2004, pursuant to its authority under California Health and Safety Code § 43098.5(a), the California Air Resources Board ("CARB") adopted regulatory amendments addressing motor vehicle emissions of four greenhouse gases: carbon dioxide, methane, nitrous oxide, and hydrofluorocarbons. See Cal. Code Regs. tit. 13, § 1961.1(e)(4). On December 7,

2004, Plaintiffs[1] filed suit against CARB's executive director to prevent enforcement of the regulations.[2] In their first amended complaint ("FAC"), filed February 16, 2005, Plaintiffs seek declaratory and injunctive relief on the following claims:

>    1. Count I –   Preemption under the Energy Policy and Conservation Act of 1975 ("EPCA"), 49 U.S.C. §§ 32902-32919, specifically Section 32919(a).
>    2. Count II – Preemption under § 209(a) of the Federal Clean Air Act, 42 U.S.C. § 7543(a).
>    3. Count III –   Preemption under the foreign policy of the United States and the foreign affairs powers of the Federal Government.
>    4. Count IV –  Violation of the Dormant Commerce Clause of the United States Constitution.
>    5. Count V –  Violation of the Sherman Act, 15 U.S.C. § 1.

On September 20, 2005, the Magistrate Judge issued a scheduling order setting the case for trial on January 16, 2007. On July 1, 2006, Defendant and Defendant-Intervenors filed a motion to continue the trial date and to make other adjustments to the scheduling order, based on (1) Plaintiffs' delay in document production, (2) the Supreme Court's grant of certiorari in Massachusetts v. EPA (Massachusetts), 415 F.3d 50 (D.C. Cir. 2005), *cert granted*, 126 S. Ct. 2960 (2006), and (3) the absence of prejudice to Plaintiffs from delay. Plaintiffs and Plaintiff-Intervenor opposed the motion. On July 18, 2006, the Magistrate Judge issued an order denying the motion to continue the trial date ("Order"). He concluded that a stay would prejudice Plaintiffs, that proceeding as originally scheduled would not prejudice Defendants, and that awaiting the completion of Massachusetts was not justified. On August 1, 2006, Defendant-

---

[1] Plaintiffs include various vehicle dealers, two manufacturers who supply them, an automobile trade association, and the Tulare County Farm Bureau. The Association of International Automobile Manufacturers has intervened as a Plaintiff.

[2] Sierra Club, Bluewater Network, Global Exchange, Rainforest Action Network, and Natural Resources Defense Council have intervened as Defendants.

Intervenors Bluewater Network, Global Exchange, and Rainforest Action Network filed a motion for reconsideration of the Order.  They contended that the Magistrate Judge had erred in applying the relevant law, had underestimated the impact of the Supreme Court's decision in Massachusetts, and had erroneously found that a stay would prejudice Plaintiffs.  Defendant Witherspoon filed a response to the motion for reconsideration indicating that she "suggests that the Court may wish to exercise its discretion" to continue the trial date, as Defendant-Intervenors urge.  Def.'s Resp. to Def.-Intervenors' Request for Recons. 2:10-11.  Plaintiffs' and Plaintiff-Intervenor opposed the motion for reconsideration.  Defendants' motion for judgment on the pleadings is pending and is currently scheduled for hearing on September 15, 2006.

## LEGAL STANDARD

According to Local Rule 72-303, a district judge upholds a magistrate's ruling on a referred matter unless it is "clearly erroneous or contrary to law." See Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  The "clearly erroneous" standard applies only to a magistrate judge's findings of fact. Concrete Pipe & Prods. v. Constr. Laborers Pension Trust, 508 U.S. 602, 623, 113 S. Ct. 2264, 124 L. Ed. 2d 539 (1993).  "[R]eview under the 'clearly erroneous' standard is significantly deferential, requiring a 'definite and firm conviction that a mistake has been committed.'" Id.  The "contrary to law" standard, on the other hand, allows independent, plenary review of purely legal determinations by the magistrate judge. FDIC v. Fidelity & Deposit Co. of Md., 196 F.R.D. 375, 378 (S.D. Cal. 2000); Haines v. Liggett Group, Inc., 975 F.2d 81, 91 (3d Cir. 1992).

## DISCUSSION

Defendants seek reconsideration of the Magistrate Judge's order denying to stay these proceedings under Landis v. North American Co. (Landis), 299 U.S. 248 (1936).  The district court has discretion to stay proceedings after weighing "the competing interests which will be affected by the granting or refusal to grant a stay." Lockyer v. Mirant Corp. (Lockyer), 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962)

(citing Landis, 299 U.S. 254-55)). The interests a court must consider are:

> the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

Id.

