1  JON WALLACE UPTON, SBN 46089
   KIMBLE, MACMICHAEL & UPTON
2  Fig Garden Financial Center
   5260 North Palm Avenue, Suite 221
3  Fresno, California 93792-9489
   Telephone: (559) 435-5500
4  Facsimile: (559) 435-1500

5  RAYMOND B. LUDWISZEWSKI *Pro Hac Vice*
   CHARLES H. HAAKE, SBN 190178
6  GIBSON, DUNN & CRUTCHER LLP
   1050 Connecticut Ave. NW
7  Washington, D.C. 20036
   Telephone: (202) 955-8500
8  Facsimile: (202) 467-0539

9  Attorneys for Plaintiff Intervenor,
   Association of International Automobile Manufacturers

10

11                    UNITED STATES DISTRICT COURT

12              EASTERN DISTRICT OF CALIFORNIA – FRESNO

13

14  CENTRAL VALLEY CHRYSLER-JEEP, INC.,
    et al,                                    CASE NO. CIV-F-04-6663-REC-LJO
15            Plaintiffs,

16        v.
    Catherine E. WITHERSPOON, in her official
17  capacity as Executive Officer of the California   **DECLARATION OF CHARLES H. HAAKE**
    Air Resources Board,                               **IN SUPPORT OF MOTION OF PLAINTIFF-**
18            Defendant,                                **INTERVENOR ASSOCIATION OF**
                                                        **INTERNATIONAL AUTOMOBILE**
19  THE ASSOCIATION OF INTERNATIONAL              **MANUFACTURERS FOR SUMMARY**
    AUTOMOBILE MANUFACTURERS                      **JUDGMENT**
20
              Plaintiff-Intervenor,              DATE:      December 11, 2006
21                                               TIME:      1:30 p.m.
    SIERRA CLUB, NATURAL RESOURCES               JUDGE:     Anthony W. Ishii
22  DEFENSE COUNCIL, ENVIRONMENTAL
    DEFENSE, BLUEWATER NETWORK,
23  GLOBAL EXCHANGE and RAINFOREST
    ACTION NETWORK,
24
              Defendant-Intervenors.
25

26

27

28

## DECLARATION OF CHARLES H. HAAKE

I, Charles H. Haake, declare:

1.      I am an attorney duly licensed to practice law in the State of California. I am an associate attorney with the law firm of Gibson, Dunn & Crutcher LLP, counsel of record for Plaintiff-Intervenor Association of International Automobile Manufacturers ("AIAM") in this action. The following facts are of my own personal knowledge, and if called as a witness I could and would testify competently thereto. I submit this declaration in support of AIAM's Motion for Summary Judgment.

2.      Attached hereto as Exhibit "A" is a true and correct copy of Plaintiff-Intervenor Association of International Automobile Manufacturers' Complaint in Intervention in this action.

3.      Attached hereto as Exhibit "B" is a true and correct copy of Defendant's Answer to Complaint in Intervention in this action.

4.      Attached hereto as Exhibit "C" are true and correct copies of relevant excerpts of the deposition (dated August 18, 2006) of Charles Martin Shulock, one of the Defendant's designated witnesses under Rule 30(b)(6) of the Federal Rules of Civil Procedure.

5.      Attached hereto as Exhibit "D" are true and correct copies of relevant excerpts of the deposition (dated August 23, 2006) of Paul R. Hughes, one of the Defendant's designated witnesses under Rule 30(b)(6) of the Federal Rules of Civil Procedure.

6.      Attached hereto as Exhibit "E" are true and correct copies of relevant excerpts of the deposition (dated August 25, 2006) of Steve Albu, one of the Defendant's designated witnesses under Rule 30(b)(6) of the Federal Rules of Civil Procedure.

7.      Attached hereto as Exhibit "F" is a true and correct copy of Exhibit 4 to the deposition of Steve Albu.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I executed this declaration on November 7, 2006, at Washington, D.C.

_____
Charles H. Haake

Gibson, Dunn & Crutcher LLP

# Exhibit "A"

1   JON WALLACE UPTON, SBN 46089
    KIMBLE, MACMICHAEL & UPTON
2   Fig Garden Financial Center
    5260 North Palm Avenue, Suite 221
3   Fresno, California 93792-9489
    Telephone: (559) 435-5500
4   Facsimile: (559) 435-1500

5   RAYMOND B. LUDWISZEWSKI
    CHARLES H. HAAKE, SBN 190178
6   GIBSON, DUNN & CRUTCHER LLP
    1050 Connecticut Ave. NW
7   Washington, D.C. 20036
    Telephone: (202) 955-8500
8   Facsimile: (202) 467-0539

9   Attorneys for Intervenor,
    Association of International Automobile Manufacturers

10                UNITED STATES DISTRICT COURT

11          EASTERN DISTRICT OF CALIFORNIA – FRESNO

12

13  CENTRAL VALLEY CHRYSLER-JEEP, INC.,          CASE NO. CIV-F-04-6663-REC-LJO
    KITAHARA PONTIAC GMC BUICK, INC.,
14  MADERA FORD MERCURY, INC., MADERA
    CHEVROLET, FRONTIER DODGE, INC.,             **COMPLAINT IN INTERVENTION OF**
15  TOM FIELDS MOTORS, INC., PISTORESI           **INTERVENOR THE ASSOCIATION OF**
    CHRYSLER DODGE JEEP, BOB WILLIAMS            **INTERNATIONAL AUTOMOBILE**
16  CHEVROLET, COURTESY OLDSMOBILE               **MANUFACTURERS FOR INJUNCTIVE**
    CADILLAC, INC., MERLE STONE                  **AND DECLARATORY RELIEF**
17  CHEVROLET, INC., MERLE STONE
    PORTERVILLE, INC., STURGEON AND              **[28 U.S.C. 1331, 1343, 2201]**
18  BECK INCORPORATED, SWANSON
    FAHRNEY FORD, INC., and the ALLIANCE
19  OF AUTOMOBILE MANUFACTURERS,

20              Plaintiffs,

21          v.

22  Catherine E. WITHERSPOON, in her official
    capacity as Executive Officer of the California
23  Air Resources Board,

24              Defendants.

25
        Intervenor, the Association of International Automobile Manufacturers, states the following
26
    claims for declaratory and injunctive relief against the Executive Officer of the California Air
27
    Resources Board:
28

Gibson, Dunn &
Crutcher LLP

**JURISDICTION AND VENUE**

1.      This is an action for declaratory and injunctive relief under the Supremacy Clause in Article VI of the United States Constitution and 42 U.S.C. § 1983 challenging the provisions of a state regulation which is preempted by federal law.  Defendant is the state officer charged with implementing and enforcing the preempted regulation.  This Court has jurisdiction to grant the relief sought in this action under 28 U.S.C. §§ 1331, 1343(a)(3), and 2201.

2.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because the defendant performs her official acts as Executive Officer of the California Air Resources Board in this Judicial District.

**NATURE OF THE ACTION**

3.      This action seeks to enjoin the Executive Officer of the California Air Resources Board ("CARB") from implementing and enforcing against members of the Association of International Automobile Manufacturers certain regulations promulgated by CARB relating to the emission from motor vehicles of carbon dioxide ("$CO_2$"), methane, nitrous oxide, hydrofluorocarbons, perfluorocarbons, and sulfur hexafluoride (the "CARB Greenhouse Gas Regulations").  These regulations were approved by a vote of CARB in Resolution No. 04-28, dated September 24, 2004.

4.      The CARB Greenhouse Gas Regulations set a limit for the fleet-wide average "greenhouse gas" emissions from passenger cars, light-duty trucks, and medium-duty passenger vehicles that are produced and delivered for sale in California for each model year beginning with the 2009 model year.  The "greenhouse gas" emissions limit is expressed in terms of grams of "carbon dioxide equivalent" emitted per mile traveled.

5.      The CARB Greenhouse Gas Regulations impose on automobile manufacturers emissions and de facto fuel economy standards that are different from standards established by the federal government, and would require automobile manufacturers to develop and implement motor vehicle design and manufacturing changes only to meet these California-specific standards.  Congress, however, has repeatedly recognized the need for a uniform, nationwide approach for

standards that impact the design and manufacture of automobiles, and has, therefore, enacted

legislation vesting exclusive authority to regulate such matters with the federal government.

6.     Fuel economy and vehicular emissions standards are two such areas in which

Congress has vested the federal government with exclusive authority. As explained in greater detail

in the specific claims below, Congress has enacted statutory and regulatory frameworks which

exclusively occupy the fields of fuel economy and vehicular emissions. The CARB Greenhouse Gas

Regulations impermissibly intrude upon and conflict with the federal regulations in these fields and

are therefore preempted by federal law.

