JON WALLACE UPTON, SBN 46089
KIMBLE, MACMICHAEL & UPTON
Fig Garden Financial Center
5260 North Palm Avenue, Suite 221
Fresno, California 93792-9489
Telephone: (559) 435-5500
Facsimile: (559) 435-1500

RAYMOND B. LUDWISZEWSKI *Pro Hac Vice*
CHARLES H. HAAKE, SBN 190178
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave. NW
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

Attorneys for Plaintiff Intervenor,
Association of International Automobile Manufacturers

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – FRESNO

| | |
|---|---|
| CENTRAL VALLEY CHRYSLER-JEEP, INC., et al,<br>　　　　　Plaintiffs,<br><br>　　v.<br>Catherine E. WITHERSPOON, in her official capacity as Executive Officer of the California Air Resources Board,<br>　　　　　Defendant,<br><br>THE ASSOCIATION OF INTERNATIONAL AUTOMOBILE MANUFACTURERS<br>　　　　　Plaintiff-Intervenor,<br><br>SIERRA CLUB, NATURAL RESOURCES DEFENSE COUNCIL, ENVIRONMENTAL DEFENSE, BLUEWATER NETWORK, GLOBAL EXCHANGE and RAINFOREST ACTION NETWORK,<br>　　　　　Defendant-Intervenors. | CASE NO. CIV-F-04-6663-REC-LJO<br><br>**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION OF PLAINTIFF-INTERVENOR ASSOCIATION OF INTERNATIONAL AUTOMOBILE MANUFACTURERS FOR SUMMARY JUDGMENT**<br><br>DATE:　　　December 11, 2006<br>TIME:　　　1:30 p.m.<br>JUDGE:　　　Anthony W. Ishii |

Pursuant to Local Rule 56-260(a), Plaintiff-Intervenor the Association of International Automobile Manufacturers ("AIAM") hereby submits this Statement of Undisputed Facts in connection with its Motion for Summary Judgment.

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 1. Carbon dioxide is a natural and unavoidable byproduct of combustion of carbon-containing fuels such as gasoline, coal and natural gas. | Haskew Decl. ¶ 9; Deft. Answer to Complaint in Intervention, ¶ 36 (attached as Exhibit B to the Declaration of Charles H. Haake (the "Haake Decl.")); Average Fuel Economy Standards for Light Trucks Model Years 2008-2011, 71 Fed. Reg. 17566 (April 6, 2006) (the "Light Truck Standards") at 17659. |
| 2. The relationship between fuel consumption and CO2 emissions for a given fuel is fixed and depends only on the carbon content of the fuel that is burned. | Haskew Decl. ¶ 9; Deft. Answer to Complaint in Intervention, ¶ 37. |
| 3. Gasoline is a fossil fuel and each gallon of a typical commercial grade of gasoline contains approximately 5.5 pounds (or 2,475 grams) of carbon. | Haskew Decl. ¶ 11; Light Truck Standard, 71 Fed. Reg. at 17659. |
| 4. In perfect combustion, the oxygen (O2) in the air combines with all of the carbon (C) in the fuel to form carbon dioxide (CO2) and all of the hydrogen (H) in the fuel to form water (H2O). Thus, assuming that a gallon of gasoline contains 2,475 grams of carbon, when that gallon of gasoline is combusted completely, the 2,475 grams of carbon combines with approximately 6,600 grams of oxygen from the atmosphere and becomes approximately 9,075 grams of CO2. | Haskew Decl. ¶ 12; Light Truck Standard, 71 Fed. Reg. at 17659. |
| 5. The combustion of gasoline in internal combustion engines is incomplete, and small amounts of carbon monoxide (CO) and unburned hydrocarbons (HC) are released in the emissions. | Haskew Decl. ¶ 13; Light Truck Standard, 71 Fed. Reg. at 17659. |

