Calendar No. 181

| 94TH CONGRESS<br>1st Session | SENATE | REPORT<br>No. 94-179 |
|---|---|---|

ARNOLD & PORTER
LIBRARY

# AUTOMOBILE FUEL ECONOMY AND RESEARCH AND DEVELOPMENT ACT OF 1975

## REPORT

together with

## ADDITIONAL VIEWS

OF THE

## SENATE COMMITTEE ON COMMERCE

ON

## S. 1883

TO CONSERVE GASOLINE BY DIRECTING THE SECRETARY OF TRANSPORTATION TO ESTABLISH AND ENFORCE MANDATORY FUEL ECONOMY PERFORMANCE STANDARDS FOR NEW AUTOMOBILES AND NEW LIGHT DUTY TRUCKS, TO ESTABLISH A RESEARCH AND DEVELOPMENT PROGRAM LEADING TO ADVANCED AUTOMOBILE PROTOTYPES, AND FOR OTHER PURPOSES



U.S. GOVERNMENT PRINTING OFFICE
WASHINGTON : 1975

38-010

| 94TH CONGRESS<br>*1st Session* | SENATE | REPORT<br>No. 94-179 |
|---|---|---|

# AUTOMOBILE FUEL ECONOMY AND RESEARCH AND DEVELOPMENT ACT OF 1975

June 5, 1975.—Ordered to be printed

Mr. MAGNUSON, from the Committee on Commerce, submitted the following

# REPORT

together with

## ADDITIONAL VIEWS

[To accompany S. 1883]

The Committee on Commerce, having considered on original bill (S. 1883) to conserve gasoline by directing the Secretary of Transportation to establish and enforce mandatory fuel economy performance standards for new automobiles and new light duty trucks, to establish a research and development program leading to advanced automobile prototypes, and for other purposes, reports favorably thereon and recommends that the bill as reported do pass.

## SUMMARY AND PURPOSE

The bill amends the Motor Vehicle Information and Cost Savings Act by adding two new titles as described below:

1. The new title V of the Motor Vehicle Information and Cost Savings Act would establish a mandatory fuel economy standards program within the Department of Transportation. The 1980 goal of the program would be to increase by 50 percent over 1974 models the average fuel economy of new passenger automobiles manufactured for sale in, or imported into, this country. A 100-percent improvement would be the goal for model year 1985. The Secretary of Transportation would be authorized, with the consent of Congress, to adjust the 1980 and 1985 goals up or down to the maximum feasible levels. A mandatory fuel economy standards program would also be established for light duty trucks, but light duty trucks would not be subject to the 50- and 100-percent improvement goals for model years 1980 and 1985. Standards for these vehicles would be set by the Secretary of Transportation at maximum feasible levels.

38-010 (1)

## Analysis of the Issues

### A. Is There a Need for Mandatory Fuel Economy Standards?

The goal of this legislation is to make available to the American public the most fuel efficient new car fleets compatible with safety, damageability, and emission standards. Mandatory standards for average new car fuel economy will provide a far greater degree of certainty with regard to fuel savings than fuel taxes, taxes on cars, or any other policy currently being assessed. At a time when U.S. oil imports are approaching 40 percent of consumption, such certainty must be considered essential. Calculations by DOT of the likely impact of the fuel economy standards mandated by S. 1883 indicate that 225,000 barrels per day of petroleum could be saved in 1977 relative to 1975. These savings would increase to 780,000 barrels per day by 1980, and to more than 2,000,000 barrels per day by 1985. This latter figure is roughly one-third of current imports and represents an annual savings of over $8 billion at current prices. It also represents approximately the entire flow of oil expected from the Alaska Pipeline. These fuel savings would increase even more in the period beyond 1985, and would be considerably greater if historic growth patterns for gasoline consumption persist.

The fuel economy standards approach adopted in this legislation leaves maximum flexibility to the manufacturer to meet the standards. This should result in a more diverse product mix and wide consumer choice. In meeting the fuel economy standard applicable to any given model year, one manufacturer could choose new technology, another could choose to shift more rapidly to lighter weight vehicles, and still another could choose some combination of the two.

