| 94TH CONGRESS 1st Session | HOUSE OF REPRESENTATIVES | REPORT No. 94-340 |
|---|---|---|

# ENERGY CONSERVATION AND OIL POLICY ACT OF 1975

JULY 9, 1975.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed.

Mr. STAGGERS, from the Committee on Interstate and Foreign Commerce, submitted the following

# REPORT

together with

# MINORITY, SUPPLEMENTAL, AND ADDITIONAL VIEWS

[To accompany H.R. 7014]

The Committee on Interstate and Foreign Commerce, to whom was referred the bill (H.R. 7014) to increase domestic energy supplies and availability; to restrain energy demand; to prepare for energy emergencies; and for other purposes, having considered the same, report favorably thereon with an amendment and recommend that the bill as amended do pass.

The amendment strikes out all after the enacting clause and inserts a substitute text which appears in italic type in the reported bill and in Appendix VIII of this report.

Case 1:04-cv-06663-AWI-GSA   Document 422-2   Filed 11/08/06   Page 2 of 8

Administrative Procedure Act (5 U.S.C. section 553). At such hearings, the Administrator shall require the parties, including the employer involved, to present information concerning the actual or potential effect of such achievement on employment and any alleged discharge, layoff or other discrimination, and also make such recommendations as he deems appropriate. The report, findings and recommendations would be available to the public. This investigation, hearing and reporting procedure would be advisory in nature, and would not require the Administrator to modify or withdraw any guidelines or targets which was the alleged reason for the events or threats investigated.

## I. AUTOMOBILE FUEL EFFICIENCY (TITLE V, PART A)

### BACKGROUND

*Motor Vehicle Fuel Consumption*

In 1972, motor vehicles accounted for almost 20 percent of all energy consumed in the United States, and about 40 percent of all petroleum products consumed in the United States. Improving motor vehicle fuel economy can have a substantial impact on petroleum consumption by 1980, and an even larger impact by 1985.

For example, the joint Department of Transportation—Environmental Protection Agency study "Potential for Motor Vehicle Fuel Economy Improvement" found that an increase in average fuel economy of model year 1980 automobiles to 20 miles per gallon (a 44 percent improvement over 1974) would result in automobiles' consuming 1.2 million barrels per day less petroleum than they would if there had been no improvement. If average fuel economy reached 26 MPG by model year 1985 (an 85 percent improvement), automobile fuel consumption would be reduced by 3 million barrels per day.

*Potential for Improvement*

The Environmental Protection Agency's data indicates that sales-weighted fuel economy for the 1975 model year has increased 12.2 percent over 1974. The DOT-EPA study of the potential for motor vehicle fuel economy improvement indicates that with technological improvements and use of smaller engines but without any shift to smaller cars, sales-weighted fuel economy of automobiles sold in 1980 could reach 20.3 MPG (a 45 percent increase over 1974). If the maximum feasible shift to small cars occurred, sales-weighted fuel economy could reach 22.2 MPG in 1980 ( a 59 percent increase above 1974). The study assumed, for purposes of these projections, that these levels of fuel economy could be achieved without any reduction in the stringency of the statutory hydrocarbon (HC) and carbon monoxide (CO) emission standards which are scheduled to be effective in 1978.

*Emission Standards*

The effects of emission controls on fuel economy are particularly difficult to assess. According to an EPA study, sales-weighted fuel economy for passenger motor vehicles sold in the United States increased 13.8 percent betwen model year 1974 and model year 1975, al-

though permissible emissions of carbon monoxide and hydrocarbons from motor vehicles sold outside California were approximately halved. The change in fuel economy is principally attributable to installation of catalytic converters on about 85 percent of cars sold outside of California and virtually all cars sold in California. The 1975 California standards, which require a further reduction in emissions of about $\frac{1}{3}$ from the 49-State standards, appear to result in a 5.7 percent fuel penalty relative to automobiles subject to the 49-State standards—though this penalty varies widely from manufacturer to manufacturer. The EPA decision on the suspension of the 1978 emission standards estimates that the implementation of the statutory CO and HC standards (those required under current law for 1978) would result in a 5–10 percent fuel penalty, from the 1975 level. Manufacturers' submissions in the suspension proceeding projected a 15 percent fuel penalty. Meeting the statutory HC and CO standards in 1980 would result in a 5 percent fuel penalty in 1980 according to informally received information from DOT. EPA's position appears to be that no fuel penalty will be required in 1980.

