Case 1:04-cv-06663-AWI-GSA    Document 422-3    Filed 11/08/06    Page 1 of 7

Calendar No. 494

| 93D CONGRESS<br>1st Session | SENATE | REPORT<br>No. 93-526 |

# NATIONAL FUELS AND ENERGY CONSERVATION ACT OF 1973

## REPORT

OF THE

### SENATE COMMITTEE ON COMMERCE

ON

### S. 2176

TO PROVIDE FOR A NATIONAL FUELS AND ENERGY CONSERVATION POLICY, TO ESTABLISH AN OFFICE OF ENERGY CONSERVATION IN THE DEPARTMENT OF THE INTERIOR, AND FOR OTHER PURPOSES



NOVEMBER 16, 1973.—Ordered to be printed
Filed under authority of the order of the Senate of November 15, 1973

U.S. GOVERNMENT PRINTING OFFICE
24-378 O        WASHINGTON : 1973

changes in engine and drive train have significant effects on fuel economy. This definition is not intended to suggest that the Secretary could establish different minimum standards of fuel economy for different models. Only a single minimum standard could be established for a given model year.

"Model year" means the period during which the manufacturer intends his "new" models to be sold. The automobile industry operates on an approximately 12-month model year, with some models remaining "new" for a slightly longer period. Traditionally, new cars have been introduced in September of the year preceding the model year designation. It is conceivable that, sometime in the future, some automobile manufacturer will abandon the idea of a new model year being introduced each twelve months. In such an eventuality, subsequent model years for a car that has gone unchanged for more than 18 months could be construed as meaning calendar years.

"Secretary" refers to the Secretary of Transportation. Currently, the Environmental Protection Agency conducts tests on new automobiles for the purpose of certifying compliance with emission standards. Recently the EPA has used the same test to determine fuel economy. The Commerce Committee intends that the responsibility for the administration of the fuel economy program be vested in the Department of Transportation, along with the safety and damagability programs already existing in DOT.

"State" means any state, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, the Canal Zone, Guam, American Samoa, and the Trust Territory of the Pacific Islands.

*Section 504. Minimum standard and long-range plans*

In subsection (a), the Secretary is directed to establish within 18 months after the date of enactment a minimum fuel economy standard for new automobiles applicable for the 1978 model year. There shall be one standard applicable for all 1978 models. In an earlier version of this legislation, it was envisioned that the Secretary could establish various classes of automobiles and establish a minimum standard for each class. Such a concept was rejected by the Committee in favor of a single standard applying across-the-board.

In Subsection (b), guidance is given to the Secretary as to the factors he must consider in determining the level of the standard. Several studies dealing with relationships between various aspects of the automobile (and the transportation industry in general) and energy consumption are commissioned in section 12 of S. 2176. These studies are to be conducted by the Secretary, and he is directed to utilize the results of these studies in the establishment of the level for the minimum fuel economy standard. The Secretary is also directed to interpret this 1978 standard as the first step in an orderly program for achieving at least a 50 percent improvement in industrywide average fuel economy by 1984; and that within the limits of technological and economic feasibility, this standard is expected to be the maximum level achievable.

Subsection (c) authorizes and directs the Secretary to develop a long-range plan for achieving the national purpose of this Act, including the at least 50 percent improvement in average fuel economy by 1984. In the development of this plan, the Secretary is to consider

the results of the studies he conducts pursuant to section 12 of S. 2176. The Commerce Committee, by including the words "at least 50 percent" indicates that the 50 percent level is a minimum level of achievement that the Committee believes to be feasible. It fully expects the Secretary to make every effort to maximize the gains in fuel economy consistent with the other purposes of Section 502(b), limited only by the technological and economic constraints. The Committee believes that the economic constraints which are most appropriate to consider are those which apply to the American economy as a whole, rather than the economic situation of a particular automobile company. The Secretary is given complete freedom as to what implementation mechanisms he proposes to include in his plan for achieving the national goal. The Commerce Committee does not require that such plan include additional minimum fuel economy standards beyond the 1978 model year. There are many mechanisms at work, including free-market forces, which the Secretary could choose to rely on for achieving the goal. However, if the Secretary concludes that his plan should include further minimum standards for fuel economy, such minimum standards shall be promulgated pursuant to the rule-making procedure, unless either House of Congress specifically disapproves of such plan within a 60-day period after submission by the Secretary.

It is recognized that new information which becames available after the promulgation of any standard may make it prudent to revise the standard. Subsection (d) gives the Secretary specific authority to promulgate such revision. Any amended standard must meet the test of technological and economic feasibility, and must be issued pursuant to the same rule-making procedure by which the original standard is issued, but must be promulgated at least 18 months prior to the beginning of the applicable model year to provide for sufficient lead time in the automobile industry. The language "amend" purposely excludes the authority to delay any standard.

Subsection (e) excludes cars solely intended for export from the provisions of this Act.

