LEXSEE 2002 U.S. DIST. LEXIS 20403

**CENTRAL VALLEY CHRYSLER-PLYMOUTH, et al., Plaintiff, vs. CALIFORNIA AIR RESOURCES BOARD, et al., Defendant.**

No. CV-F-02-5017 REC/SMS

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA

*2002 U.S. Dist. LEXIS 20403*

**June 11, 2002, Decided**

**DISPOSITION:** [*1] Plaintiffs' motion for preliminary injunction granted.

**COUNSEL:** For CENTRAL VALLEY CHRYSLER-PLYMOUTH, INC, DAIMLER CHRYSLER CORPORATION, FRONTIER DODGE, INC, GENERAL MOTORS CORPO, HALLOWELL CHEVROLET, KELLER MOTORS, INC, KITAHARA PONTIAC-GMC-BUICK, INC, SURROZ MOTORS, INC, TOM FIELDS MOTORS, INC, plaintiffs: Timothy Jones, Sagaser Franson and Jones, Fresno, CA. Granta Y Nakayama, PRO HAC VICE, Stuart A C Drake, PRO HAC VICE, Andrew B Clubok, PRO HAC VICE, John Gibson Mullan, PRO HAC VICE, Gregory F Corbett, Kirkland and Ellis, Washington, DC.

For MICHAEL P KENNY, defendant: Mark William Poole, Attorney General's Office of the State of California, San Francisco, CA. Marc N Melnick, Attorney General's Office of the State of California, Oakland, CA. Gavin Geraghty McCabe, Office of Attorney General, San Francisco, CA. Mark W Poole, Department of Industrial Relations, San Francisco, CA.

For ALLIANCE OF AUTOMOBILE MANUFACTURERS INC., amicus: Peter E Seley, PRO HAC VICE, Raymond B Ludwiszewski, PRO HAC VICE, Gibson Dunn and Crutcher, Washington, DC.

For NATURAL RESOURCES DEFENSE COUNCIL, PRODUCTION ELECTRIC VEHICLE DRIVERS COALITION, intervenors: Gail Ruderman Feuer, Attorney General's [*2] Office of the State of California, Department of Justice, Los Angeles, CA. Roger Beers, Law Office of Roger Beers, Oakland, CA.

**JUDGES:** ROBERT E. COYLE, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** ROBERT E. COYLE

**OPINION:**

ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND ISSUING PRELIMINARY INJUNCTION

On May 6, 2002, the court heard the Motion for Preliminary Injunction filed by plaintiffs Central Valley Chrysler-Plymouth, Inc., DaimlerChrysler Corporation, Frontier Dodge, Inc., General Motors Corporation, Hallowell Chevrolet Company, Inc., Keller Motors, Inc., Kitahara Pontiac-GMC-Buick, Inc., Surroz Motors, Inc., and Tom Fields Motors, Inc.

Upon due consideration of the written and oral arguments of the parties and the record herein, the court grants plaintiffs' motion and issues the preliminary injunction set forth herein.

Plaintiffs have filed a First Amended Complaint for Declaratory and Injunctive Relief (FAC) against Michael Kenny in his official capacity as Executive Director of the California Air Resources Board (CARB). n1 In pertinent part, the FAC seeks declaratory and injunctive relief against enforcement of the 2001 Zero Emission Vehicle (ZEV) regulations under the [*3] Supremacy Clause of Article VI of the United States Constitution and *42 U.S.C. § 1983* on the ground that the 2001 ZEV regulations are preempted by federal fuel economy laws.

> n1 When this action was commenced, defendants were the CARB and Kenny. However, by Order filed on April 5, 2002, the court dismissed this action against the CARB as barred by the Eleventh Amendment.

Plaintiffs have filed a Motion for Preliminary Injunction, seeking to enjoin enforcement of the 2001 ZEV regulations pending final resolution of this law-

suit. On May 2, 2002, plaintiffs lodged a proposed order granting preliminary injunction. The proposed order indicates that the 2001 ZEV amendments are set forth in the Final Regulation Order issued on April 12, 2002. The proposed order seeks to enjoin enforcement of the 2001 ZEV amendments in models years 2003 and 2004.