In Lockyer, the Ninth Circuit reversed the district court's grant of a Landis stay pending the conclusion of defendant's chapter 11 bankruptcy proceedings. Id. at 1100. The court addressed the relevant interests in a two-part inquiry. Id. at 1112. First, the court considered "the balance of hardships between the parties." Id. It concluded that factor weighed against a stay because the party opposing the continuance had shown at least a "fair possibility" of harm and the moving party had failed to make a "clear case of hardship or inequity." Id. (quoting Landis, 299 U.S. at 255). The court held that merely "being required to defend a suit" did not constitute such a hardship. Id. Second, the court held that it was highly doubtful that the bankruptcy proceedings would resolve plaintiff's claim. Id.

Defendants contend that the Magistrate Judge erred by giving too much weight to the first part of the inquiry in Lockyer. The Ninth Circuit did not expressly state in Lockyer whether its conclusion that the hardships balanced in favor of plaintiff by itself supported reversal of the district court's stay, regardless of the potential of other litigation to narrow the disputed issues. See 398 F.3d at 1112. Lockyer's citation to the mandatory language in Landis indicates that the moving party's failure to demonstrate hardship can be fatal to its continuance request. See id. (upon a showing of a "fair possibility" of harm to the nonmoving party, "the party seeking the stay '*must* make out a clear case of hardship or inequity'" (quoting Landis, 299 U.S. at 255) (emphasis added)). Such a conclusion would also be consistent with the well-established Ninth Circuit rule that a district court's denial of a stay will not be disturbed absent a showing that the appellant has suffered prejudice. See, e.g., United States v. 2.61 Acres of Land, 791 F.2d 666, 671 (9th Cir. 1985) (citing United States v. Flynt, 756 F.2d 1352, 1359 (9th Cir. 1985)). In any

4

event, the Magistrate Judge satisfied the requirements of this circuit by considering each of the Lockyer factors.

In applying the factors, the Magistrate Judge's findings of fact were not clearly erroneous. He held that Plaintiffs have shown that a continuance will prejudice their interests. (Order at 6:26.) The Magistrate Judge concluded that a delay will impair Plaintiffs' ability to plan, research, and implement technologies necessary to comply with the challenged regulations. (Id. at 5:9-10.) The Magistrate Judge also found that the uncertainty of the legality of the challenged regulations is adversely affecting the value of the Plaintiff automobile dealerships. (Id. at 5:10-12.)

Defendants contend that the Magistrate Judge's prejudice findings are inadequately supported. With respect to the claims of prejudice to the dealers, Defendants claim that dealers do not allege any present losses, only the potential for lost value if the regulations limit the availability of some models. They also claim that Plaintiffs have failed to show that a stay that lasts only until the completion of Massachusetts would cause the dealers any specific harm.

In opposition to the motion for continuance, Plaintiffs submitted the declaration of Stuart Harden. See Harden Decl. Harden concluded that the dealerships had suffered lost profits in their new vehicle departments as a result of the regulations. Harden Decl. ¶ 10. He also concluded that the current value of the dealerships has declined because of the adoption of the regulations. Id. at ¶ 7. Harden based his conclusions on the declarations of Reginald R. Modlin and Alan R. Weverstad filed in opposition to Defendants' Motion to Dismiss or Transfer. Id. at ¶¶ 5, 6. Harden gathered information from those declarations detailing the decline in new car and truck sales caused by decreased availability due to the regulation. Id. at ¶¶ 5, 6. Defendants do not submit evidence that calls into question Harden's conclusions or the data on which he based them. They merely assert that they "vigorously dispute" that the regulations limit the availability of some models. Def.-Intervenors' Mot. for Recons. of Scheduling Order 9:11-13. The Magistrate Judge did not commit clear error by accepting Harden's conclusions. Nor was it

5

clearly erroneous to find, based on a showing of lost profits and lost dealership value in the past due to the regulations, that continuing the trial date and therefore potentially delaying a decision about the legality of the regulations would prejudice the dealerships.