7.     First, the Energy Policy and Conservation Act of 1975 ("EPCA"), as amended 49

U.S.C. §§ 32901, *et seq.*, grants exclusive authority to the National Highway Traffic Safety

Administration ("NHTSA") to regulate the fuel economy of automobiles sold in the United States.

Accordingly, EPCA exclusively occupies the field of vehicular fuel economy. Because the emission

of $CO_2$ is inexorably tied to the fuel economy of an automobile and the only possible way to reduce

the emissions of $CO_2$ from gasoline fueled motor vehicles is to improve fuel economy, the CARB

Greenhouse Gas Regulations impermissibly intrude upon federal regulation in the field of vehicular

fuel economy, stand in irreconcilable conflict with the national motor vehicle fuel economy program,

and are expressly and impliedly preempted by EPCA.

8.     Second, the Clean Air Act, 42 U.S.C. §§ 7401, *et seq.,* (the "CAA") grants exclusive

authority to the United States Environmental Protection Agency ("EPA") to regulate emissions from

motor vehicles. The only exception to the exclusivity of the federal occupation in this field is where

California obtains a waiver for its regulation. California has not obtained a waiver for the CARB

Greenhouse Gas Regulations, and indeed cannot obtain such a waiver because the regulations are not

needed "to meet compelling and extraordinary conditions" within California and are not "consistent

with section 202(a)" of the CAA, as is required for such waivers. 42 U.S.C. § 7543(b). Accordingly,

the CARB Greenhouse Gas Regulations are expressly preempted and also impliedly preempted

because they stand in direct conflict with federal law and interfere with the EPA's regulation of

motor vehicle emissions.

9.     To enforce the requirements of federal law, Intervenor brings this action pursuant to 42 U.S.C. § 1983 for declaratory and injunctive relief against the implementation and enforcement of the CARB Greenhouse Gas Regulations.

## THE PARTIES

10.     The Association of International Automobile Manufacturers ("AIAM") is a not-for-profit trade association of manufacturers, manufacturer-authorized importers, and distributors of motor vehicles manufactured both in and outside of the United States. AIAM is incorporated under the laws of the Commonwealth of Virginia and its principal place of business is located in Arlington, Virginia. One of AIAM's missions is to promote sound laws and regulations in the areas of motor vehicle safety, emissions and fuel economy, and to represent the interests of its member companies in federal and state regulatory proceedings and litigation. AIAM brings this suit on behalf of its members, which include American Honda Motor Company, Inc.; American Suzuki Motor Corporation; Aston Martin Lagonda of North America, Inc.; Ferrari North America, Inc.; Hyundai Motor America; Isuzu Motors America, Inc.; Kia Motors America, Inc.; Maserati North America, Inc.; Mitsubishi Motors North America, Inc.; Nissan North America, Inc.; Peugeot Motors of America, Inc.; Renault, SA; Subaru of America, Inc.; and Toyota Motor North America, Inc. AIAM's members account for approximately 40 percent of all passenger cars and light trucks sold annually in the State of California. Many AIAM members base their U.S. headquarters in California, and as a result are significant employers in the state. Several of AIAM's members are subject to and will be affected by the regulations adopted by the California Air Resources Board. AIAM has standing to pursue this action on behalf of its members.

11.     Defendant Catherine E. Witherspoon is the Executive Officer of the California Air Resources Board. The Executive Officer of CARB is authorized to implement and enforce the CARB Greenhouse Gas Regulations that are the subject of this litigation. This suit is being brought against the Executive Officer in her official capacity. The Executive Officer maintains an office in Sacramento, California, and performs her official duties in Sacramento, California.

Gibson, Dunn &
Crutcher LLP

4

# FACTUAL BACKGROUND

12.     The motor vehicle industry is one of the most highly regulated sectors of the United States economy. The authority to enact regulations that impact the design and manufacture of automobiles resides primarily with the federal government because of the enormous burden that would be placed on automobile manufacturers if there were 51 separate bodies of state regulation in these fields. Accordingly, Congress has repeatedly recognized the need for a uniform, nationwide approach to standards that impact the design and manufacture of automobiles, and has enacted legislation vesting exclusive authority to regulate such matters with the federal government. The CARB Greenhouse Gas Regulations implicate two areas in which Congress has vested the federal government with exclusive authority to establish standards that impact the design and manufacture of automobiles: fuel economy and vehicular emissions.

13.     As a primary stakeholder in such regulations, AIAM members have long worked hand-in-hand with federal regulators to establish standards that not only meet the national goals of improving fuel economy and reducing automobile emissions, but also carefully balance other factors such as consumer demand, technological feasibility, and economic practicality.

14.     Indeed, AIAM has consistently embraced progressive positions regarding motor vehicle regulation to address the issues of global climate change and fuel economy improvement. AIAM is on record with both the National Academy of Sciences and the National Highway Traffic Safety Administration not opposing improvements in the federal Corporate Average Fuel Economy ("CAFE") program as long as such improvements apply equally to all automakers, are technologically feasible, and provide adequate lead-time for product changes. Moreover, AIAM members have been industry leaders in the introduction of advanced automotive technologies (*e.g.*, hybrid-electric, hydrogen fuel cell, and other alternative fueled vehicles) that both reduce emissions and promote fuel economy. Some of the most fuel efficient, and consequently lowest "greenhouse gas" emitting, vehicles are produced by AIAM member companies.

15.     It has also been AIAM's firm position that such regulations must be promulgated at the national level, so that manufacturers do not confront a myriad of conflicting, state-by-state requirements. As set forth in greater detail below, however, the CARB Greenhouse Gas Regulations

Gibson, Dunn &
Crutcher LLP

5

impose on automobile manufacturers emissions and de facto fuel economy standards that are preempted by federal law, and would require automobile manufacturers to develop and implement motor vehicle design and manufacturing changes specifically to meet these California-only standards.

**A.      The Federal Government's National Regulation of Fuel Economy Through the Federal Energy Policy and Conservation Act**

16.      In 1975, Congress passed the Energy Policy and Conservation Act of 1975 ("EPCA"), as amended 49 U.S.C. §§ 32901, *et seq.* EPCA established an automotive fuel economy regulatory program by adding Title V, "Improving Automotive Efficiency," to the Motor Vehicle Information and Cost Saving Act. Title V has been amended from time to time and codified without substantive change as Chapter 329 of title 49, United States Code. EPCA grants authority to the National Highway Traffic Safety Administration ("NHTSA") to regulate the fuel economy of automobiles sold in the United States.

17.      Pursuant to EPCA, the NHTSA has promulgated fleet-wide average fuel economy standards that apply to all cars and light trucks sold by a manufacturer in a given model year. These standards are called "corporate average fuel economy" or "CAFE" standards. Pub. L. No. 94-163, § 301, 89 Stat. 871, 902 (1975). Under these standards, an automobile manufacturer can produce and sell any combination of vehicles it chooses, provided that its fleet-wide average fuel economy meets the applicable CAFE standard.

18.      The CAFE regulations classify motor vehicles into two categories, passenger automobiles and light duty trucks (trucks with Gross Vehicle Weight Ratings ("GVWR") up to 8,500 pounds) and provides for a separate CAFE standard for each category. The CAFE standard for passenger vehicles can be found at 49 C.F.R. §§ 531.5 and is set at 27.5 miles per gallon. The CAFE standard for light trucks can be found at 49 C.F.R. §§ 533.5 and is set at 21.0 miles per gallon for the 2005 model year, and increases to 21.6 and 22.2 miles per gallon for the 2006 and 2007 model years, respectively. There are currently no CAFE standards for trucks with a GVWR of greater than 8,500 pounds.

19.      The NHTSA's regulations require that fuel economy be measured by way of "procedures established by the Administrator of the Environmental Protection Agency." 49 C.F.R.

§§ 531.6(a) & 533.6(b).  As discussed below, the applicable EPA regulations used for measuring fuel economy are driven by $CO_2$ emissions.

20.    The relationship between fuel consumption and $CO_2$ emissions for a given fuel is fixed.  This direct linkage is illustrated by how EPA measures fuel economy using the official fuel economy tests.  The amount of fuel consumed per mile traveled is not measured directly because it is difficult to accurately measure small amounts of fuel consumed by a motor vehicle.  Instead, EPA measures the exhaust emissions of hydrocarbons ("HC"), carbon monoxide ("CO"), and $CO_2$ per mile traveled, which can be measured very precisely.  This method is based upon simple combustion theory.  Chemists are able to determine how many atoms of carbon are contained in a gallon of gasoline.  The process of combusting fuel and producing energy is accomplished by combining the carbon molecules in the fuel with oxygen.  The EPA tests effectively "count" all of the carbon atoms coming out of the motor vehicle in the form of HC, CO, and $CO_2$.  After counting the carbon atoms emitted per mile driven, EPA then uses a formula found at 40 C.F.R. § 600.113-93(e), commonly referred to as the carbon balance equation, to calculate the amount of fuel burned per mile driven, and thus the miles per gallon of fuel consumption.  Because $CO_2$ is the most prevalent of these emissions, the $CO_2$ component of the EPA formula far outweighs the HC and CO contributions.