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 6. Data from a cooperative test program co-sponsored by EPA, CARB, AIAM and the AAMA on vehicles from model years 1991 through 1994 shows that on average, the ratio of $CO_2$ to CO emissions was 150, and the ratio of $CO_2$ to HC emissions was 1,500.  For newer vehicles, the proportion of $CO_2$ to CO and HC is even greater.  For example, NHTSA estimates that model year 2006 light trucks emit on average 471 grams of $CO_2$ per mile driven in the city, but only 0.042 grams of HC and 0.56 grams of CO. | Haskew Decl. ¶ 13; Light Truck Standard, 71 Fed. Reg. at 17661. |
| 7. Fuel economy is determined pursuant to EPA regulations by measuring the exhaust emissions of HC, CO, and $CO_2$ per mile traveled and, using a formula found at 40 C.F.R. § 600.113-93(e), calculating the amount of fuel burned per mile driven. | Haskew Decl. ¶ 14; 40 C.F.R. § 86.144-90; 40 C.F.R. § 600.113-93(e). |
| 8. Because $CO_2$ is approximately 99% of the carbon-containing emissions from a gasoline-powered motor vehicle, CO and HC play an increasingly and extremely minor role in the measurement of fuel economy. | Haskew Decl. ¶ 15; Light Truck Standard, 71 Fed. Reg. at 17660. |
| 9. Carbon dioxide emissions from a gasoline-powered motor vehicle are directly and inversely proportional to the vehicle's fuel economy and there is a mathematical formula whereby one can convert $CO_2$ emissions into a miles-per-gallon fuel economy figure and vice-versa. | Haskew Decl. ¶ 20; Shulock Depo. at 134:7-10 (attached as Exhibit C to the Haake Decl.); Albu Depo. at 66:21-67:21 (attached as Exhibit E. to the Haake Decl.). |

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 10. There is no known aftertreatment technology available that can capture or chemically alter tailpipe emissions of CO2. | Haskew Decl. ¶ 18; Light Truck Standard, 71 Fed. Reg. at 17656; California Environmental Protection Agency, Air Resources Board, Staff Report: Initial Statement of Reasons for Proposed Rulemaking, Public Hearing to Consider Adoption of Regulations to Control Greenhouse Gas Emissions from Motor Vehicles ("ISOR") (attached as Exhibit 1 to the Request for Judicial Notice) at 103 ("In the case of CO2 tailpipe emissions, however, there generally are no aftertreatment devices that can be applied to reduce engine out CO2 emissions"). |
| 11. The California Air Resources Board staff estimated at the time of the AB 1493 rulemaking that the average baseline small passenger car emits 277.9 grams of CO2 per mile, the average baseline large passenger car emits 329.2 grams of CO2 per mile, the average baseline minivan emits 376.4 grams of CO2 per mile, the average baseline small light duty truck emits 425.7 grams of CO2 per mile, and the average baseline large light duty truck emits 492.6 grams of CO2 per mile. | ISOR at 75 (Table 5.2-12). |
| 12. The California Air Resources Board staff estimated at the time of the rulemaking that a typical baseline vehicle emits 0.005 grams per mile of methane (CH4), which, when adjusted for the global warming potential for CH4 of 23, yields a CO2 equivalent value of 0.115 grams per mile. | ISOR at 79 (Table 5.2-14). |
| 13. According to the AB 1493 Regulations, manufacturers may use a default value of 0.006 grams per mile for N2O in lieu of actually measuring emissions of that gas, which, when adjusted for the global warming potential for N2O of 296, yields a $CO_2$ equivalent value of 1.78 grams per mile. | ISOR at 79 (Table 5.2-14); Cal. Code Regs. tit. 13, § 1961.1(a)(1)(B). |