A question raised at the hearings was whether the fuel economy improvements required by the bill could be achieved via voluntary action by the automobile industry. The President has called for such a voluntary fuel economy improvement program. Unfortunately, the President's program has several deficiencies:

(a) It calls for only a 40-percent fuel economy improvement in model year 1980 relative to 1974, reducing the fuel savings that could be attained through S. ——. This reduction would amount to 55 million barrels in 1980 and to at least 100 million barrels in 1985. (b) The President's program would unnecessarily freeze automobile emission standards for the next 5 years at current California standards for hydrocarbons and carbon monoxide, and at the current 49-state standard for nitrogen oxides. This freeze would ostensibly be imposed in order to meet the fuel economy improvement target. Technical data available to the Committee clearly refutes the need for such a freeze.[1] (c) The so-called agreements provided to the President by the automakers are highly qualified, and legally unenforceable.

The voluntary approach thus offers at best a lower level of fuel savings in exchange for a higher level of pollution. In fact, there is no

---

[1] See, e.g., *Potential for Motor Vehicle Fuel Economy Improvements: Report to the Congress*, U.S. Department of Transportation and the U.S. Environmental Protection Agency, October 24, 1974; *Potential New Car Fuel Economy*, U.S. Federal Energy Administration, November 1974; Hearings before the Committee on Commerce, Serial No. 93-128, pp. 77–100, 330–352; Hearings before the Committee on Commerce, Serial No. 94-8, pp. 304–308.

produce automobiles or light duty trucks, as appropriate, at competitive prices in conformance with the fuel economy standards of section 504(a).

In addition, the Secretary is authorized to waive or modify any civil penalty assessed for non-compliance with the fuel economy standards to the extent that a manufacturer cannot comply because of an unanticipated retail sales mix of different classes of automobiles or light duty trucks, as appropriate, which was clearly beyond the control of the manufacturer and which adversely affected his ability to comply with any such standard. Again, the civil penalties would be waived or modified only to the extent that the non-compliance was attributable to the unanticipated retail sales mix. Also, before any waiver or modification can take place, the manufacturer against whom the penalty was assessed must satisfactorily demonstrate to the Secretary that all technically feasible improvements relating to fuel economy have been made, and that a good faith effort, through advertising, pricing practices, availability of models, or other means available to the manufacturer, to insure that the retail sales mix necessary to meet the standard occurs, has in fact been made.

It is inherent in the goals for fuel economy improvement established under section 504(a), and the standards that will result from them, that manufacturers indeed can influence consumer preference for the types of automobiles and light duty trucks they produce or import. Nonetheless, it is recognized that matters unanticipated by the Secretary, and beyond the control of the manufacturer, can occur, such as an unexpected drop in gasoline prices which could make it more difficult to sell the most fuel efficient vehicles. For these reasons, this provision for waiving or modifying the civil penalties has been provided.

Subsection (c) authorizes a manufacturer who has failed to meet a standard and paid the appropriate civil penalty, to recoup all or a portion of the penalty in any of the next five model years of manufacture. In order to qualify, the manufacturer must exceed the fuel economy standard applicable in that model year. The total amount refunded must not exceed the total amount of the assessed civil penalty in the first instance.

Subsection (d) describes the procedure for reviewing any civil penalty assessed by the Administrator. A notice of appeal is to be made within thirty days after the date of assessment. Determinations of the Secretary are to be set aside if found to be unsupported by substantial evidence. A procedure is also provided for the Attorney General to recover the amount of the assessment if any person fails to pay.

*Section 509. Relationship to State Law.* In order to avoid any manufacturer being required to comply with differing State and local regulations with respect to automobile or light-duty truck fuel economy, this section prohibits States or political subdivisions thereof from adopting or enforcing standards which are inconsistent with the standards contained in this Act.

*Section 510. Reports.* This section contains requirements with respect to two reports required of the Secretary.

Subsection (a) requires that the Secretary prepare and submit to the appropriate committees of the Congress and the President a comprehensive report setting forth findings, conclusions, and recommen-