*Need*

The Administration has obtained written (but not legally enforceable) understandings from certain domestic manufacturers and importers to increase fuel economy of their automobiles by 40 percent above the 1974 level. The understanding is conditioned on Congress' agreeing to a five-year freeze in emission and safety standards. The Committee feels that the necessity for insuring major improvements in automobile fuel economy is so clear that legally enforceable requirement respecting improvement of fuel economy must be imposed. At the same time, the Committee recognizes that the automobile industry has a central role in our national economy and that any regulatory program must be carefully drafted so as to require of the industry what is attainable without either imposing impossible burdens on it or unduly limiting consumer choice as to capacity and performance of motor vehicles. The Committee has devised the regulatory program, which appears in Part A of the bill, requiring each manufacturer to meet an average fuel economy standard beginning in model year 1978.

*Prior Action by the House*

The automobile fuel economy provisions of H.R. 7014, as introduced, were offered as a Floor amendment to H.R. 6860, on June 12, 1975. The amendment was agreed to by a vote of 306 to 86. Part A of title V of H.R. 7014 as reported is (with one exception) substantively identical to part 1 of title III of H.R. 6860 as passed by the House. The one substantive change consists of a modification of the procedure for adjusting fuel economy standards to reflect more stringent emissions standards (Under the reported bill, no adjustment can be made unless the more stringent emissions standards resulted in a reduction in fuel economy of more than 1 MPG). The automobile fuel economy provisions have been retained in the bill in order to ensure that the House position on automobile fuel economy can be considered in conference in the eventuality that the Senate amends H.R. 7014 to add automo-

Case 1:04-cv-06663-AWI-GSA   Document 422-2   Filed 11/08/06   Page 6 of 8

274

turer shall be entitled to a refund from the United States of an amount equal to the amount of such reduction.

(b)(1)(A) Any manufacturer who the Secretary determines under subsection (a) to have violated a provision of section 507(1) of this Act, shall be liable to the United States for a civil penalty equal to (i) $5 for each tenth of a mile per gallon by which the average fuel economy of the passenger automobiles manufactured by such manufacturer during such model year is exceeded by the applicable average fuel economy standard established under section 502(a) or (c) of this Act, multiplied by (ii) the total number of passenger automobiles manufactured by such manufacturer during such model year.

(B) Any manufacturer who the Secretary determines under subsection (a) violated section 507(2) by failing to comply with an average fuel economy standard under section 502(b), shall be liable to the United States for a civil penalty equal to (i) $5 for each tenth of a mile per gallon by which such standard exceeds the average fuel economy of automobiles, to which such standard applies and which are manufactured by such manufacturer during such model year, multiplied by (ii) the total number of automobiles to which such standard applies and which are manufactured by such manufacturer during such model year.

(2) Any person who the Secretary determines after opportunity for presentation of data, views, and arguments to have violated a provision of section 507(3) of this Act, shall be liable to the United States for a civil penalty of not more than $10,000 for each violation; each day of a continuing violation constituting a separate violation.

(3) The amount of such civil penalty shall be assessed by the Secretary by written notice and collected in a civil action brought by the Attorney General. The Secretary shall have the discretion to compromise, modify, or remit, with or without conditions, any civil penalty assessed against a manufacturer only to the extent (A) necessary to prevent the insolvency or bankruptcy of such manufacturer, or (B) such manufacturer shows that noncompliance resulted from an act of God, a strike, or a fire.

EFFECT ON STATE LAW

SEC. 509. After the effective date of any standard under this part relating to average fuel economy for any automobile or any requirement under this part relating to fuel economy labeling or advertising of any new automobile, no State or political subdivision thereof may adopt or enforce any law or regulation which is applicable to such automobile and which relates to the subject matter of such Federal standard or requirement, unless such law or regulation is identical to such Federal standard or requirement under this part.

USE OF FUEL EFFICIENT PASSENGER AUTOMOBILES BY THE FEDERAL GOVERNMENT

SEC. 510. (a) The President shall, within 60 days after the date of enactment of this Act, promulgate rules which shall require that all passenger automobiles purchased or leased (for a period of one year or more) by all executive agencies in each fiscal year which begins

Case 1:04-cv-06663-AWI-GSA   Document 422-2   Filed 11/08/06   Page 8 of 8