Subsection (f) provides for judicial review of any rule promulgated under this section. Because of the significant impact which any minimum standard could have on a particular automobile manufacturer, it is important that adequate protection be afforded the automobile industry against standards which do not meet the technological or economic feasibility tests.

*Section 505. Duties and Powers of Secretary*

Subsection (a) of this section empowers the Secretary to conduct hearings and take testimony under oath, and subpoena documents that may be needed to carry out his duties. This authority is needed in order for the Secretary to develop his plan and to make his determination of technological and economic feasibility. Included in this authority is the right to require any person to submit a report or answer questions submitted to him by the Secretary. Failure by any person to comply with a court order obtained by the Secretary is subject to citation for contempt of court.

Subsection (b) requires every manufacturer to make records, test results, and facilities available to the Secretary under reasonable

conditions for the purposes of permitting the Secretary to acquire information needed to fulfill his duties under this Act. Refusal by a manufacturer to comply with a court order obtained by the Secretary is punishable by citation for contempt of court.

Subsection (c) deals with the directive to the Secretary to disclose as much of the information obtained under this section to the public as he determines will be necessary to carry out the purposes of this Act. The Commerce Committee believes that this disclosure requirement is necessary to permit public interest groups, the academic community, and the engineering profession to have access to the information used by the Secretary in developing his plan and promulgating his standards. Such groups and organizations could make significant contributions in assisting the Secretary in meeting his obligations under this Act. Any trade secrets or other information protected by section 1905 of title 18, United States Code, disclosure of which would result in significant competitive damage, would be exempted from such disclosure requirement.

In Subsection (d) of this section, the Secretary is given permission to direct attorneys employed by him to appear and represent him.

*Section 506. Labeling and Advertising*

Subsection (a) requires that a sticker be attached to each new automobile, such sticker indicating the fuel economy which a prospective purchaser can expect from such automobile, and the estimated average annual fuel costs associated with the operation of such automobile. Under Section 503 of this Act, the Secretary is required to define fuel economy and to develop a test procedure for measuring fuel economy. The sticker requirement goes into effect no later than one model year after the establishment of such test procedure. The actual form, content, and manner of affixing the sticker to the automobile are to be determined by the Federal Trade Commission via a rule-making procedure.

Subsection (b) takes cognizance of the fact that any fuel economy figure or estimated average annual fuel cost determination can only be representative of average driving conditions and habits and average fuel costs. Hence, this subsection specifically permits any manufacturer or dealer to inform the customer of the basis for the information on the sticker, and that such information should not be construed as a precise calculation of fuel economy or annual fuel cost to be experienced by any individual purchaser. The Commerce Committee believes that it is important that the consumer be aware of the real possibility that his own experience possibly could be at variance with the figures quoted on the sticker. It is expected that the Federal Trade Commission would be very sensitive to this issue in its development of the wording to be used on the sticker.

Subsection (c) requires that the information regarding fuel economy and average annual fuel costs should also be a conspicuous part of any advertisement for new automobiles which mentions purchase price or acquisition cost. The specific rules governing the manner in which such information appears in advertising shall be developed by the Federal Trade Commission via a rulemaking procedure.

Subsection (d) amends the Automobile Information Disclosure Act

so that the information required by this section is included on the label required by that Act.

*Section 507. Prohibited Conduct*

This section lists those actions which are prohibited under title V. Identified are the failure to comply with any provisions of this title, failure to provide information, the failure to permit inspection, and the manufacturing, processing, sale, distribution, or importation into this country of any automobile which does not meet the applicable minimum standard for fuel economy or any other regulation issued under this title.

*Section 508. Enforcement*

In subsection (a) the violation of the information disclosure and advertising provisions of section 506 is declared to be an unfair trade practice.

Subsection (b) gives the District Courts of the United States authority to issue mandatory or prohibitive injunctions to enforce any provision of this title or any standard, rule, regulation, or order issued thereunder.

In subsection (c), the willful violation of any provision of section 507 of this Act is punishable by up to one-year imprisonment and a $25,000 fine for each violation. Violations of section 507 that are other than willful are subject to civil penalties not to exceed $25,000 for each violation. This penalty is subject, however, to a test of ability to pay.

Subsection (c) authorizes the seizure and condemnation of automobiles that do not meet the minimum fuel economy standard or are otherwise in violation of this title. It is not expected that this remedy would be used to seize cars in the possession of ultimate purchasers.

*Section 509. Relationship to State Law*

This preemption provision would prohibit any State or political subdivision thereof to adopt or enforce any standard or regulation relating to fuel economy standards or fuel economy labeling of automobiles. It is intended that State or local fuel economy standards would be preempted, regardless of whether they were in terms of miles per gallon or some other parameter such as horsepower, or weight. The Federal preemption does not apply under the Federal standard, regulation, or other requirements become effective.

*Section 510. Authorization of Appropriations*

This section authorizes an amount not to exceed $1 million for the fiscal year ending June 30, 1974, and an amount not to exceed $3 million for the fiscal years ending June 30, 1975 and June 30, 1976.