A. Governing Standards.

"The purpose of the preliminary injunction is to preserve the status quo between the parties pending a final determination of the merits [*4] of the action." 7-Pt. 2 Moore's Federal Practice, P65.04[1] at 65-30. "'The status quo is that last uncontested status which preceded the pending controversy.'" *Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804, 809* (9th Cir.), cert. denied, *375 U.S. 821, 11 L. Ed. 2d 55, 84 S. Ct. 59 (1963).* The standards governing the issuance of a preliminary injunction in the Ninth Circuit are reiterated in *Martin v. International Olympic Committee, 740 F.2d 670, 674-675 (9th Cir. 1984):*

> In this circuit, a party seeking preliminary injunctive relief must meet one of two tests. Under the first, a court may issue a preliminary injunction if it finds that:
>
> (1) the [moving party] will suffer irreparable injury if injunctive relief is not granted, (2) the [moving party] will probably prevail on the merits, (3) in balancing the equities, the [non-moving party] will not be harmed more than [the moving party] is helped by the injunction, and (4) granting the injunction is in the public interest.
>
> ... Alternatively, a court may issue a preliminary injunction if the moving party demonstrates 'either the possibility of irreparable [*5] injury or that serious questions are raised and the balance of the hardships tips sharply in his favor.' ... Under this last part of the alternative test, even if the balance of the hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.

The Ninth Circuit has concluded, however, that these two tests are "not really two entirely separate tests, but that they are merely extremes of a single continuum." *Benda v. Grand Lodge of IAM, 584 F.2d 308, 315 (9th Cir. 1978),* cert. dismissed, *441 U.S. 937 (1979).* Because the difference between the two formulations is insignificant, the Ninth Circuit accepts either as satisfactory. Benda, id. However, at no point in the continuum is the court "bound to decide doubtful or difficult questions of law or disputed issues of fact." *Dymo Industries, Inc. v. Tapeprinter, Inc., 326 F.2d 141, 143 (9th Cir. 1965).*

B. Likelihood of Success on the Merits.

The Supremacy Clause of the Constitution, art. VI, cl. 2, invalidates state laws that "interfere with, or are contrary to the laws of Congress, [*6] made in pursuance of the Constitution." *Wisconsin Pub. Intervenor v. Mortier, 501 U.S. 597, 604, 115 L. Ed. 2d 532, 111 S. Ct. 2476 (1991)* (quoting *Gibbons v. Ogden, 22 U.S. (9 Wheat) 1, 221, 6 L. Ed. 23 (1824).* n2

> n2 Defendant argues that a presumption against federal preemption should apply to this action because defendant has concluded that zero-emission technology is necessary to achieve California's public health protection goals. However, because the states have not traditionally occupied the field on fuel economy regulation and fuel economy regulation has had a history of significant federal presence, the presumption is not triggered in this action. See *United States v. Locke, 529 U.S. 89, 108, 146 L. Ed. 2d 69, 120 S. Ct. 1135 (2000).*

Plaintiffs contend that the 2001 ZEV amendments cannot be enforced because they are completely preempted by federal law and therefore barred by the Supremacy Clause of the Constitution because "Congress [has] explicitly [*7] defined the extent to which the enactments preempt state law ...." *Industrial Truck Ass'n, Inc. v. Henry, 125 F.3d 1305, 1309 (9th Cir. 1997);* see also *Barnett Bank v. Nelson, 517 U.S. 25, 31, 134 L. Ed. 2d 237, 116 S. Ct. 1103 (1996)* (Federal law preempts state law explicitly if the language of the federal statute reveals an express congressional intent to do so. n3 Plaintiffs argue:

> The federal Energy Policy and Conservation Act of 1975 grant the federal government, through the National Highway Transportation Safety Agency ('NHTSA'), the sole authority to regulate fuel economy for automobiles sold in the United States. The 1975 Act expressly preempts all State regulations 'related to fuel economy standards.' *49 U.S.C. § 32919*(a). Because defendants' rules have the purpose and effect of regulating the fuel economy of a portion of the new-vehicle fleet in California, they are expressly preempted by the 1975 Act.

n3 Plaintiffs also argue that enforcement of the 2001 ZEV amendments is precluded by conflict preemption and field preemption. However, because the court concludes that plaintiffs have demonstrated that enforcement of the 2001 ZEV amendments is precluded by complete preemption, the court does not address these other grounds for preemption.