Defendants also contend that Plaintiffs fail to demonstrate a specific impact on manufacturer's ability to comply with the regulations. They cite to the declaration of Paul Hughes, in which he opines that the manufacturers will not incur substantial compliance burdens for at least the first two years under the regulations. See Hughes Decl. Hughes suggested that after the two year period, noncompliant manufacturers would not be adversely affected because they could purchase credits from other manufacturers whose emissions fell below the limit, or could "equalize" their credits with improvements in later years. Hughes Decl. ¶ 15. Hughes did not speak to whether credits would be available from other manufacturers or whether the improvements in later years necessary to offset earlier noncompliance were feasible. Id. The Magistrate Judge considered the Hughes declaration along with the declarations of Thomas C. Austin and Reginald R. Modlin. The Magistrate Judge found that, even accepting Hughes conclusions that the manufacturers will initially comply with the regulations, a delay will impair their ability to plan, research, and implement changes necessary to comply with the regulations in later years. According to the Modlin declaration, a manufacturer needs more lead time to prepare for stricter emission standards than the three years that the State of California estimates, perhaps as long as four to eight years to develop fuel economy technologies. Modlin Decl. ¶ 12. This would require DaimlerChrysler to decide as soon as possible to commit significant resources to developing technologies necessary for compliance. Id. at ¶ 11. The Magistrate Judge did not clearly err in finding that, notwithstanding Hughes predictions of short-term compliance, a delay pending the conclusion of the proceedings in Massachusetts is likely to prejudice the manufacturers.

Nor did the Magistrate Judge commit clear error in deciding that the manufacturers could suffer prejudice because of delay despite the possibility of purchasing credits from other

manufacturers or the possibility of equalizing their emissions over later years of the CARB program.  The Magistrate Judge could have reasonably accepted Modlin's conclusion that compliant manufacturers might not be willing to sell their excess credits, instead banking them for later years.  Id. at ¶ 19.  It was also not be clearly erroneous to accept DaimlerChrysler's contention that it could not implement a practical strategy of making up for early shortcomings by outperforming the regulations in later years.  Id.  The Magistrate Judge also noted that Defendants had not contended that they would be prejudiced by proceeding to trial on January 16, 2007, other than simply being forced to litigate.  He properly concluded that the hardship that defending a lawsuit entails is irrelevant to deciding whether to grant a Landis stay.  See Lockyer, 398 F.3d at 1112 ("[B]eing required to defend a suit, without more, does not constitute a "clear case of hardship or inequity" within the meaning of Landis.")

     The Magistrate Judge then considered whether staying proceedings until the completion of Massachusetts would likely simplify the legal issues and therefore justify a stay despite the prejudice Plaintiffs would face.   He observed that it was undisputed that Massachusetts would not dispose of all of the issues in this case, but only one or two.  Defendants take issue with this evaluation, contending that all but one of Plaintiffs' five claims hinge on the Supreme Court's decision in Massachusetts.  This contention presupposes that the Supreme Court will reach the issue of whether EPA has the authority to regulate greenhouse gases under the Clean Air Act.  Two of the three judges on the court of appeals panel declined to reach that issue, which suggests that the Supreme Court may likewise adopt one of their approaches and decline to decide it.  See Massachusetts, 415 F.3d at 59-61 (Sentelle, J., dissenting in part and concurring in the judgment) (concluding that petitioners failed to demonstrate Article III standing); Massachusetts, 367 F.3d at 56 (assuming *arguendo* that EPA has statutory authority to regulate greenhouse gases and concluding that, in any event, it properly declined to exercise any such authority).  Moreover, even if the Supreme Court reaches the issue of EPA's authority, that holding may not affect the disposition of the EPCA claim, the Foreign Policy claim, or the Dormant Commerce Clause

claim. A holding that EPA has the power to regulate greenhouse gases would not be relevant to those claims unless this court were to accept Defendants' hotly disputed contention that the Clean Air Act affirmatively authorizes California to regulate pollutants to the extent EPA is empowered to do so. Given the attenuated nature of any benefit from waiting until the conclusion of Massachusetts, the Magistrate Judge correctly concluded that such concerns do not outweigh the hardship that a delay would cause Plaintiffs.

The Magistrate Judge properly considered all of the relevant factors in determining whether to continue the trial. He appropriately found that Plaintiffs would suffer prejudice from a continuance and that Defendants would not be harmed by adhering to the original schedule. Nevertheless, he considered the beneficial effects a stay would have on resolving the issues in this case and concluded such benefits were insufficient. The Magistrate Judge's factual findings do not give rise to a "definite and firm conviction that a mistake has been committed." See Concrete Pipe, 508 U.S. at 623.

## CONCLUSION AND ORDER

For the reasons stated in the above Memorandum Opinion, IT IS HEREBY ORDERED that Defendants' motion for RECONSIDERATION of the Magistrate Judge's order denying their request to modify the scheduling order is DENIED.

IT IS SO ORDERED.

**Dated:   August 25, 2006**             **/s/ Anthony W. Ishii**
0m8i78                                   UNITED STATES DISTRICT JUDGE