21.    To ensure national uniformity in fuel economy regulations, EPCA includes a broad express preemption clause at 49 U.S.C. §32919(a).  That section provides:

> When an average fuel economy standard prescribed under this chapter [49 U.S.C. §§ 32901, *et seq.*] is in effect, a State or a political subdivision of a State may not adopt or enforce a law or regulation related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard under this chapter [49 U.S.C. §§ 32901, *et seq.*].

49 U.S.C. § 32919(a).  The NHTSA has stated that the broad scope of this preemption provision is premised on "the need for a uniform, federal system" in regulating the fuel economy of motor vehicles.  67 Fed. Reg. 77015, 77025 (Dec. 16, 2002).

## B.    The Federal Government's National Regulation of Motor Vehicle Emissions Through the Clean Air Act

22.    In 1970, Congress amended the CAA to adopt specific nationwide limits on the emission of certain pollutants by new motor vehicles and directed EPA to implement those federal

standards. 42 U.S.C. § 7521. These federal emission standards, as amended by Congress in the CAA Amendments of 1977 and 1990, have reduced the exhaust emissions from new motor vehicles that form ozone by approximately 98 percent from pre-1970 emissions levels.

23.     Congress explicitly and deliberately chose uniform nationwide standards to regulate new motor vehicle emissions in the 1970 CAA Amendments. Congress recognized that complying with 51 different motor vehicle emissions requirements would impose an undue burden upon motor vehicle manufacturers. Congress decided that, given the potential burdens on auto manufacturers of conflicting state standards, federal preemption of such variation was appropriate.

24.     Accordingly, while Congress allowed States to adopt and enforce their own standards for "stationary" sources – such as factories and power plants – Congress enacted section 209(a) of the CAA which expressly preempts state standards for new motor vehicles. Section 209(a) provides:

> No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part [42 U.S.C. §§ 7521, *et seq.*] No State shall require certification, inspection, or any other approval relating to the control of emissions from any new motor vehicle or new motor vehicle engine as condition precedent to the initial retail sale, titling (if any), or registration of such motor vehicle, motor vehicle engine, or equipment.

42 U.S.C. § 7543(a).

25.     Section 209(a) demonstrates Congress's intent to preempt State emissions requirements for new motor vehicles, and its wording is intentionally broad and without limitation: states are preempted from adopting or enforcing *any* standard relating to the control of *any* emissions from new motor vehicle engines. This express preemption remains in effect today.

26.     Significantly, Congress worded the preemption provision of Section 209(a) of the CAA more broadly than Section 202(a) of the CAA, which confers EPA with the authority to regulate certain types of vehicular emissions. While Section 209(a) preempts state regulation of *any* emissions, Section 202(a) provides that

> The Administrator shall by regulation prescribe (and from time to time revise) in accordance with the provisions of this section, standards applicable to the emission *of any air pollutant* from any class or classes of new motor vehicles or new motor vehicle engines, *which in his judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare.*

42 U.S.C. §7521(a)(1) (emphasis added).

27.     EPA has concluded that $CO_2$ is not an "air pollutant" that may be regulated under Section 202(a) of the CAA. *See* Notice of denial of petition for rulemaking, *Control of Emissions from New Highway Vehicles and Engines*, 68 Fed. Reg. 52922 (Sept. 8, 2003). California, among other petitioners, has attempted to challenge EPA's conclusion by filing a petition for review in the United States Court of Appeals for the D.C. Circuit. That challenge -- *Massachusetts, et al. v. EPA*, No. 03-1361 (Consolidated) -- will be heard April 8, 2005. Thus, although the discharge of $CO_2$ from motor vehicles is an "emission" under the broad preemption provision of Section 209(a) of the CAA, it is not an emission of "an air pollutant" under Section 202(a).

28.     The only exception to the broad general preemption of section 209(a) of the CAA is the grandfather clause for States that had adopted their own new motor vehicle standards "prior to March 30, 1966," a proviso that deliberately applied only to the State of California. 42 U.S.C. § 7543(b). Because of "the unique problems faced by California as a result of its climate and topography," and in particular "[t]he acute smog problem" of southern California, Congress granted California singular authority to regulate automotive air pollutants. See H.R. Rep. No. 728, 90th Cong., 1st Sess. (1967); S. Rep. No. 192, 89th Cong., 1st Sess. (1965). Congress found that California had "compelling and extraordinary circumstances sufficiently different from the Nation as a whole to justify standards on automobile emissions which may, from time to time, need [to] be more stringent than national standards." S. Rep. No. 403, 90th Cong., 1st Sess. (1967).

29.     Thus, pursuant to Section 209(b), California may obtain an exemption from the broad preemption of section 209(a), but only if EPA finds that certain preconditions are met. First, consistent with the rationale underlying this exception, California may only obtain a waiver if its proposed standards are needed "to meet compelling and extraordinary conditions" unique to California. 42 U.S.C. § 7543(b). Second, the proposed standards must be "consistent with section 202(a)" of the CAA. *Id.*

## C.     CARB's Greenhouse Gas Regulations

30.     On July 1, 2002, the California legislature passed Assembly Bill 1493 ("AB 1493"). That bill provides that:

No later than January 1, 2005, the state board [CARB] shall develop and adopt
regulations that achieve the maximum feasible and cost-effective reduction of
greenhouse gas emissions from motor vehicles.

Cal. Health & Safety Code § 43018.5(a)

31.     AB 1493 was premised on findings by the California Legislature that "[g]lobal
warming is a matter of increasing concern for public health and the environment in the state," that the
"control and reduction of emissions of greenhouse gases are critical to slow the effects of global
warming," and that "[p]assenger vehicles and light-duty trucks are responsible for approximately 40
percent of the total greenhouse gas pollution in the state." Stats 2002 ch. 200 § 1 (AB 1493).

32.     While AB 1493 purported to give CARB wide discretion in meeting its goal of
reducing the amount of greenhouse gas emissions from motor vehicles, it prohibited CARB from
adopting measures that would  (a) impose a mandatory trip reduction measure or land use restriction;
(b) impose additional fees and taxes on any motor vehicle, fuel, or vehicle miles traveled; (c) impose
a ban on the sale of any vehicle category; (d) require a reduction in vehicle weight; (e) reduce the
speed limit; or (f) place a limitation on vehicle miles traveled. Cal. Health & Safety Code
§ 43018.5(d). Accordingly, the only realistic means available to CARB for reaching the goal of
reducing the emission of greenhouse gases from motor vehicles was to impose standards requiring
automobile manufacturers to produce motor vehicles that emit less $CO_2$.

33.     In response to this mandate, the Executive Officer issued a proposed rulemaking in
August 2004 with an accompanying Initial Statement of Reasons ("ISOR") and opened a period for
public comment. On September 23 and 24, 2004 CARB held a public hearing on the proposed rules,
at which oral and written comments were received. At the conclusion of the public hearing, CARB
approved the proposed rules by a vote, with a few modifications that were recommended at the
hearing. The record was reopened until November 5, 2004, for limited public comment concerning
the changes to the rules and some additional documents. Since November 5, 2004, the record has
been closed.

34.     The CARB Greenhouse Gas Regulations amend Title 13 of the California Code of
Regulations to create greenhouse gas emissions standards for new motor vehicles sold in California
beginning with model year 2009. The regulations establish four classifications of vehicles:

Gibson, Dunn &
Crutcher LLP

10

passenger cars (vehicles designed for personal transportation of up to 12 persons), "LDT1s" (light-duty trucks with a loaded vehicle weight of 0-3,750 pounds), "LDT2s" (light-duty trucks with a loaded vehicle weight of 3,751 pounds to a gross vehicle weight of 8,500 pounds), and "MDPVs" (medium-duty passenger vehicles with a gross vehicle weight rating of less than 10,000 pounds). These standards will be enforced by civil penalties on manufacturers assessed at levels designed to ensure compliance with the standards.