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 14. The California Air Resources Board staff estimated at the time of the rulemaking that the average baseline vehicle emits 0.007 grams of air conditioning refrigerant (HFC-134a) per mile, which, when adjusted for the global warming potential for HFC-134a of 1,300, yields a CO2 equivalent value of 9 grams per mile. | ISOR at 71-72. |
| 15. The California Air Resources Board staff identified two types of emissions from air conditioning, direct emissions of the refrigerant (hydrofluorocarbons) through leakage and maintenance, and indirect emissions of CO2 due to the added power needed from the engine to operate the system. | ISOR at 69-75. |
| 16. The AB 1493 Regulations deal with air conditioning emissions by allowing credits to account for improvements made to reduce the direct and indirect emissions. These credits could be as high as 13.0 grams per mile for the short term standards (MY 2009 through 2012) and as high as 18.5 grams per mile for the long terms standards (MY 2013 through 2016). | ISOR at 110 (Table 6.1-1). |
| 17. Witnesses from the California Air Resources Board testified that roughly 89% to 90% of the greenhouse gas emissions reductions required by the AB 1493 Regulations will come from reductions in tailpipe emissions of CO2. | Hughes Depo. at 161:12-162:5 (attached as Exhibit D to the Haake Decl.); Shulock Depo. at 147:17-148:19 |
| 18. One can express the CO2 emission level portion of the AB 1493 Regulations in terms of miles per gallon of gasoline consumed through the use of a mathematical formula. | Haskew Decl. ¶¶ 20-23; Shulock Depo. at 167:2-7; Hughes Depo. at 177:5-178:1; 270:8-271:18. |

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 19. Using such a mathematical formula, Steve Albu, Assistant Division Chief of the Mobile Source Control Division at the California Air Resources Board, estimated that the AB 1493 Regulation's 2016 PC/LDT1 $CO_2$-equivalent emission limit of 205 g/mi would translate to a fuel economy of roughly 43 miles per gallon. | Albu Depo. at -52:14-53:22; 61:20-63:14; Albu Depo. Exh. 4 (attached as Exhibit F to the Haake Decl.). |
| 20. The $CO_2$ emission to mpg conversion set forth immediately above does not take air conditioning credits into account. Assuming a manufacturer were to obtain the maximum credit estimated by the California Air Resources Board for direct and indirect emissions from air conditioning systems (13.0 g/mi for MY 2009 through 2012, and 18.5 g/mi for MY 2013 through 2016), and assuming the total elimination of methane and nitrous oxide emissions (thus making $CO_2$ the only greenhouse gas emitted), the maximum allowable fleetwide level of $CO_2$ emissions from the PC/LDT 1 fleet for gasoline-powered motor vehicles and the corresponding fuel economy standard for each model year would be as follows:<br><br>2009:   336 g/mi:   27.0 mpg<br>2010:   314 g/mi:   28.9 mpg<br>2011:   280 g/mi:   32.4 mpg<br>2012:   246 g/mi:   36.9 mpg<br>2013:   245.5 g/mi:   36.9 mpg<br>2014:   240.5 g/mi:   37.7 mpg<br>2015:   231.5 g/mi:   39.2 mpg<br>2016:   223.5 g/mi:   40.6 mpg | Haskew Decl. ¶ 23. |

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 21. Similarly, assuming a manufacturer were to obtain the maximum credit estimated by the California Air Resources Board for direct and indirect emissions from air conditioning systems (13.0 g/mi for MY 2009 through 2012, and 18.5 g/mi for MY 2013 through 2016), and assuming the total elimination of methane and nitrous oxide emissions (thus making CO2 the only greenhouse gas emitted), the maximum allowable fleetwide level of CO2 emissions from the LDT2/MDPV fleet for gasoline-powered motor vehicles and the corresponding fuel economy standard for each model year would be as follows:<br><br>2009:    452 g/mi:    20.1 mpg<br>2010:    433 g/mi:    21.0 mpg<br>2011:    403 g/mi:    22.5 mpg<br>2012:    374 g/mi:    24.2 mpg<br>2013:    373.5 g/mi:  24.3 mpg<br>2014:    368.5 g/mi:  24.6 mpg<br>2015:    359.5 g/mi:  25.2 mpg<br>2016:    350.5 g/mi:  25.9 mpg | Id. |
| 22. The technologies the California Air Resources Board staff assessed to achieve reductions in vehicular $CO_2$ emissions include "valvetrain, transmission, vehicle accessory, hybrid-electric, and overall vehicle modifications designed to reduce engine exhaust CO2 emissions from conventional vehicles" (the "CO2 Reduction Technologies"). These technologies are set forth in Table 5.2-3 of the ISOR and are discussed in greater detail in Section 5.2A of the ISOR. | ISOR at 49-69; Albu Depo. at 433:21-435:19. |
| 23. Implementation of some combination of the CO2 Reduction Technologies is the most cost-effective means for a manufacturer to reduce tailpipe emissions of carbon dioxide. | Albu Depo. at 435:3-437:22; Hughes Depo. at 167:19-169:2; 181:11-17. |