### ESTIMATE OF COSTS FOR SECTION 9

Pursuant to the requirements of Section 252 of the Legislative Reorganization Act of 1970, the Committee estimates the cost of section 9 to be $1 million for the fiscal year ending June 30, 1974 and $3 million for each of the fiscal years ending June 30, 1975 and June 30, 1976. The Committee anticipates that most of this money will be used for development of the long range plan and for development of the fuel economy testing procedures.

## CHANGES IN EXISTING LAW RESULTING FROM SECTION 9

In compliance with subsection (4) of rule XXIX of the Standing Rules of the Senate, changes in existing law made by section 9, as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italic, existing law in which no change is proposed is shown in roman):

### Automobile Information Disclosure Act
### [P.L. 85–506, 72 Stat. 325]

SEC. 3. Every manufacturer of new automobiles distributed in commerce, shall, prior to the delivery of any new automobile to any dealer, or at or prior to the introduction date of new models delivered to a dealer prior to such introduction date, securely affix to the windshield, or side window of such automobile a label on which such manufacturer shall endorse clearly, distinctly and legibly true and correct entries [disclosing the following information concerning] *disclosing the information required by the Automobile Fuel Economy Act together with the following information concerning* such automobile—

#### AGENCY COMMENTS ON SECTION 9

Section 9 was first considered by the Committee as S. 1903 and the comments of agencies to that measure are as follows:

COMPTROLLER GENERAL OF THE UNITED STATES,
*Washington, D.C., July 5, 1973.*
Hon. WARREN G. MAGNUSON,
*Chairman, Committee on Commerc,*
*U.S. Senate.*

DEAR MR. CHAIRMAN: This refers to your request, dated June 8, 1973, for our views on S. 1903, 93d Congress, a bill which if enacted would be cited as the Motor Vehicle Fuel Economy Act.

The bill would, among other things, encourage the development, manufacture, and purchase of motor vehicles and motor vehicle propulsion equipment which will improve motor vehicle fuel economy. Section 2(b)(1). We believe that the provisions of this bill are consistent with current efforts to conserve fuel.

Section 7(c) of the bill would require that the Secretary's procedures for testing propulsion equipment to determine fuel economy be consistent, to the extent possible, with procedures established under the Clean Air Act (42 U.S.C. 1857f–5). We note that another bill pending before your Committee, S. 1055, 93d Congress, would authorize the Low–Emission Vehicle Certification Board—as defined by section 212 of the Clean Air Act (42 U.S.C. 1857–6e)—to conduct a program of research into and development of alternative propulsion systems for automotive vehicles in an effort to develop an economical low-emission vehicle engine. In addition, the Clean Air Act requires the Administrator of the Environmental Protection Agency to establish emission standards for automobile engines.

Section 7(a) of the bill would require the Secretary, by June 1,

68

1976, and each year thereafter, to publish a schedule of fuel economy of each motor vehicle with and without accessories which have a signification Agency, without a specific legislative mandate, is currently evaluant effect on fuel economy. In this respect, the Environmental Protecating measures for making automobile fuel consumption data available to prospective buyers and is expected to publish such data on October 1973 with respect to 1974 models.

We doubt the advisability of having one agency establish standards for vehicle emissions and assigning to a different agency the responsibility for improving fuel economy in vehicle engines. We believe that one agency should be responsible for the combined objective. In addition, should the Congress determine that the Secretary of Transportation will be responsible for the combined objective of emission control and fuel economy, the bill should contain a requirement for coordination between the Secretary and the Administrator of the Environmental Protection Agency.

We recommend that a provision be included in S. 1903 to provide the Comptroller General or his duly authorized representatives with access to records, materials, or information of manufacturers relevant to the fees to be paid under section 9, and to the tests and inspections to be conducted under section 11, in order that we may fully evaluate the administration of the provisions of this act. We believe that access to such records is necessary in the light of our expanding role of evaluating agency programs for consumer protection.

Section 10 authorizes the Secretary to conduct certain research, and for that purpose to make contracts and grants. In order that we may have access to the records necessary to audit activities conducted pursuant to such contracts and grants, we recommend the inclusion in the bill of the following provision:

    SEC.   (a) Each recipient of Federal assistance under this Act, pursuant to grants, subgrants, contracts, subcontracts, loans, or other arrangements, entered into other than by formal advertising, and which are otherwise authorized by this Act, shall keep such records as the Secretary shall prescribe, including records which fully disclose the amount and disposition by such recipient of the proceeds of such assistance, the total cost of the project or undertaking in connection with which such assistance is given or used, the amount of that portion of the cost of the project or undertaking supplied by other sources, and such other records as will facilitate an effective audit.

    (b) The Secretary and the Comptroller General of the United States, or any of their duly authorized representatives, shall, until the expiration of three years after completion of the project or undertaking referred to in subsection (a) of this section, have access for the purpose of audit and examination to any books, documents, papers, and records of such recipients which in the opinion of the Secretary or the Comptroller General may be related or pertinent to the grants, subgrants, contracts, subcontracts, loans, or other arrangements referred to in subsection (a).