**[*8]**

In arguing that the regulation of fuel economy is completely preempted by federal law, plaintiffs refer the court to the Energy Conservation Policy Act of 1975 (ECPA), and specifically to *42 U.S.C. § 32919*(a):

> When an average fuel economy standard prescribed under this chapter is in effect, a State or a political subdivision of a State may not adopt or enforce a law or regulation related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard under this chapter.

With respect to the phrase "related to", the Supreme Court explains:

> The ordinary meaning of these words is a broad one – 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with,' ... – and the words thus express a broad pre-emptive purpose.

*Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383, 119 L. Ed. 2d 157, 112 S. Ct. 2031 (1992).*

Plaintiffs have shown that the 2001 ZEV amendments "relate to" fuel economy standards because they "clearly have the purpose of regulating the fuel economy performance of ... the advanced **[*9]** technology hybrids that the Executive Officer predicts the industry will sell in California ...." The "specific rules used by CARB to qualify advanced technology hybrids incorporate and apply the federal fuel economy test procedures" and these "vehicles qualify as AT PZEVs based not on their emission performance, but on their fuel consumption as measured using the federal procedure." In addition, plaintiffs have demonstrated that the 2001 ZEV regulations will have the practical effect of regulating fuel economy. As plaintiffs contend:

The Executive Officer admits this in his analysis of the costs and benefits of the amended ZEV regulation, with his elaborate predictions of the number of AT PZEVs that will be produced as a result of the mandate and his confirmation that those AT PZEVs are likely to be advanced technology hybrids. His estimates of those costs and benefits assume that the AT PZEV hybrids will be advanced technology hybrids, earning additional credits under the ZEV program's 'efficiency multiplier' rules.

Defendant argues that the "objectives of the CAFE fuel economy standards to not conflict with the option allowed under the proposed regulations, in that the **[*10]** option is inextricably tied to zero-emission technology." In so arguing, defendant refers the court to the waiver provision of the Clean Air Act applicable to California:

> Since the inception of the federal government's emission control program it has drawn heavily on the California experience to fashion and to improve the national efforts at emissions control. The history of congressional consideration of the California waiver provision, from its original enactment up through 1977, indicates that Congress intended the State to continue and expand its pioneering efforts at adopting and enforcing motor vehicle emission standards different from and in large measure more advanced than the corresponding federal program; in short, to act as a kind of laboratory for innovation.

*Motor and Equipment Mfrs. Ass'n, Inc. v. E.P.A., 201 U.S. App. D.C. 109, 627 F.2d 1095, 1110-1111 (D.C.Cir. 1979).* Defendant argues that the 2001 ZEV amendments "provide the latest in innovative solutions to our air quality problems [by] providing a flexibility in meeting the new regulations with one provision that allows credit for vehicles that are fuel efficient as well." However, defendant contends, **[*11]** fuel efficiency is not the only criteria because the "fuel efficiency must be achieved by advanced technology which promotes zero-emission technology". The goal of the ZEV program, defendant asserts, "is to push the limits of technology to reach zero-emission vehicles in order to protect the public health" and that, therefore, there is no conflict with federal fuel efficiency standards. In so arguing, defendant refers to the following quotations from the Final Statement of Reasons issued in connection with the 2001 ZEV amendments:

> Under the proposed modifications the long-term advanced componentry scoring methods are based on 1) the $CO_2$ savings that a vehicle achieves versus the average for its class ... or 2) 'best in class efficiency performance within each size and weight classification. The near-alternate method reward the degree to which electric drive is used. All of these characteristics are beneficial in and of themselves as transitions to pure ZEVs. And furthermore, automakers are not required to meet $CO_2$ standards but have the option of earning additional credit for reducing $CO_2$ emissions.
>
> ...
>
> The central element in the provisions on the PZEV allowance for [*12] vehicles with advanced ZEV componentry is that a vehicle does not qualify for an advanced technology allowance unless 'the vehicle is equipped with advanced ZEV componentry such as an advanced battery integral to the operation of the vehicle power train or an electric power train.' The ZEV regulation is designed not only to achieve emission reductions from ZEVs to put on the road in the next few years, but also to stimulate technological developments which will lead to the application of zero-emission technologies in future years ... A vehicle with high fuel efficiency or low $CO_2$ emissions will not receive any allowance unless the vehicle has advanced ZEV componentry such as an electric power train or an advanced battery integral to the operation of the power train. Three optional means of determining the amount of the advanced ZEV componentry allowances are performance standards that measure the utility of the particular componentry in advancing ZEV technologies. This is substantially different from a fuel economy standard.

However, as Plaintiffs note, the distinctions asserted by defendant do not circumvent complete preemption. Preemption cannot be avoided by intertwining preempted [*13] requirements with nonpreempted requirements. See *Napier v. Atlantic Coast Line, 272 U.S. 605, 613, 71 L. Ed. 432, 47 S. Ct. 207 (1926); Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 121 S. Ct. 2404, 2418, 150 L. Ed. 2d 532 (2001)*.

With respect to defendant's assertion that the 2001 ZEV amendments are not preempted because compliance with the contested provisions is optional, the parties refer the court to *Ray v. Atlantic Richfield Co., 435 U.S. 151, 55 L. Ed. 2d 179, 98 S. Ct. 988 (1977)*. In Ray, owners and operators of oil tankers and an oil refinery challenged the constitutionality of Washington statutes regulating the design, size and movement of oil tankers on Puget Sound. In pertinent part, the statutes required that tankers of specified weights must either satisfy safety design standards prescribed by statute or use tug escorts. The Supreme Court held that this provision was invalid under the Supremacy Clause insofar as it imposed design requirements because Title II of the Ports and Waterways Safety Act mandates federal regulations for minimum standards for tanker design and construction. However, the Supreme Court held [*14] in pertinent part, the state provision imposing tug escort requirements for vessels failing to satisfy the state's design standards was not invalid under the supremacy clause because the tug escort provision was not an indirect method of requiring tanker owners to comply with the invalid state tanker design standards. In so holding the Supreme Court stated:

> We do not agree with appellees' assertion that the tug-escort provision, which is an alternative to the design requirements of the Tanker Law, will exert pressure on tanker owners to comply with the design standards and hence is an indirect method of achieving what they submit is beyond state power under Title II. The cost of tug escorts for all of appellee ARCO's tankers in Puget Sound is estimated at $277,500 per year. While not a negligible amount, it is only a fraction of the estimated cost of outfitting a single tanker with the safety features required by § 88.16.190(2). The Office of Technology Assessment of Congress has estimated that constructing a new tanker with a double bottom and twin screws, just two of the required features, would add roughly $8.8 million to the cost of a 150,000 DWT tanker. Thus, contrary [*15] to appellees' contention, it is very doubtful that the provision will pressure tanker operators into complying with the design standards specified in § 88.16.190(2). While the tug provision may be viewed as a penalty for noncompliance with the State's design requirements, it does not 'stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' ...

*435 U.S. at 173 n. 25.*

The court concurs with plaintiffs that differences in cost for the various types of vehicles that can qualify as advanced models and earn credit against the ZEV quota are such that a company trying to comply with the ZEV mandate at the least possible cost will not consider relying in a significant way on any technology other than advanced gasoline hybrids that over-achieve the federal fuel economy standards. The court concludes that plaintiffs have shown a strong likelihood that any other strategy will require a company to market a large number of vehicles that would have huge cost penalties compared with the gasoline hybrid and that would be severely limited in consumer appeal. Therefore, while there are other AT PZEV options available to plaintiffs **[*16]** in the 2002 ZEV amendments, the court is persuaded that these other options are not a viable alternative to production of advanced gasoline hybrids.