35.     The rules set near-term standards, phased in from 2009 through 2012, and mid-term standards, phased in from 2013 through 2016, for the emissions of greenhouse gases.  The proposed standards are expressed in terms of "carbon dioxide equivalent" emissions, which allow credits for the control of other greenhouse gases in addition to $CO_2$.  The standards adopted by CARB for $CO_2$ equivalent emissions are set forth in a new Section 1961.1 of Title 13 of the California Code of Regulations.  Subsection (a)(1)(A) of the regulation adopted by CARB provides as follows:

> The fleet average greenhouse gas exhaust mass emission values from passenger cars, light-duty trucks, and medium-duty passenger vehicles that are produced and delivered for sale in California each model year by a large volume manufacturer shall not exceed:

| FLEET AVERAGE GREENHOUSE GAS EXHAUST MASS EMISSION REQUIREMENTS FOR PASSENGER CAR, LIGHT-DUTY TRUCK, AND MEDIUM-DUTY PASSENGER VEHICLE WEIGHT CLASSES[1] (4,000 mile Durability Vehicle Basis) | | |
|---|---|---|
| Model Year | Fleet Average Greenhouse Gas Emissions (grams per mile $CO_2$-equivalent) | |
| | All PCs; LDTs 0-3750 lbs. LVW | LDTs 3751 lbs. LVW - 8500 lbs. GVW; MDPVs |
| 2009 | 323 | 439 |
| 2010 | 301 | 420 |
| 2011 | 267 | 390 |
| 2012 | 233 | 361 |
| 2013 | 227 | 355 |
| 2014 | 222 | 350 |
| 2015 | 213 | 341 |
| 2016+ | 205 | 332 |

Proposed Regulation Order, 13 CCR § 1961.1 (available at

http://www.arb.ca.gov/regact/grnhsgas/appa.pdf) .

**D.     CARB's Greenhouse Gas Regulations Conflict With Federal Law**

36.     Carbon dioxide is ubiquitous, making up about one percent of the volume of dry air. In addition to being exhaled by humans and other animals when converting food and oxygen into energy and living tissue, carbon dioxide is released into the atmosphere when carbon-containing fossil fuels such as oil, natural gas, and coal are burned in air. These fossil fuels provide the power source for nearly all modes of transportation and approximately 70% of all electricity generated in the United States. Carbon dioxide accounts for nearly 95% of emissions identified by CARB as greenhouse gas emissions. .

37.     The amount of $CO_2$ emitted by combustion depends only on the quantity and type of fuel burned. For example, burning a gallon of gasoline results in the emission of roughly twenty pounds of $CO_2$, regardless of the characteristics of the vehicle that burned the fuel.

38.     After being emitted into the air from biological or manmade sources, $CO_2$ does not remain localized and close to the earth's surface. Rather, it disperses evenly throughout the atmosphere, such that emissions of $CO_2$ in California have no greater impact in California than they do elsewhere in the United States or indeed the world. Conversely, emissions of $CO_2$ in Asia have as much of an impact in California as do $CO_2$ emissions from sources in California.

39.     The only way to reduce the amount of $CO_2$ emitted from a gasoline fueled motor vehicle is to make it burn less fuel per mile driven. In contrast to other emissions from an automobile, no technology currently exists or is under development that can capture or reduce emissions of $CO_2$ from an automobile. Thus, a vehicle with higher fuel economy emits less $CO_2$ per mile traveled in direct proportion to the increase in its fuel economy.

40.     Accordingly, as set forth above, rating motor vehicles based on the grams of $CO_2$ emitted per mile driven is precisely the manner by which the NHTSA measures compliance with the CAFE performance standards pursuant to EPCA. Moreover, the CARB Greenhouse Regulations

Gibson, Dunn &
Crutcher LLP

12

prescribe the exact same test for measuring $CO_2$ emissions as is utilized by the NHTSA in enforcing the CAFE program.

41.    The CARB Greenhouse Gas Regulations, therefore, set de facto fuel economy standards for motor vehicles sold in the State of California.  However, by enacting EPCA, Congress has granted exclusive authority to the NHTSA to regulate the fuel economy of automobiles sold in the United States through the CAFE program.  The CAFE program exclusively occupies the field of vehicular fuel economy, thus leaving no room for states to act.  The CARB Greenhouse Gas Regulations impermissibly intrude upon this field.

42.    Congress's intent that EPCA exclusively occupy the field of vehicular fuel economy is buttressed by the broad preemption provision of EPCA set forth at 49 U.S.C. §32919(a), which forbids states from "adopt[ing] or enforc[ing] a law or regulation related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard under this chapter [49 U.S.C. §§ 32901, *et seq.*]."  Because the CARB Greenhouse Gas Regulations are "related to fuel economy standards," they are expressly preempted by EPCA.

43.    Moreover, the CARB Greenhouse Gas regulations conflict with the CAFE standards because there are significant differences between the two which place them at odds with each other.  First, the CARB regulations require much stricter fuel economy in terms of grams of $CO_2$ emitted per mile than the CAFE standards.  Using the formula set forth in 40 C.F.R. § 600.113-93 for converting grams of $CO_2$ emitted per mile into miles per gallon of gasoline, the CARB regulations impose fuel economy standards for each class of vehicle per model year as follows:

| Model Year | Cars plus LDT1s | LDT2 plus MDPV |
|---|---|---|
| 2009 | 27.4 | 20.2 |
| 2010 | 29.4 | 21.1 |
| 2011 | 33.2 | 22.7 |
| 2012 | 38.0 | 24.5 |
| 2013 | 39.0 | 25.0 |
| 2014 | 39.9 | 25.3 |
| 2015 | 41.6 | 26.0 |

| 2016 | **43.2** | **26.7** |
|------|----------|----------|

The current CAFE standard for model years 2009 and beyond, however, is 27.5 mpg for automobiles and 22.2 mpg for light trucks, unless amended by NHTSA or Congress. Thus, for example, if an automobile manufacturer has a fleet-wide fuel economy average of 28 miles per gallon for its automobiles in 2010, it will be in full compliance with the CAFE standard, but in violation of the CARB Greenhouse Gas Regulations.

44.     Second, CARB's regulations differ significantly from the CAFE standards in how CARB classifies motor vehicles. The CAFE standards have separate categories for passenger automobiles and light-duty trucks (trucks with GVWR up to 8,500 pounds). The CARB regulations, however, split the light-duty truck category into two groups. The smaller light trucks ("LDT1s") are combined with passenger cars for calculating fleet-wide emissions. All other trucks subject to the rule ("LDT2s") are placed in a separate category and classified together with certain heavier vehicles, called Medium Duty Passenger Vehicles ("MDPVs"), which are not regulated under the CAFE standards. This difference in classification will have a significant impact on the fleet-wide average for most vehicle manufacturers. For example, combining smaller light trucks with automobiles will have the effect of increasing fleet-wide emissions above the levels achieved if passenger automobiles were categorized alone. Similarly, combining MDPVs, which are not subject to federal regulation, with larger LDTs will require manufacturers which produce MDPVs to take other measures to increase the fuel economy of its larger LDT's far above the levels called for under federal law.

45.     Accordingly, because the CARB Greenhouse Gas Regulations set limits for the emission of $CO_2$ from motor vehicles, and because the only feasible way to reduce the emissions of $CO_2$ from motor vehicles is to improve fuel economy, the CARB Greenhouse Gas Regulations stand in direct conflict with federal law, and interfere with the uniform national motor vehicle fuel economy program.

46.     The CARB Greenhouse Gas Regulations also conflict with the Federal CAA, which vests EPA with the exclusive authority to regulate emissions from motor vehicles. In order to ensure national uniformity in the regulation of vehicular emissions, Congress enacted the broad preemption provision found in Section 209(a) of the CAA, which preempts state regulation relating to the control

Gibson, Dunn &
Crutcher LLP

14

of any emissions from new motor vehicles or engines. The only exception to federal exclusivity is the waiver provision of Section 209(b) of the CAA. California, however, has not obtained a waiver for the CARB Greenhouse Gas Regulations, nor could it. Carbon dioxide does not cause localized environmental impacts, as do the pollutants for which California has previously obtained waivers. Rather, $CO_2$ disperses evenly throughout the atmosphere, such that emissions of $CO_2$ in California have no greater impact in California than they do elsewhere in the United States or indeed the world. Accordingly, the CARB Greenhouse Gas Regulations are not necessary "to meet compelling and extraordinary conditions" specific to California. 42 U.S.C. § 7543(b). Moreover, because $CO_2$ is not "an air pollutant" subject to regulation under Section 202(a) of the CAA, the CARB Greenhouse Gas Regulations are not "consistent with section 202(a)" of the CAA. *Id.*

47.     The Executive Officer's violation of federal law will impose substantial and unnecessary costs on AIAM members because the CARB Greenhouse Gas Regulations will compel vehicle manufacturers to take immediate steps to try to comply with CARB's standards. The first model year to which Defendant's rule would apply is the 2009 model year, which begins as early as January 2, 2008, under California and federal regulations. Automobile manufacturers will require a substantial lead time in order to develop and implement the technological and design changes necessary to meet the CARB standard. Even assuming the CARB staff's estimate of a three-year lead time, which is most likely an underestimate, work on these technologies will have to begin in early 2005. Thus, beginning in early 2005, AIAM members will have to make intensive capital investments in order to be ready to produce the technologies envisioned by the CARB staff by the calendar year 2008.