STATEMENT OF UNDISPUTED FACTS

7

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 24. None of the CO2 Reduction Technologies cause reductions in $CO_2$ emissions by capturing or treating engine-out $CO_2$. Rather, each of these technologies reduce emissions of $CO_2$ by causing the motor vehicle to burn less fuel per mile driven. | ISOR at 49-69; Haskew Decl. ¶ 19; Albu Depo. at 433:21-435:19. |
| 25. In fact, approximately 90% of the reductions in greenhouse gas emissions assumed under the AB 1493 Regulations are to come from the use of technologies that improve fuel economy. | Albu Depo. at 437:19-22; Hughes Depo. at 162:2-11. |
| 26. The California Air Resources Board based the mid-term and near-term standards in the AB 1493 Regulations on a 4-year phase in period. The phase in period is the period of time within which manufacturers will introduce the new technologies into their entire vehicle fleet. | ISOR at 2 and 137. |
| 27. The California Air Resources Board staff considered "proposing more stringent vehicle standards" by "shortening the phase-in period" but "concluded that … manufacturers would have a very difficult time incorporating the needed technologies across their fleet as rapidly as would be necessary." CARB staff therefore concluded that "more stringent standards would not be technically feasible." | ISOR at 137. |
| 28. In 2006, the National Highway Traffic Safety Administration (NHTSA) – the federal agency charged with implementing the Corporate Average Fuel Economy (CAFE) program under the Energy Policy and Conservation Act (EPCA), as amended 49 U.S.C. §§ 32901 et seq. – amended the CAFE standard for light duty trucks. | See generally Light Truck Standards |

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 29. The Light Truck Standards are based on a six-year phase in period to "reduce the economic impact of applying technology by providing greater flexibility as to when fuel economy improvements are expected." | Light Truck Standard, 71 Fed. Reg. at 17590 and 17626. |
| 30. The AB 1493 Regulations prescribe the use of the Federal Test Procedure found in 40 CFR, Part 86, Subpart B (40 C.F.R. § 86.144-90) to calculate fleet average greenhouse gas value. This is the same test for measuring CO2 emissions as is utilized by the National Highway Traffic Safety Administration in enforcing the CAFE program. | Cal. Code Regs. tit. 13, § 1961.1(a)(1)(B); 40 C.F.R. § 86.144-90; 40 C.F.R. § 600.113-93(e). |
| 31. In connection with the Light Truck Standards, NHTSA determined that those regulations could cause a loss in sales of up to 10,788 vehicles in the 2010 model year (assuming a 7% discount rate) which the agency concluded will have an impact on employment the agency found to be "minor." | Light Truck Standards, 71 Fed. Reg. at 17591; Final Regulatory Impact Analysis: Corporate Average Fuel Economy and CAFE Reform for MY 2008-2011 Light Trucks at VII-16 (attached as Exhibit 3 to the Request for Judicial Notice). |
| 32. In contrast, the California Air Resources Board's official position is that the AB 1493 standards – which are more stringent that the Light Truck Standards – will not impact sales volumes (and thus employment) at all because the Air Resources Board concluded that the required fuel savings technologies are economically feasible and because there is adequate lead time for manufacturers to adopt them. | Shulock Depo. at 211:12-212:14. |