C. Irreparable Injury.

1. Status Quo Ante Litem.

Defendant argues that plaintiffs cannot demonstrate irreparable injury resulting from enactment of the 2001 ZEV amendments. The alleged harm from adoption of the 2001 ZEV amendments can only be compared to what would be the status quo if CARB had not adopted the 2001 amendments, i.e., the 1999 ZEV amendments would be in place and enforced, which amendments are more stringent economically. Therefore, based on the status quo ante litem, defendant contends, because CARB eased the economic impact that the ZEV program has on automobile manufacturers by the 2001 ZEV amendments, there can be no finding of irreparable injury if the requested preliminary injunction is not issued.

However, the record before the court indicates that defendant was not enforcing the 1999 ZEV regulations prior to the commencement of this litigation. Plaintiffs filed this action challenging the 2001 ZEV amendments before the OAL process with respect to the 2001 ZEV amendments had been completed. The OAL **[*17]** disapproved the 2001 amendments on procedural grounds and plaintiffs filed an amended complaint also challenging the constitutionality of the 1999 ZEV amendments. However, before filing the amended complaint, plaintiffs filed this motion for preliminary injunction, seeking to enjoin enforcement of the 2001 ZEV amendments. In addition, as plaintiffs point out, enforcement of the 1999 ZEV amendments has not been uncontested noting that plaintiffs argued in opposition to the motion to dismiss that plaintiff could not enforce the 1999 ZEV amendments until CARB had received a waiver of preemption under the Clean Air Act. Finally, plaintiffs argue, the court should not allow defendant's decision after the filing of this action to enforce the 1999 ZEV amendments to preclude plaintiffs from establishing irreparable injury because of the 2001 ZEV amendments.

2. Severability.

Defendant further argues that plaintiffs cannot show irreparable injury because the contested provisions of the 2001 ZEV amendments are severable.

Severability of the 2001 ZEV amendments, a state regulation, is determined under state law. See *Wyoming v. Oklahoma, 502 U.S. 437, 459, 117 L. Ed. 2d 1, 112 S. Ct. 789 (1992);* **[*18]** *City of Auburn v. Qwest Corp., 260 F.3d 1160, 1180 (9th Cir. 2001),* cert. denied,    U.S.   , 122 S. Ct. 809 (2002).* Under California law, an invalid part of an ordinance

> can be severed if, and only if, it is 'grammatically, functionally and volitionally separable.' ... It is 'grammatically' separable if it is 'distinct' and 'separate' and, hence, 'can be removed as a whole without affecting the wording of any' of the measure's 'other provisions.' ... It is 'functionally' separable if it is not necessary to the measure's operation and purpose ... And it is 'volitionally' separable if it was not of crucial importance to the measure's enactment.

*Hotel Employees & Restaurant Employees Internat. Union v. Davis, 21 Cal.4th 585, 613, 981 P.2d 990, 88 Cal. Rptr. 2d 56 (1999).* n4

> n4 Plaintiffs suggest that the absence of a severability clause in the 2001 ZEV amendments raises a presumption of non-severability. However, plaintiffs cite no California cases so holding. Because this issue must be resolved under California law, the holdings of other courts in other jurisdictions will be disregarded.

**[*19]**

Defendant argues that even after excision of the portions of the 2001 ZEV amendments dealing with the AT PZEVs, the 2001 ZEV amendment remain "fully operative". Defendant contends that none of the compliance options created by the 2001 ZEV amendments is dependent on the existence of any other compliance option. If the court were to sever the allegedly preempted provisions of the AT PZEV option, then an automobile manufacturer would have to meet its ZEV quotas through some combination of the other available options. With respect to in-

quiry whether CARB would have adopted the 2001 ZEV amendments without the AT PZEV provisions, defendant argues:

> Here, CARB clearly took a flexible approach in creating a series of compliance options for automakers to meet their ZEV quotas. Because CARB would accept a ZEV compliance plan in which an automaker did not rely on the elements of the AT PZEV option claimed to be preempted, it is clear that the 2001 amendments would function in a manner consistent with the intent of CARB even if the court were to sever those elements by deleting Section 1962(c) (4) (B)1. and 2.