48.     Intervenor and its members have no adequate remedies at law for the foregoing elements of damage and injury. To the extent that the monetary value of such injuries could be ascertained, the principles of sovereign and official immunity would prevent Intervenor and its members from recovering such losses from Defendant. Only this Court's exercise of its equitable powers can protect Intervenor and its members from irreparable harm.

49.     The balance of hardships and the public interest favor granting the equitable relief requested. Invalidating the unlawful CARB Greenhouse Gas Regulations will result in no significant

Gibson, Dunn &
Crutcher LLP

15

adverse consequences for Defendant or the general public, but will avoid imposing substantial irreparable harm to Intervenor and its members.

### FIRST CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF

### Preemption Under The Federal Energy Policy And Conservation Act

50.    Intervenor realleges and incorporates each and every paragraph set forth above, as though fully set forth herein.

51.    EPCA expressly preempts any State from adopting or enforcing any "law or regulation related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard under" EPCA.  49 U.S.C. § 32919.

52.    The CARB Greenhouse Gas Regulations, which set maximum fleet-wide average levels of grams of $CO_2$ emitted per mile for passenger automobiles and light duty trucks, are "related to fuel economy standards and average fuel economy standards," and are therefore preempted under 49 U.S.C. § 32919(a).

53.    Moreover, the National Highway Traffic Safety Administration exclusively occupies the field of fuel economy regulation.  The CARB Greenhouse Gas Regulations impermissibly intrude on that field by establishing fleet-wide limits on $CO_2$ emission per mile, and thereby regulating the fuel economy of motor vehicles sold in California.

54.    The CARB Greenhouse Gas Regulations also stand as an obstacle to the accomplishment and execution of the full purposes of the objectives of Congress in enacting EPCA, and frustrate the full effectiveness of the CAFE program.

55.    Intervenor's members will be actually and irreparably injured if the CARB Greenhouse Gas Regulations are not declared unlawful and if Defendant Witherspoon is not enjoined from implementing and enforcing those regulations.

56.    An actual and judicially cognizable controversy exists between Intervenor and Defendant regarding whether the CARB Greenhouse Gas Regulations are preempted by EPCA. Intervenor contends that the CARB Greenhouse Gas Regulations are preempted by EPCA and cannot be enforced.  Defendant is presently implementing those regulations by undertaking steps to permit

Gibson, Dunn &
Crutcher LLP

16

her to enforce the rule under California statutes that create civil liability for noncompliance with the rule, and will enforce it to the detriment of Intervenor and its members.

57.    To redress the violations of federal law and the interference with the rights of Intervenor and its members, and pursuant to 28 U.S.C. §§ 1331,1343, 2201 and other provisions of law, including 42 U.S.C. §§ 1983, 1988, Intervenor requests a declaration that the CARB Greenhouse Gas Regulations are preempted by EPCA and unenforceable.

58.    Defendant is now and will continue to implement the CARB Greenhouse Gas Regulations in violation of federal law unless enjoined by this Court from doing so.  Intervenor is therefore also entitled to injunctive relief restraining and redressing these violations of federal law under 42 U.S.C. §§ 1983, 1988 and other provisions of law.

## SECOND CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF

### Preemption Under The Federal Clean Air Act

59.    Intervenor realleges and incorporates each and every paragraph set forth above, as though fully set forth herein.

60.    Section 209(a) of the CAA expressly prohibits any State from adopting or attempting to enforce "any standard relating to the control of emissions from new motor vehicles." 42 U.S.C. § 7543(a).  Section 209(a) also expressly prohibits any state from requiring "certification, inspection or any other approval relating to the control of emissions from any new motor vehicle or new motor vehicle engine as condition precedent to the initial retail sale, titling (if any), or registration of such motor vehicle, motor vehicle engine, or equipment." *Id.*

61.    The CARB Greenhouse Gas Regulations are a "standard related to the control of emissions from new motor vehicles" and are therefore preempted by section 209(a) of the CAA, 42 U.S.C. § 7543(a).

62.    California has not obtained, and cannot obtain, a waiver under Section 209(b) of the CAA because the CARB Greenhouse Gas Regulations are not needed "to meet compelling and extraordinary conditions" and are not "consistent with section 202(a)" of the CAA.  42 U.S.C. § 7543(b).

63.  Intervenor's members will be actually and irreparably injured if the CARB Greenhouse Gas Regulations are not declared unlawful and if Defendant Witherspoon is not enjoined from implementing and enforcing those regulations.

64.  An actual and judicially cognizable controversy exists between Intervenor and Defendant regarding whether the CARB Greenhouse Gas Regulations are preempted by the CAA. Intervenor contends that the CARB Greenhouse Gas Regulations are preempted by the CAA and cannot be enforced. Defendant is presently implementing those regulations by undertaking steps to permit her to enforce the rule under California statutes that create civil liability for noncompliance with the rule, and will enforce it to the detriment of Intervenor and its members.

65.  To redress the violations of federal law and the interference with the rights of Intervenor and its members, and pursuant to 28 U.S.C. §§ 1331,1343, 2201 and other provisions of law, including 42 U.S.C. §§ 1983, 1988, Intervenor requests a declaration that the CARB Greenhouse Gas Regulations are preempted by the CAA and unenforceable.

66.  Defendant is now and will continue to implement the CARB Greenhouse Gas Regulations in violation of federal law unless enjoined by this Court from doing so. Intervenor is therefore also entitled to injunctive relief restraining and redressing these violations of federal law under 42 U.S.C. §§ 1983, 1988 and other provisions of law.

## PRAYER FOR RELIEF

WHEREFORE, Intervenor respectfully requests that this Court enter the following relief:

A.  A declaratory judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that the CARB Greenhouse Gas Regulations violate federal law in the manner alleged above.

B.  Preliminary and permanent injunctions, pursuant to Rule 65 of the Federal Rules of Civil Procedure, enjoining Defendant from implementing or enforcing the CARB Greenhouse Gas Regulations, or any substantially similar regulation.

C.  An award of reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and other provisions of federal law.

Gibson, Dunn &
Crutcher LLP

18

1    D.     Such other relief available under federal law that may be considered appropriate under

2    the circumstances, including other fees and costs of this action to the extent allowed by federal law.

3    DATED:  February 3, 2005

5                        KIMBLE, MACMICHAEL & UPTON

7                        By: _____/ss/_____

8                                     Jon Wallace Upton

9                        Attorneys for Intervenor,
10                       Association of International Automobile Manufacturers

# Exhibit "B"

1 | BILL LOCKYER
Attorney General of the State of California
2 | MARY E. HACKENBRACHT
Senior Assistant Attorney General
3 | ELLEN M. PETER, State Bar No. 72234
Supervising Deputy Attorney General
4 | CARYN L. CRAIG, State Bar No. 185621
NICHOLAS STERN
5 | Deputy Attorneys General
   1300 "I" Street, Suite 125
6 | P.O. Box 944255
   Sacramento, CA  94244-2550
7 | GAVIN G. McCABE, State Bar No. 130864
MARC N. MELNICK, State Bar No. 168187
8 | Deputy Attorneys General
   1515 Clay Street, 20th Floor
9 | P.O. Box 70550
   Oakland, CA  94612-0550
10 | Telephone:  (510) 622-2133
   Fax:  (510) 622-2270
11
Attorneys for Defendant Catherine E. Witherspoon
12

13 | IN THE UNITED STATES DISTRICT COURT

14 | FOR THE EASTERN DISTRICT OF CALIFORNIA

15 | FRESNO DIVISION

16

17 | **CENTRAL VALLEY CHRYSLER-JEEP, INC.; et al.,**

18 | Plaintiffs,

19

20 | v.

21 | **CATHERINE E. WITHERSPOON,**

22 | Defendant.

NO. CIV F-04-6663 REC LJO

**DEFENDANT'S ANSWER TO COMPLAINT IN INTERVENTION FILED BY ASSOCIATION OF INTERNATIONAL AUTOMOBILE MANUFACTURERS**

23 | Defendant Catherine E. Witherspoon ("Defendant") hereby answers the complaint in

24 | intervention for injunctive and declaratory relief ("Complaint") filed by intervenor Association of

25 | International Automobile Manufacturers ("AIAM").