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 33. Mr. Shulock, the Air Resources Board's Program Manager for Motor Vehicle Greenhouse Gas Regulation, testified that one modeling analysis conducted by or on behalf of the Air Resources Board in the rulemaking, contained in a "Technical Support Documents" called "Other Considerations," showed that the implementation of the AB 1493 Regulations would lead to a decrease in new vehicle sales of approximately 4.7%. In his deposition, Mr. Shulock testified that a loss of sales of this magnitude would amount to roughly 97,000 vehicles in 2020. | Shulock Depo. at 213:7-214:22; 215:21-2; 235:12-17; 238:2-12. |
| 34. California law did not require the California Air Resources Board to assess the job loss that may result in the automobile industry outside of the State of California as a result of the AB 1493 Regulations, and the rulemaking record for the AB 1493 Regulations does not contain any modeling, testing or analysis conducted by or on behalf of the Air Resources Board that assesses the impact on jobs outside of California in connection with the implementation of the AB 1493 Regulations. | Shulock Depo. at 233:2-21; 235:2-11; 238:2-20; 241:6-14; Hughes Depo. at 287:4-8. |
| 35. The Air Resources Board did not make any determination of the total amount of lost new vehicle sales that might occur nationwide if the AB 1493 Regulations were to be enforced in those states that have adopted the regulations, and has not made any determination concerning any resulting loss of employment. | Shulock Depo. at 242:2-21. |

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 36. Regarding the safety impacts of stricter fuel economy standards, NHTSA has stated "it is possible CAFE standards above 27.5 mpg could have a significant effect on safety, even in the longer run, to the extent that they might 'force' consumers into significantly smaller and lighter cars. Thus, were NHTSA to consider setting standards above 27.5 mpg in the future, it agrees that the issue of safety would warrant further attention." | Passenger Automobile Average Fuel Economy Standards for Model Years 1987-88, 51 Fed. Reg. 35594, 35613 (Oct. 6, 1986). |
| 37. NHTSA has also stated that it "would closely examine the safety consequences of any regulatory proposal to raise the CAFE standard if the effect of a standard set too high were to force drastic mix shifts for the fleet as a whole toward very small cars." | Passenger Automobile Average Fuel Economy Standards for Model Year 1989, 53 Fed. Reg. 39275, 39294 (Oct. 6, 1988) |
| 38. The rulemaking record for the AB 1493 Regulations does not contain any modeling, testing or analysis conducted by or on behalf of the Air Resources Board assessing the relative cost-effectiveness of vehicle down-weighting as a compliance option. | ISOR at 57; Hughes Depo. at 287:9-18. |
| 39. The rulemaking record for the AB 1493 Regulations does not contain any modeling, testing or analysis conducted by or on behalf of the Air Resources Board assessing the safety impacts of the AB 1493 Regulations. | Hughes Depo. at 286:19-287:3. |
| 40. In the Light Truck Standards, NHTSA concluded that the "footprint" based approach of Reformed CAFE "enhances safety by eliminating the previous regulatory incentive to downsize vehicles and by raising the light truck standards so that there is no regulatory incentive from the CAFE program to design small vehicles as light trucks instead of passenger cars." | Light Truck Standards, 71 Fed. Reg. at 17568. |

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 41. In the Light Truck Standards, NHTSA concluded that the "footprint" based approach of Reformed CAFE "more fully respects economic conditions and consumer choice" because it "does not force vehicle manufacturers to adjust fleet mix toward smaller vehicles unless that is what consumers are demanding." | Light Truck Standards, 71 Fed. Reg. at 17570. |
| 42. The AB 1493 Regulations are not based on a "footprint" approach. | Cal. Code Regs. tit. 13, § 1961.1(a)(1)(A). |

DATED: November 8, 2006

                                  KIMBLE, MACMICHAEL & UPTON

                                  By:         /s/
                                           Jon Wallace Upton

                                  Attorneys for Intervenor,
                                  Association of International Automobile Manufacturers