However, as plaintiffs point out, the 2001 ZEV amendments contain no severability **[*20]** clause. Arguably, the reason for this absence is that the achievement of reduced gasoline consumption and higher fuel economy is a central purpose of the 2001 ZEV amendments. The court would be speculating that CARB would have wanted the rest of the ZEV program to go forward without the AT PZEV provisions and the record before the court implies to the contrary. Furthermore, plaintiffs have shown that the AT PZEV component of the ZEV program is critical to another objective of the 2001 ZEV amendments, i.e., the provision of a mechanism that would allow manufacturers to reduce the number of pure ZEVs they would be required to sell. Therefore, the court concludes from the record before it that the AT PZEV portion of the 2001 ZEV amendments is not severable as that term is defined under California law.

3. Loss of Money and Goodwill.

Plaintiffs have presented evidence demonstrating that they will suffer substantial harm during the pendency of this litigation in the absence of a preliminary injunction in the form of "fixed costs of up to hundreds of millions of dollars for such items as investment, research, development and capital expenses" that they otherwise will not be required **[*21]** to make if the 2001 ZEV amendments are found to be unconstitutional and "variable or incremental costs of compliance that will cause the prices of new vehicles to increase, which in turn will lead to other competitive injuries such as loss of goodwill and profits."

Although plaintiffs recognize that economic injuries usually do not constitute irreparable injury for purposes of a preliminary injunction, they argue that, because of sovereign immunity, plaintiffs will not be able to recover these economic injuries from the state in the form of damages if the 2001 ZEV amendments are struck down as unconstitutional.

The general rule is that costs of compliance with a regulatory scheme do not constitute irreparable injury. See *American Hospital Ass'n v. Harris, 625 F.2d 1328, 1331 (7th Cir. 1980).* However, this is only a general rule and a finding of irreparable injury has been based on the excessive cost of compliance when coupled with the inability to recoup those costs should the challenge to the regulation ultimately be successful. See *Texas Food Industry v. Dept. of Agriculture, 842 F. Supp. 254, 260-261 (W.D.Tex. 1993);* see also *National Medical Care, Inc. v. Shalala, 1995 U.S. Dist. LEXIS 10074, 1995 WL 465650 (D.D.C. 1995)* **[*22]** ("Given the overwhelming likelihood that the Plaintiffs will eventually succeed on the merits of their retroactivity claim, it would be absurd to allow the Defendant to impose these costs [of compliance] upon the Plaintiffs at all.").

D. Conclusion.

The court concludes from the record before it that plaintiffs have demonstrated a strong likelihood of success on the merits of their claim that the AT PZEV option set forth in the 2001 ZEV amendments is completely preempted by the Energy Policy and Conservation Act of 1975 and that plaintiffs will suffer irreparable injury if the requested preliminary injunction is not granted because of the very substantial costs of compliance with the 2001 ZEV amendments. The court further concludes that the balance of hardships tips sharply in favor of plaintiffs. In the absence of this preliminary injunction, plaintiffs will be required to expend substantial monies in order to comply with the 2001 ZEV amendments, monies they will not be able to recoup should this court ultimately rule that the 2001 ZEV amendments are unconstitutional.

ACCORDINGLY, IT IS ORDERED that plaintiffs' Motion for Preliminary Injunction is granted.

IT IS FURTHER ORDERED **[*23]** that defendant is enjoined from enforcing the 2001 ZEV Amendments with respect to the sale of new motor vehicles in the 2003 or 2004 model years pending final resolution of this litigation.

Dated: June 11, 2002

ROBERT E. COYLE

UNITED STATES DISTRICT JUDGE