26 | **JURISDICTION AND VENUE**

27 | 1. The allegations in the first sentence of paragraph 1 are AIAM's characterizations and

28 | contentions regarding the contents of the Complaint.  Defendant alleges that the Complaint speaks

Answer to Complaint in Intervention                                No. CIV F-04-6663 REC LJO

1

1   for itself.  To the extent that a response is required, the Defendant denies these allegations on the

2   grounds that the Complaint is the best evidence of its contents.  Responding to the second

3   sentence of paragraph 1, Defendant admits that she is a state officer charged with enforcement of

4   certain statutes and regulations but denies all other allegations in the sentence.  Defendant denies

5   the allegations in the third sentence of paragraph 1.

6        2.  Defendant denies the allegations in paragraph 2.

7                           **NATURE OF THE ACTION**

8        3.  The allegations in the first sentence of paragraph 3 are AIAM's characterizations and

9   contentions regarding the contents of the Complaint.  Defendant alleges that the Complaint speaks

10  for itself.  To the extent that a response is required, the Defendant denies these allegations on the

11  grounds that the Complaint is the best evidence of its contents.   Responding to the allegations in

12  the second sentence of paragraph 2, Defendant admits that the Air Resources Board held a

13  meeting in Los Angeles on September 23-24, 2004, regarding proposed regulations to implement

14  AB 1493 (the "AB 1493 Regulations") but denies all other allegations.

15       4.  The allegations in the paragraph 4 are AIAM's characterizations and contentions

16  regarding the contents of the AB 1493 Regulations.  Defendant alleges that the AB 1493

17  Regulations speak for themselves.  To the extent that a response is required, the Defendant denies

18  these allegations on the grounds that the AB 1493 Regulations are the best evidence of their own

19  contents.

20       5.  Responding to the allegations in the first sentence of paragraph 5, Defendant admits that

21  the AB 1493 Regulations are emissions standards but denies the remaining allegations.  Defendant

22  denies the allegations in the second sentence of paragraph 5.

23       6.  The allegations contained in the first two sentences of paragraph 6 are AIAM's

24  characterizations and contentions regarding the contents of federal legislation regarding fuel

25  economy and vehicular emissions.  Defendant alleges that such legislation speaks for itself.  To

26  the extent that a response is required, the Defendant denies these allegations on the grounds that

27  said legislation is the best evidence of its contents.  Defendant denies each and every allegation in

28  the third sentence of paragraph 6.

Answer to Complaint in Intervention                                    No. CIV F-04-6663 REC LJO

1     7. The allegations contained in the first and second sentences of paragraph 7 are AIAM's

2  characterizations and contentions regarding the Energy Policy and Conservation Act of 1975

3  ("EPCA"). Defendant alleges that EPCA speaks for itself. To the extent that a response is

4  required, the Defendant denies these allegations on the grounds that EPCA is the best evidence of

5  its own contents. Defendant denies the allegations in the third sentence of paragraph 7.

6     8. The allegations contained in the first and second sentences of paragraph 8 are AIAM's

7  characterizations and contentions regarding the Clean Air Act. Defendant alleges that the Clean

8  Air Act speaks for itself. To the extent that a response is required, the Defendant denies these

9  allegations on the grounds that the Clean Air Act is the best evidence of its own contents.

10  Responding to the allegations in the third sentence of paragraph 8, Defendant admits that

11  California has yet to obtain a waiver under Clean Air Act Section 209(b) for the AB 1493

12  Regulations but denies any and all other allegations. Defendant denies each and every allegation

13  in the fourth sentence of paragraph 8.

14     9. Responding to the allegations in paragraph 9, Defendant admits that the Complaint

15  references 42 U.S.C. § 1983 and asks for injunctive and declaratory relief regarding the AB 1493

16  Regulations. However, Defendant denies any and all other allegations in paragraph 9.

17                             **THE PARTIES**

18     10. In response to the allegations in the first seven sentences in paragraph 10, Defendant

19  admits that the plaintiff-in-intervention identifies itself as the Association of International

20  Automobile Manufacturers and that some of the automobile manufacturers listed in paragraph 10

21  are subject to the AB 1493 Regulations. Defendant lacks sufficient information or belief to form

22  an opinion as to the truth of the remaining allegations in those seven sentences and, on that basis,

23  denies the allegations. The allegations in the eighth sentence paragraph 10 are a legal

24  conclusion to which no response is required.

25     11. Defendant admits the allegations in the first and third sentences of paragraph 11.

26  Responding to the allegations in the second and fourth sentences of paragraph 11, Defendant

27  admits that she is authorized to enforce the AB 1493 Regulations that are the subject of this action

28  and that she performs some of her official duties in Sacramento, but denies all other allegations.

1

### FACTUAL BACKGROUND

2    12. Responding to the allegations in the first sentence of paragraph 12, Defendant lacks
3    sufficient information or belief to form an opinion as to the truth of the allegations and, on that
4    basis, denies the allegations. The allegations in the second and third sentences of paragraph 12
5    are AIAM's characterizations and contentions regarding federal legislation that impacts the design
6    and manufacture of automobiles. Defendant alleges that such federal legislation speaks for itself.
7    To the extent that a response is required, the Defendant denies these allegations on the grounds
8    that said federal legislation is the best evidence of its own contents. Defendant denies the
9    allegations in the fourth sentence of paragraph 12.

10    13. In response to the allegations in paragraph 13, Defendant lacks sufficient information or
11    belief to form an opinion as to the truth of the allegations and, on that basis, denies the allegations.

12    14. In response to the allegations in the first three sentences of paragraph 14, Defendant
13    lacks sufficient information or belief to form an opinion as to the truth of the allegations and, on
14    that basis, denies the allegations. In response to the allegations in the fourth sentence of
15    paragraph 14, Defendant admits that some of the lowest greenhouse gas emitting vehicles are
16    produced by automobile manufacturers listed in paragraph 10. Defendant lacks sufficient
17    information or belief to form an opinion as to the truth of any remaining allegations in the fourth
18    sentence and, on that basis, denies such allegations.

19    15. Defendant lacks sufficient information or belief to form an opinion as to the truth of the
20    allegations in the first sentence of paragraph 15 and, on that basis, denies the allegations.
21    Defendant denies the allegations in the second sentence of paragraph 15.

22    16. The allegations in paragraph 16 are AIAM's characterizations and contentions regarding
23    the Energy Policy and Conservation Act of 1975 ("EPCA"). Defendant alleges that EPCA speaks
24    for itself. To the extent that a response is required, the Defendant denies these allegations on the
25    grounds that EPCA is the best evidence of its own contents.

26    17. The allegations in paragraph 17 are AIAM's characterizations and contentions regarding
27    the corporate average fuel economy standards ("CAFE Standards") promulgated under EPCA.
28    Defendant alleges that the CAFE Standards speak for themselves. To the extent that a response is

1    required, the Defendant denies these allegations on the grounds that the CAFE Standards are the

2    best evidence of their own contents.

3        18. The allegations in paragraph 18 are AIAM's characterizations and contentions regarding

4    the CAFE Standards. Defendant alleges that the CAFE Standards speak for themselves. To the

5    extent that a response is required, the Defendant denies these allegations on the grounds that the

6    CAFE Standards are the best evidence of their own contents.

7        19. The allegations in paragraph 19 are AIAM's characterizations and contentions regarding

8    certain NHTSA and EPA regulations. Defendant alleges that such regulations speak for

9    themselves. To the extent that a response is required, the Defendant denies these allegations on

10   the grounds that the NHTSA and EPA regulations are the best evidence of their own contents.

11       20. Defendant lacks sufficient information or belief to form an opinion as to the truth of the

12   allegations in the first sentence of paragraph 20 and, on that basis, denies the allegations.

13   Defendant admits the allegations in the sixth sentence of paragraph. Responding to the

14   allegations in the seventh sentence of paragraph 20, Defendant admits that the process of

15   combusting fuel and producing energy combines carbon molecules in the fuel with oxygen.

16   The remaining allegations in paragraph 20 are AIAM's characterizations and contentions

17   regarding EPA's official fuel economy tests. Defendant alleges that such tests speak for

18   themselves. To the extent that a response is required, the Defendant denies these allegations on

19   the grounds that the EPA official fuel economy tests are the best evidence of their own contents.

20       21. The allegations in the paragraph 21 are the AIAM's characterizations and contentions

21   regarding EPCA and a federal register notice published at 67 Fed. Reg. 77015 (Dec. 16, 2002).

22   Defendant alleges that EPCA and the federal register notice speak for themselves. To the extent

23   that a response is required, the Defendant denies these allegations on the grounds that EPCA and

24   the federal register notice are the best evidence of their own contents.

25       22. The allegations in the first sentence of paragraph 22 are AIAM's characterizations the

26   Clean Air Act. Defendant alleges that such the Clean Air Act speaks for itself. To the extent that

27   a response is required, the Defendant denies these allegations on the grounds that the Clean Air

28   Act is the best evidence of its own contents. Responding to the allegations in the second sentence

1 │ of paragraph 22, Defendant admits that federal emission standards, as amended by Congress in the

2 │ CAA Amendments of 1977 and 1990, have reduced the exhaust emissions from new motor

3 │ vehicles certified to such federal standards but lacks sufficient information or belief to form an

4 │ opinion as to the truth of the remaining allegations and, on that basis, denies the allegations.

5 │     23. The allegations in paragraph 23 are AIAM's characterizations and contentions regarding

6 │ certain 1970 Clean Air Act amendments. Defendant alleges that such amendments speak for

7 │ themselves. the Clean Air Act. To the extent that a response is required, the Defendant denies

8 │ these allegations on the grounds that the 1970 Clean Air Act amendments are the best evidence of

9 │ their own contents.

10 │     24. The allegations in paragraph 24 are AIAM's characterizations and contentions regarding

11 │ Section 209 of the Clean Air Act. Defendant alleges that Section 209 of the Clean Air Act speaks

12 │ for itself. To the extent that a response is required, the Defendant denies these allegations on the

13 │ grounds that Section 209 of the Clean Air Act is the best evidence of its own contents.

14 │     25. The allegations in paragraph 25 are AIAM's characterizations and contentions regarding

15 │ Section 209 of the Clean Air Act. Defendant alleges that Section 209 of the Clean Air Act speaks

16 │ for itself. To the extent that a response is required, the Defendant denies these allegations on the

17 │ grounds that Section 209 of the Clean Air Act is the best evidence of its own contents.

18 │     26. The allegations in paragraph 26 are AIAM's characterizations and contentions regarding

19 │ Sections 202 and 209 of the Clean Air Act. Defendant alleges that Sections 202 and 209 of the

20 │ Clean Air Act speaks for themselves. To the extent that a response is required, the Defendant

21 │ denies these allegations on the grounds that Sections 202 and 209 of the Clean Air Act are the best

22 │ evidence of their own contents.

23 │     27. The allegations in the first sentence of paragraph 27 are AIAM's characterizations and

24 │ contentions regarding an EPA federal register notice published at 68 Fed. Reg. 52922 (Sept. 8,

25 │ 2003). Defendant alleges that federal register notice speaks for itself. To the extent that a

26 │ response is required, the Defendant denies these allegations on the grounds that the federal

27 │ register notice is the best evidence of its own contents. Responding to the allegations in the

28 │ second and third sentences of paragraph 27, Defendant admits that California was among a group

Answer to Complaint in Intervention                        No. CIV F-04-6663 REC LJO

1 │ of petitioners in the matter of *Massachusetts, et al. v. EPA*, No. 03-1361 (Consolidated) and that

2 │ the oral argument in that matter was held on April 8, 2005. The allegations in the fourth sentence

3 │ of paragraph 27 are conclusions of law to which no response is required. To the extent that a

4 │ response is required, Defendant denies such allegations.

5 │     28. The allegations in paragraph 28 are AIAM's characterizations and contentions regarding

6 │ the contents of Section 209 of the Clean Air Act and the legislative history of Section 209.

7 │ Defendant alleges that Section 209 and such legislative history speak for themselves. To the

8 │ extent that a response is required, the Defendant denies these allegations on the grounds that

9 │ Section 209 of the Clean Air Act, and its legislative history are the best evidence of their own

10 │ contents.

11 │     29. The allegations in paragraph 29 are AIAM's characterizations and contentions regarding

12 │ Section 209 of the Clean Air Act. Defendant alleges that Section 209 of the Clean Air Act speaks

13 │ for itself. To the extent that a response is required, the Defendant denies these allegations on the

14 │ grounds that Section 209 of the Clean Air Act is the best evidence of its contents.

15 │     30. Responding to the allegations in the first sentence of paragraph 30, Defendant admits

16 │ that AB 1493 was passed by the Assembly on July 1, 2002 after having been passed by the Senate

17 │ on June 29, 2002. The remaining allegations in paragraph 30 are AIAM's characterizations and

18 │ contentions regarding the contents of AB 1493. Defendant alleges that AB 1493 speaks for itself.

19 │ To the extent that a response is required, the Defendant denies these allegations on the grounds

20 │ that AB 1493 is the best evidence of its contents.

21 │     31. The allegations in paragraph 31 are AIAM's characterizations and contentions regarding

22 │ the contents of AB 1493. Defendant alleges that AB 1493 speaks for itself. To the extent that a

23 │ response is required, the Defendant denies these allegations on the grounds that AB 1493 is the

24 │ best evidence of its contents.

25 │     32. The allegations in the first sentence of paragraph 32 are AIAM's characterizations and

26 │ contentions regarding the contents of AB 1493. Defendant alleges that AB 1493 speaks for itself.

27 │ To the extent that a response is required, the Defendant denies these allegations on the grounds

28 │ that AB 1493 is the best evidence of its contents. Defendant denies the allegations in the second

Answer to Complaint in Intervention                                    No. CIV F-04-6663 REC LJO

1  sentence of paragraph 32.

2      33. Responding to the allegations in the first and second sentences of paragraph 33,

3  Defendant admits that the Air Resources Board undertook rulemaking in response to AB 1493 and

4  that and that the rulemaking process included the issuance of an Initial Statement of Reasons and

5  a hearing on September 23 and 24, 2004 at which oral and written comments were received.

6  Defendant admits the allegations in the third sentence of paragraph 33. Responding to the

7  allegations in the fourth sentence of paragraph 33, Defendant admits that the rulemaking record

8  for the AB 1493 Regulations was reopened subsequent to the September 23 and 24, 2004 hearing

9  in order to allow public comment concerning changes to the rules and some additional documents.

10  Defendant denies any remaining allegations in the fourth sentence. Defendant denies the

11  allegations in the fifth sentence of paragraph 33.

12      34. The allegations in the paragraph 34 are AIAM's characterizations and contentions

13  regarding the AB 1493 Regulations. Defendant alleges that the AB 1493 Regulations speak for

14  themselves. To the extent that a response is required, the Defendant denies these allegations on

15  the grounds that the AB 1493 Regulations are the best evidence of their own contents.

16      35. The allegations in the paragraph 35 are AIAM's characterizations and contentions

17  regarding the AB 1493 Regulations. Defendant alleges that the AB 1493 Regulations speak for

18  themselves. To the extent that a response is required, the Defendant denies these allegations on

19  the grounds that the AB 1493 Regulations are the best evidence of their own contents.

20      36. Responding to allegations in the first sentence of paragraph 36, Defendant admits that

21  $CO_2$ is ubiquitous but lacks sufficient information or belief to form an opinion as to the truth of

22  the remaining allegations and, on that basis, denies such allegations. Defendant admits the

23  allegations in the second sentence of paragraph 36. Defendant lacks sufficient information or

24  belief to form an opinion as to the truth of the allegations in the third and fourth sentences of

25  paragraph 36 and, on that basis, denies such allegations.

26      37. Responding to allegations in the first sentence of paragraph 37, Defendant admits that

27  the amount of $CO_2$ emitted by combustion depends on the quantity and type of fuel burned but

28  denies all other allegations. Responding to the allegations in the second sentence of paragraph 37,

1    Defendant admits that burning a gallon of gasoline can result in the emission of an amount of

2    CO2 close to 20 pounds, regardless of the characteristics of the vehicle that burned the fuel, but

3    results may vary depending on the composition of the fuel.

4        38. Responding to the allegations in paragraph 38, Defendant admits that some greenhouse

5    gasses, including CO2, disperse evenly in the upper atmosphere and that the effect on the global

6    climate of a given amount of some greenhouse gasses (such as CO2) anywhere on the planet is

7    unaffected by the location of where those greenhouse gasses were emitted.

8        39. Responding to the allegations in paragraph 39, Defendant admits that burning less fuel

9    per mile driven reduces the amount of CO2 emitted from a gasoline fueled motor vehicle but

10   denies all remaining allegations.

11       40. The allegations in paragraph 40 are AIAM's characterizations and contentions regarding

12   the CAFE Standards and the AB 1493 Regulations. Defendant alleges that the CAFE Standards

13   and the AB 1493 Regulations speak for themselves. To the extent that a response is required, the

14   Defendant denies these allegations on the grounds that the CAFE Standards and the AB 1493

15   Regulations are the best evidence of their own contents.

16       41. Defendant denies the allegations in the first and fourth sentences of paragraph 41. The

17   allegations in the second and third sentences of paragraph 41 are conclusions of law to which no

18   response is required.

19       42. The allegations in the first sentence of paragraph 42 are AIAM's characterizations and

20   contentions regarding EPCA. Defendant alleges that EPCA speaks for itself. To the extent that a

21   response is required, the Defendant denies these allegations on the grounds that EPCA is the best

22   evidence of its contents. Defendant denies the allegations in the second sentence of paragraph 42.

23       43. The allegations in the first four sentences of paragraph 43 are AIAM's characterizations

24   and contentions regarding the contents of the CAFE Standards and the AB 1493 Regulations.

25   Defendant alleges that the CAFE Standards and the AB 1493 Regulations speak for themselves.

26   To the extent that a response is required, the Defendant denies these allegations on the grounds

27   that the CAFE Standards and the AB 1493 Regulations are the best evidence of their own

28   contents. Defendant lacks sufficient information or belief to form an opinion as to the truth of the

1    allegations in the fifth sentence of paragraph 43 and, on that basis, denies such allegations.

2        44. The allegations in the first five sentences of paragraph 44 are AIAM's characterizations

3    and contentions regarding the CAFE Standards and the AB 1493 Regulations. Defendant alleges

4    that the CAFE Standards and the AB 1493 Regulations speak for themselves. To the extent that a

5    response is required, the Defendant denies these allegations on the grounds that the CAFE

6    Standards and the AB 1493 Regulations are the best evidence of their own contents. Responding

7    to the remaining allegations in paragraph 44, Defendant lacks sufficient information or belief to

8    form an opinion as to the truth of the allegations and, on that basis, denies such allegations.

9        45. Defendant denies the allegations in paragraph 45.

10       46. Defendant denies the allegations in the first, fifth, seventh and eighth sentences of

11   paragraph 46. The allegations in the second and third sentences of paragraph 46 are AIAM's

12   characterizations and contentions regarding Section 209 of the Clean Air Act. Defendant alleges

13   that Section 209 of the Clean Air Act speaks for itself. To the extent that a response is required,

14   the Defendant denies these allegations on the grounds that Section 209 of the Clean Air Act is the

15   best evidence of its contents. Responding to the allegations in the fourth sentence of paragraph

16   46, Defendant admits that California has not obtained or requested a waiver under Clean Air Act

17   Section 209(b) for the AB 1493 Regulations but denies any and all other allegations in the fourth

18   sentence. Responding to the allegations in the sixth sentence of paragraph 46, Defendant admits

19   that some greenhouse gasses, including CO2, disperse evenly in the upper atmosphere and that the

20   effect on the global climate of a given amount of some greenhouse gasses (such as CO2)

21   anywhere on the planet is unaffected by the location of where those greenhouse gasses were

22   emitted.

23       47. Defendant denies the allegations in the first and fourth sentences of paragraph 47. The

24   allegations in the second sentence of paragraph 47 are AIAM's characterizations and contentions

25   regarding the AB 1493 Regulations and federal emissions regulations. Defendant alleges that the

26   AB 1493 Regulation and federal emissions regulations speak for themselves. To the extent that a

27   response is required, the Defendant denies these allegations on the grounds that the AB 1493

28   Regulations and federal emissions regulations are the best evidence of their own contents.

1    Responding to the allegations in the third sentence of paragraph 47, Defendant admits that auto

2    manufacturers typically require some amount of lead time to develop technology to meet new

3    emission standards but denies the remaining allegations.  Defendant lacks sufficient information

4    or belief to form an opinion as to the truth of the allegations in the fifth sentence of paragraph 47

5    and, on that basis, denies such allegations.

6        48.  Defendant denies the allegations in the first and third sentence of paragraph 48.

7    Responding to the allegations in the second sentence of paragraph 48, Defendant admits that

8    principles of sovereign and official immunity would preclude any claim for monetary injuries or

9    damages by AIAM or its purported members but denies all other allegations in the sentence.

10        49.  Defendant denies each and every allegation in paragraph 49.

11                            FIRST CLAIM FOR RELIEF

12        50.  Responding to the allegations set forth in paragraph 50 of the Complaint, Defendant

13    incorporates her responses to paragraphs 1 through 49 of the Complaint, inclusive, as set forth

14    above.

15        51.  The allegations contained in paragraph 51 of the Complaint are conclusions of law to

16    which no response is required.

17        52.  Defendant denies each and every allegation in paragraph 52.

18        53.  Defendant denies each and every allegation in paragraph 53.

19        54.  Defendant denies each and every allegation in paragraph 54.

20        55.  Defendant denies each and every allegation in paragraph 55.

21        56.  Responding to paragraph 56 of the Complaint, Defendant admits that Defendant and

22    AIAM disagree about whether the AB 1493 regulations are preempted by federal fuel economy

23    law.  However, Defendant denies all other allegations in paragraph 56.

24        57.  Responding to paragraph 57 of the Complaint, Defendant admits that AIAM seeks a

25    declaration that the AB 1493 regulations are preempted by federal fuel economy law.  However,

26    Defendant denies all other allegations in paragraph 57.

27        58.  Defendant denies each and every allegation in paragraph 58.

28    ///

Answer to Complaint in Intervention                                    No. CIV F-04-6663 REC LJO

1

## SECOND CLAIM FOR RELIEF

2   59. Responding to the allegations set forth in paragraph 59 of the Complaint, Defendant

3   incorporates her responses to paragraphs 1 through 58 of the Complaint, inclusive, as set forth

4   above.

5   60 The allegations contained in paragraph 60 of the Complaint are conclusions of law to

6   which no response is required.

7   61. Responding to the allegations in paragraph 61 of the Complaint, Defendant admits that

8   the AB 1493 regulations should be considered to be a standard related to the control of emissions

9   from new motor vehicles. However, Defendant denies all other allegations in paragraph 61.

10   62. Responding to the allegations in paragraph 62 of the Complaint, Defendant admits that

11   California has yet to obtain a waiver for the AB 1493 regulations under Section 209(b) of the

12   Clean Air Act. However, Defendant denies all other allegations in paragraph 62.

13   63. Defendant denies each and every allegation in paragraph 63.

14   64. Responding to paragraph 64 of the Complaint, Defendant admits that Defendant and

15   AIAM disagree about whether the AB 1493 regulations are preempted by the federal Clean Air

16   Act. Defendant denies all other allegations in paragraph 64.

17   65. Responding to paragraph 65 of the Complaint, Defendant admits that AIAM seeks a

18   declaration that the AB 1493 regulations are preempted by the federal Clean Air Act. However,

19   Defendant denies all other allegations in paragraph 65.

20   66. Defendant denies each and every allegation in Paragraph 66.

21

## PRAYER FOR RELIEF

22   67. The remaining allegations in the Complaint are AIAM's prayers for relief to which no

23   response is required. To the degree that a response is required, Defendant denies these

24   allegations.

25

## AFFIRMATIVE DEFENSES

26   1. The Court lacks subject matter jurisdiction over each and every one of AIAM's claims for

27   relief.

28   2. Venue does not lie in this Court.

Answer to Complaint in Intervention

No. CIV F-04-6663 REC LJO

12

1    3. The Complaint fails to state facts sufficient to sustain any claim for relief as against the

2  Defendant.

3    4. AIAM lacks standing to assert the claims that are the subject of the Complaint.

4    5. AIAM's claims for relief are not ripe for review.

5    6. AIAM's second claim for relief should be dismissed under the doctrine of primary

6  jurisdiction.

7    7. The Clean Air Act authorizes California to adopt emission standards for new motor

8  vehicles as California sees fit to protect the health and welfare of Californians.

9    WHEREFORE, the Defendant prays that:

10    1. The Complaint be dismissed;

11    2. AIAM take nothing by its action;

12    3. Judgment be awarded against AIAM and in favor of the Defendant;

13    4. The Court enter a declaration that the AB 1493 Regulations are not preempted or

14  otherwise contrary to law under the theories espoused in AIAM's two claims for relief;

15    5. That Defendant be awarded their costs of suit; and

16    6. The Court provide any other relief it deems appropriate in this matter.

17

18    Dated:  November 15, 2005

19                    Respectfully submitted,

20        BILL LOCKYER
        Attorney General of the State of California

21

22

23        GAVIN G. McCABE
        Deputy Attorney General

24        Attorneys for Defendant

25

26

27

28

**Exhibit "C"**

**THIS EXHIBIT C IS UNDER A REQUEST TO BE FILED UNDER SEAL**

# Exhibit "D"

**THIS EXHIBIT D IS UNDER A REQUEST TO BE FILED UNDER SEAL**

# Exhibit "E"

**THIS EXHIBIT E IS UNDER A REQUEST TO BE FILED UNDER SEAL**

Exhibit "F"

**THIS EXHIBIT F IS UNDER A REQUEST TO BE FILED UNDER SEAL**