1
2
3
4
5
6
7
8
9
10
11
12          IN THE UNITED STATES DISTRICT COURT FOR THE

13               EASTERN DISTRICT OF CALIFORNIA

14

15  CENTRAL VALLEY CHRYSLER-        )    CV F 04-6663 AWI LJO
    JEEP, INC. et al.,             )
16                                 )
                 Plaintiffs,       )    MEMORANDUM OPINION
17                                 )    AND ORDER ON
          v.                       )    DEFENDANTS' MOTION FOR
18                                 )    SUMMARY JUDGMENT ON
    Catherine E. WITHERSPOON, in her )  THE ISSUE OF RIPENESS
19  official capacity as Executive Officer of )  AND/OR MOOTNESS AND
    the California Air Resources Board, )  ORDER FOR STAY OF
20                                 )    FURTHER PROCEEDINGS
                 Defendant,        )
21                                 )
    THE ASSOCIATION OF            )
22  INTERNATIONAL AUTOMOBILE      )
    MANUFACTURERS,                )
23                                 )
              Plaintiff-Intervenor, )
24                                 )    Doc. # 378
    SIERRA CLUB, NATURAL          )
25  RESOURCES DEFENSE COUNCIL,    )
    ENVIRONMENTAL DEFENSE,        )
26  BLUE WATER NETWORK, GLOBAL    )
    EXCHANGE, AND RAINFOREST      )
27  ACTION NETWORK,               )
                                   )
28            Defendant-Intervenors. )
    _____ )

**INTRODUCTION**

This is an action for injunctive and declaratory relief by plaintiffs Central Valley Crysler-Jeep, Inc., et al. and Plaintiff-intervenors Association of International Automobile Manufacturers ("AIAM") (collectively, "Plaintiffs") against defendant Catherine E. Witherspoon, in her official capacity as Executive Director of the California Air Resources Control Board ("CARB") and defendant-intervenors Sierra Club, et al. (collectively "Defendants"). Plaintiffs' complaint seeks to enjoin enforcement of California state regulations limiting automotive emissions of "greenhouse gases," including carbon dioxide, that were approved by CARB in 2004 pursuant to California Health and Safety Code, section 43018.5(b)(1). Plaintiffs' complaint set forth five grounds for injunctive and declaratory relief. Following the court's order filed on September 25, 2006, three grounds for relief remain: (1) preemption of the California regulations under section 209(a) of the Federal Clean Air Act, 42 U.S.C. § 7543(a); (2) preemption under the Energy Policy and Conservation Act of 1975 ("EPCA"), 49 U.S.C. §§ 32902-32919; and (3) preemption under the foreign policy of the United States and the foreign affairs powers of the federal government ("foreign policy" preemption).

In the instant motion, Defendants concede Plaintiffs' first ground for relief, preemption under the Clean Air Act, and seek to bring this proceeding to a permanent or temporary halt by arguing that Plaintiffs' remaining claims for relief are not now ripe for adjudication or are now moot, or that the proceedings should be stayed pending the outcome of the Supreme Court Case of <u>Massachusetts v. EPA</u>, 415 F.3d 50 (D.C. Cir. 2005), <u>cert. granted</u>,126 S.Ct. 2960 (2006). For the reasons that follow, the court will stay further proceedings pending the announcement of the Supreme Court's decision, which is expected within the next several months.

**PROCEDURAL HISTORY**

The currently operative pleading in this case is the First Amended Complaint ("FAC"), which was filed February 16, 2005. On March 7, 2005, Defendants moved to dismiss the complaint on the grounds of improper venue, lack of ripeness, and by application

1    of the doctrine of primary jurisdiction.  The parties subsequently stipulated to withdraw

2    Defendants' motion on the grounds of ripeness, reserving the rights of the parties to renew

3    the motion at a later time.  On October 21, 2005, the court denied Defendants' motion to

4    dismiss on the remaining grounds of improper venue and primary jurisdiction.

5         On June 1, 2006, Defendants moved for judgment on the all claims in Plaintiffs'

6    complaint.  On September 25, 2006, the court denied the motion with respect to Plaintiffs'

7    claims for preemption under the Clean Air Act, preemption under EPCA, and preemption

8    under United States foreign policy (the "September 25 Order").  The September 25 Order

9    granted judgment in favor of Defendants with respect to Plaintiffs' claims under the Sherman

10   Act and the Dormant Commerce Clause.

11        Defendants' instant motion for summary judgment on the grounds of ripeness was

12   filed on October 27, 2006.  Plaintiffs' opposition was filed on November 13, 2006.

13   Defendants' reply was filed on November 17, 2006.  During the pendency of the instant

14   motion, Plaintiffs  have filed a motion for summary judgment, and Defendants have filed

15   three motions for summary judgment on the issues of Plaintiffs' foreign policy preemption

16   claim, the EPCA preemption claim, and on the issue of lack of associational standing.  For

17   the reasons set forth below, the court will stay further proceedings as to issues of preemption

18   this case until the opinion in <u>Mass. v. EPA</u> issues.  Defendants' motion for dismissal of

19   AIAM on the ground of lack of associational standing will not be affected by the stay.

**FACTUAL BACKGROUND**

21        The factual background of this case was set forth in great detail in the court's

22   September 25 Order.  The factual background in the September 25 Order is briefly

23   summarized here for the purposes of establishing the necessary factual context for this ruling.

24        This action concerns three statutory schemes, one California state agency and one

25   federal agency.  In 2002 the California Legislature enacted Assembly Bill Number 1493,

26   codified at California Health and Safety Code, section 43018.5.  The legislation required

27   CARB to "develop and adopt regulations that achieve the maximum feasible and cost-

28

effective reduction of greenhouse gas emissions from motor vehicles."[1]  The regulatory requirements that were developed by CARB were finally approved on September 2004.  The regulations address four greenhouse gases: carbon dioxide, methane, nitrous oxide and hydrofluorocarbons.  The new regulations are codified at Title 13 of the California Code of Regulations, section 1961.1.  Section 43018.5 of the California Health and Safety Code makes the new regulations applicable starting in 2009, with restrictions on greenhouse gas emissions increasing through 2016.

California Health and Safety Code, section 43018.5 provides civil penalties to manufacturers if emissions standards are not met, provides for the ability of manufacturers to credit current performance in excess of standards to later performance shortfall, and enables a period of time for manufacturers to offset early failures to meet standards with later performance in excess of regulatory standards.

The federal Clean Air Act, 42 U.S.C., section 7543(a), generally preempts state regulation of motor vehicle emissions.  Section 7543(b)(1) provides that California, at the discretion of the director of the Environmental Protection Agency ("EPA") may be granted a waiver to impose standards more stringent than those imposed by the Clean Air Act, if enumerated criteria are met.  Although other states may not request waivers for standards they develop, the other states may adopt standards that are set by California and for which waivers are granted by EPA.  On September 8, 2003, EPA concluded that "EPA does not have authority to regulate motor vehicle emissions of [carbon dioxide] and other [greenhouse gases] under the [Clean Air Act]."  Control of Emissions from New Highway Vehicles and Engines, 68 Fed.Reg. 52,922, 52,929 (September 8, 2003).

The Energy Policy and Conservation Act establishes federal fuel economy standards for new vehicles. 49 U.S.C. §§ 32902(a), 32902(c).  EPCA contains an express preemption provision as follows:

_____

[1]    The terms "regulations" or "regulatory requirements" as used hereinafter refer to the regulations approved by CARB pursuant to California Health and Safety Code, section 43018.5.

4

1
2
3

> When an average fuel economy standard prescribed under this chapter is in effect, a State or a political subdivision of a State may not adopt or enforce a law or regulation related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard under this chapter.

4    42 U.S.C. § 32919.

5    Plaintiffs allege that there is no feasible way to limit carbon dioxide emissions from

6    automobiles except by reducing the consumption of fuel per unit of travel. Thus, Plaintiffs'

7    central contention with respect to EPCA preemption is that the new California regulations

8    limiting vehicle emissions of carbon dioxide are simply fuel economy standards by another

9    name and are therefore preempted by EPCA.

10    As noted briefly in the court's September 25 Order, EPA's decision that it lacked

11    authority to regulate greenhouse gas emissions in new motor vehicles under the Clean Air

12    Act was challenged and upheld in Massachusetts v. EPA, 415 F.3d 50 (D.C.Cir. 2005).  The

13    Supreme Court granted certiorari in that case, 126 S.Ct. 2960,  and oral arguments were heard

14    on November 29, 2006.  Decision on the case is expected by the summer of 2007.  As will be

15    discussed in some detail *infra*, the Massachusetts case now before the Supreme Court raises

16    issues that are identical, or closely related to, issues presented in Plaintiffs' underlying action.

17                    **PARTIES' ALLEGED UNDISPUTED MATERIAL FACTS**

18    Defendants allege only five undisputed material facts. Of these, three are essentially

19    undisputed by Plaintiffs.  First, Defendants allege CARB has applied for a waiver of Clean

20    Air Act preemption for California's greenhouse gas regulations that are the subject of this

21    lawsuit.  Second, Defendants allege EPA has not granted a waiver of preemption; and third,

22    Defendants allege EPA has not issued a notice of opportunity for public hearing on CARB's

23    request for waiver.

24    Plaintiffs vigorously dispute Defendants' proffered undisputed material fact alleging

25    that CARB is not currently enforcing the greenhouse gas emissions regulations.  In

26    opposition to the proffered fact, Plaintiffs offer a lengthy set of disputed material facts that, in

27    sum, seek to establish that the California legislature's passage of Health and Safety Code

28    section 43018.5, combined with the existence of CARB's application for waiver of

5

preemption under the Clean Air Act, has the effect of forcing Plaintiffs to take action immediately, and possibly unnecessarily.  Plaintiffs assert that, in order to meet the 2009 deadlines imposed by California's legislation, the automobile manufacturers must commence compliance activities immediately because of the long lead time that is required to actually integrate the necessary technology into the manufacturing process.

Defendants do not dispute Plaintiff's claims with respect to the lead times necessary to implement technological changes; they contend that such facts are irrelevant to the legal issue of ripeness.  If and when EPA schedules hearings preparatory to considering California's request for waiver of Clean Air Act preemption, Defendants contend the issue of lead time will be a matter for EPA consideration.  Defendants contend it is up to EPA to address industry needs for lead time in the event a waiver is granted, and, by implication, that the deadlines set forth in the application for EPA waiver are only non-binding illustrations of preferred deadlines.

Plaintiffs also dispute Defendants' proffered undisputed material fact that "CARB will take no action to enforce the greenhouse gas emissions regulations unless and until EPA issues a Clean Air Act preemption waiver for the regulations."  Plaintiffs challenge the relevance of the statement in that it represents an assertion by an individual that is not empowered to bind CARB to a particular course of action.  Further, Plaintiffs undisputed material facts in opposition to Defendants' motion allege that CARB has indicated it may seek to circumvent EPA's waiver requirement by declaring the new regulations "within the scope" of the waiver previously granted by EPA for California's low emission vehicle ("LEV") program.  With respect to Defendants' proffered undisputed material fact, Plaintiffs also repeat their contention that absent injunctive relief, Plaintiffs will be compelled to take immediate action to meet future possible time deadlines, even if CARB enforcement of the new regulations is not imminent.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a

6

matter of law.  Fed. R. Civ. P. 56(c); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970);

<u>Poller v. Columbia Broadcast System</u>, 368 U.S. 464, 467 (1962); <u>Jung v. FMC Corp.</u>, 755

F.2d 708, 710 (9th Cir. 1985); <u>Loehr v. Ventura County Community College Dist.</u>, 743 F.2d

1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  When the moving party has the burden

of proof at trial, that party must carry its initial burden at summary judgment by presenting

evidence affirmatively showing, for all essential elements of its case, that no reasonable jury

could find for the non-moving party.  <u>United States v. Four Parcels of Real Property</u>, 941

F.2d 1428, 1438 (11th Cir.1991) (en banc); <u>Calderone v. United States</u>, 799 F.2d 254, 259

(6th Cir. 1986); <u>see also</u> <u>E.E.O.C. v. Union Independiente De La Autoridad De Acueductos Y</u>

<u>Alcantarillados De Puerto Rico</u>, 279 F.3d 49, 55 (1st Cir. 2002) (stating that if "party moving

for summary judgment bears the burden of proof on an issue, he cannot prevail unless the

evidence that he provides on that issue is conclusive.")

    If the moving party meets its initial responsibility, the burden then shifts to the

opposing party to establish that a genuine issue as to any material fact actually does exist.

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986); <u>First Nat'l</u>

<u>Bank of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89 (1968); <u>Ruffin v. County of Los</u>

<u>Angeles</u>, 607 F.2d 1276, 1280 (9th Cir. 1979).  In attempting to establish the existence of this

factual dispute, the opposing party may not rely upon the mere allegations or denials of its

pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e);

<u>Matsushita</u>, 475 U.S. at 586 n.11; <u>First Nat'l Bank</u>, 391 U.S. at 289; <u>Strong v. France</u>, 474

F.2d 747, 749 (9th Cir. 1973).  The opposing party must demonstrate that the fact in

contention is material, i.e., a fact that might affect the outcome of the suit under the

governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv.</u>,

Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

## DISCUSSION

### I. Plaintiffs' Claim Under the Clean Air Act

The court begins by noting a subtle but important shift in the focus of Plaintiffs' desired remedy in this action between the prayer for relief as set forth in the FAC and the relief Plaintiffs' now urge the court to grant in their arguments against Defendants' motion for summary judgment. What the FAC seeks is this court's declaratory judgment and related injunctive order that the regulations promulgated pursuant to Health and Safety Code, section 43018.5 are unenforceable because regulation of carbon dioxide emissions is a field preempted by federal law; including the Clean Air Act, EPCA, and foreign policy. Given the conclusion reached by this court in its September 25 Order, the issue arises whether Plaintiffs' claims under the Clean Air Act are now essentially moot because this court's September 25 Order effectively declared that the new regulations could not be enforced absent a waiver from EPA, a legal conclusion Defendants acknowledge and have conceded in open court.

Plaintiffs acknowledge both Defendants' legal concession and the effect of the court's September 25 Order in preventing the enforcement of the California regulations.

8

1   Notwithstanding their acknowledgment of the effect of the court's September 25 Order,

2   Plaintiffs now focus their argument on the prospect of being effectively forced to begin the

3   implementation of significant and costly changes now, or face the possibility of significant

4   penalties for non-compliance at some later date if EPA grants a waiver of federal preemption

5   and California seeks to enforce the new regulations according to the time schedule for

6   compliance that was set forth in the original California legislation.  Thus, what Plaintiffs now

7   seek, in effect, is assurance by this court that they will not find themselves faced with the

8   *possibility* that they could be compelled at some uncertain future time to comply with a

9   regulatory scheme that forces major fuel efficiency improvements on a time scale that could

10  prove difficult or impossible to meet.

11          The court's September 25 Order is significant in light of Plaintiffs' request for

12  declaratory relief in the FAC in that the September 25 Order essentially supplies the extent of

13  remedy that Plaintiffs may receive with respect to Plaintiffs' claims under the Clean Air Act.

14  The FAC requests that the court declare that California's legislation to institute regulations

15  setting limits on carbon dioxide emissions from automobiles preempted by federal law.  The

16  court made that declaration, albeit not in formal terms – a deficit that will be remedied *infra*.

17  Plaintiffs' concerns with respect to the lead time necessary for regulatory compliance, as

18  expressed in their opposition to Defendants' instant motion for summary judgment, cannot be

19  redressed by the court under Plaintiffs' Clean Air Act claim because the FAC does not

20  request the court to mandate some particular lead time for compliance should an EPA waiver

21  become effective, and does not offer any legal basis for altering the California legislation to

22  require such a mandate.

23          Put simply and directly, this court has ruled, and the parties agree, that the Clean Air

24  Act prevents the enforcement of California's proposed regulations absent a waiver of

25  preemption by EPA.  There is no contention that California does not have the right under the

26  Clean Air Act to develop regulations regulating tailpipe emissions and to apply to EPA for

27  waiver of federal preemption.  It is also self-evident that if and when EPA waives preemption

28  under the Clean Air Act pursuant to 42 U.S.C., section 7543(b)(1), then California's

proposed standards will not be preempted by the Clean Air Act.  Thus, if EPA ever does

issue a waiver of preemption under the Clean Air Act, California will be empowered to

implement its regulations *so far as the Clean Air Act is concerned* under conditions specified

by EPA in the waiver.  To the extent Plaintiffs seek assurance of a reasonable lead time to

implement regulatory changes, that concern is not addressed in the FAC, and Plaintiffs

present no basis for judicially-imposed relief.

Further, Defendants have alleged, and Plaintiffs do not dispute that EPA, in the

process of granting a waiver of preemption, considers the arguments and positions of affected

parties and makes adjustments to conditions, including effective dates, that EPA deems

appropriate.  Thus, whatever California may seek to impose by way of an enforcement date,

the final decision with respect to the establishment of reasonable enforcement dates rests with

EPA's discretion, not with California or this court.  EPA is not a party to this lawsuit, and

this court consequently has no authority to impose limits on EPA's exercise of discretion,

should EPA choose to exercise that discretion at some time in the future.

A case is moot when the issues presented are no longer "live" or the parties lack a

legally cognizable interest in the outcome.  City of Erie v. Pap's A.M., 529 U.S. 277, 277

(2000).  With respect to Plaintiffs' claim under the Clean Air Act, there is, so far as the court

can discern, no longer a live issue remaining between the parties with respect to the Clean Air

Act.  With a formal declaration by this court that California's regulations cannot be

implemented or enforced without a Clean Air Act waiver by EPA, Plaintiffs have been

granted as much relief as the court has authority to grant with respect to Plaintiffs' request for

relief in the FAC regarding their claim for preemption under the Clean Air Act.  The court

will therefore decree that California is without authority to enforce its regulations absent a

waiver of federal preemption under the Clean Air Act and will issue corresponding injunctive

relief.  The court will thereafter dismiss any further action with respect to the Clean Air Act

as moot.

**II.  Plaintiffs' Claims Under EPCA and Foreign Policy - Ripeness**

While the court concludes that Plaintiffs' claim under the Clean Air Act is, or will be,

10

mooted by the court's September 25 Order as formalized in this order, there is no similar holding in that order that would have the effect of mooting Plaintiffs' claims under EPCA or foreign policy. Thus, Plaintiffs' action is currently "live," at least with respect to those two claims. The issue presented by Defendants' motion for summary judgment is whether Plaintiffs' claims under EPCA or foreign policy, while not moot, are nonetheless not ripe for adjudication, or should be stayed.

"'The ripeness doctrine seeks to separate matters that are premature for review because the injury is speculative and may never occur from those cases that are appropriate for federal court action.' [Citations.]" Portman v. County of Santa Clara, 995 F.2d 898, 902 (9th Cir. 1993). "The ripeness inquiry has a constitutional component rooted in the 'case or controversy' requirement of Article III, and a prudential component that focuses on whether the record is adequate to ensure effective review. [Citation.]" City of Auburn v. Quest Corp., 260 F.3d 1160, 1171 ( 9th Cir. 2001). The ripeness inquiry requires the court to determine not only the "fitness of the issue for judicial opinion," but also "the hardship to the parties of withholding court consideration." Abbot Laboratories v. Gardner, 387 U.S. 136, 148 (1967) (overruled on other grounds in Califano v. Sanders, 430 U.S. 99, 97 (1977). The purpose of the ripeness doctrine is twofold: "to prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Id.

Under the Constitutional prong of the ripeness analysis, the court "may not hear a case unless 'there exists a constitutional "case or controversy," that the issues presented are "definite and concrete, not hypothetical or abstract."'" [Citation.] This tenant of ripeness requires the court to consider whether the plaintiffs face 'a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement,' or, by contrast, if the alleged injury is to 'imaginary' or 'speculative' to support jurisdiction. [Citation.]" City of Auburn, 260 F.3d at 1171. "[I]n the context of an administrative case, there must be 'an

administrative decision [that] has been formalized and its effects felt in a concrete way by the challenging parties.' [Citation.]" <u>Charter Fed. Sav. Bank v. Office of Thrift Supervision</u>, 976 F.2d 203, 208 (4th Cir. 1992).

No "precise test" enables a court to distinguish an abstract or hypothetical question from a case or controversy; the distinction is one of degree. <u>See</u> <u>Babitt v. United Farm Workers Nat'l Union</u>, 442 U.S. 289, 297-298 (1979). A plaintiff "must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement," <u>id.</u> at 298, although "'[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is impending, that is enough.'" <u>Id.</u>

Generally, in the context of imposition of regulatory requirements by a governmental agency, an action is not subject to judicial review unless the regulation represents a "final agency action." <u>See</u> <u>Abbott Laboratories</u>, 387 U.S. at 149. An agency action is final where the rule is promulgated in a formal manner following consideration of public comment. <u>Id.</u> at 151. The standard is flexible, however, <u>id.</u> at 150, and the constitutional prong may be satisfied if the legal question before the court is fit for resolution and the plaintiff will suffer hardship if resolution is delayed. <u>Shalala v. Ill. Council on Long Term Care, Inc.</u>, 529 U.S. 1, 13 (2000).

From this court's perspective, the agency in question here is EPA, not CARB or the State of California. Defendants have represented and provided substantial evidence to establish that the process of consideration of a grant of waiver of federal preemption by EPA involves the comprehensive examination of all facets of the proposed regulation, including lead times, as well as the scope and extent of each part of the proposed regulation. <u>See</u> Doc. # 580 (EPA's grant of waiver as to California's amendments to its LEV 1 regulations dated December 21, 2006 (showing EPA's consideration of issues such as appropriate lead time)). In essence, the regulations adopted by California that are the subject of this action constitute an application to the EPA for a grant of waiver of federal preemption which, if granted by EPA, will be granted on terms and conditions deemed proper by EPA based on its receipt of opposition or comment by affected parties. Thus, this court finds there is no "final agency

1   action" as that term is used in <u>Abbot Laboratories</u>.  The court may nonetheless find that the

2   constitutional prong of the ripeness inquiry is satisfied if the court finds there is "hardship" if

3   decisions on either or both of Plaintiffs' EPCA or Foreign Policy claims are delayed.  <u>Id.</u>

4        For purposes of this motion, the harm primarily alleged is that the Plaintiff-

5   manufacturers will be forced into the hobson's choice of committing substantial funds now to

6   implement the changes necessary to meet the California requirements only to find later that

7   the requirements cannot be enforced, or, if they choose not to commit resources to the

8   implementation of changes until the waiver is actually granted, the possibility they will be left

9   with too little time in which to implement the changes without incurring substantial penalties

10  for non-compliance.  In short, the harm claimed by Plaintiffs is the economic uncertainty of

11  being faced with prospect of having to comply with a regulation whose adoption and

12  enforcement is not assured.

13       Plaintiffs have emphasized, both in written and oral argument, the importance of their

14  claim for relief under EPCA.  Because EPCA explicitly preempts any effort by any state

15  agency from regulating fuel efficiency, and because any regulation requiring  reduction in

16  tailpipe carbon dioxide emissions is equivalent to the regulation of fuel efficiency, Plaintiffs

17  claim California's proposed regulation is preempted by EPCA independent of the preemptive

18  effect of the Clean Air Act.  Thus, Plaintiffs contend that the issue of preemption under

19  EPCA would afford Plaintiffs more complete relief because CARB would be prevented from

20  the adoption or enforcement of any regulatory scheme, even if a waiver of federal preemption

21  was granted by EPA, because that scheme would necessarily intrude on the sole jurisdiction

22  of the federal government to set fuel efficiency standards.

23       Thus, the harm Plaintiffs claim will result from a delay in deciding Plaintiffs EPCA

24  and Foreign Policy claims is that Plaintiffs will be unnecessarily subjected to uncertainty

25  stemming from the *possibility* that EPA could reverse its stance and grant a waiver, leaving

26  Plaintiffs exposed to hobson's choice of costly compliance now or possible exposure to

27  penalties for non-compliance with the proposed regulations at some time in the distant future.

28  The court recognizes the even if the actual probability that a waiver of federal preemption

13

would be granted anytime before 2009 were both remote and contingent, the harm claimed in this case, uncertainty in the business climate, is continuously present.

The court finds Plaintiffs have made a sufficient showing of hardship, if resolution of their EPCA and Foreign Policy claims are delayed, to satisfy the constitutional prong of the ripeness inquiry. Shalala, 529 U.S. at 13. The court also finds that the record is sufficiently developed at the present time to satisfy the prudential prong of the inquiry. The court therefore finds that Defendants are not entitled to summary judgment on the ground of ripeness.

## III. Platintiffs' Claims Under EPCA and Foreign Policy - Landis Stay

Defendants contend that even if the issues presented by Plaintiffs action are ripe for adjudication, any further proceedings in this case should be stayed pending the outcome of the Supreme Court's decision in Massachusetts v. EPA.

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. [. . . .] [T]he supplicant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.

Landis v. North American Co., 299 U.S. 248, 254-255 (1936).

A stay of proceedings is appropriate under Landis if (1) the decision in the pending case or cases will settle or simplify some, but not necessarily all, issues of law or fact in the case being stayed, id. at 256, and (2) the stay is reasonable in duration. Id. at 257. More recently, the Ninth Circuit has restated the considerations appropriate to the decision to grant or not grant a stay pursuant to Landis:

> Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9 Cir. 2005).

In an order filed on August 25, 2006, (the "August 25 Order") this court denied

14

1   reconsideration of the magistrate judge's decision to deny a <u>Landis</u> stay pending the outcome

2   of the currently-pending case of <u>Massachusetts v. EPA</u>. Doc. #345; also available at 2006

3   WL 2473663.  In that decision, the court noted there was evidence to support the magistrate

4   judge's conclusion that Plaintiff auto manufacturers would suffer impairment of their ability

5   to "plan research, and implement changes necessary to comply with the regulations in later

6   years." Doc. # 345 at 5:5-6.  The court likewise found that evidence existed to support the

7   Plaintiff car dealers' contention that they would suffer harm from a stay of proceedings

8   because of lowered potential sales of new cars and trucks because of lack of availability of

9   conforming vehicles.  The court also found that the magistrate judge's finding that a stay in

10  this case would not substantially result in the simplification of the legal issues before the

11  court was not erroneous. <u>Id.</u> at 7:12-26.

12        The passage of time, the narrowing of issues remaining to be resolved in this case and

13  the availability of the pleadings currently before the Supreme Court in <u>Massachusetts v. EPA</u>,

14  persuade this court that a <u>Landis</u> stay is now appropriate.

15        At the time the magistrate judge considered Defendants' request for a <u>Landis</u> stay, all

16  five of Plaintiffs' claims for relief were pending resolution.  The court's September 25 Order

17  dismissed Plaintiff's claims under the Dormant Commerce Clause and the Sherman Act.  As

18  of the filing of this order, Plaintiffs' claim of preemption under the Clean Air Act will be

19  finally adjudicated in Plaintiffs' favor.  The only remaining claims under consideration by the

20  court are Plaintiffs' claims for preemption under EPCA and under foreign policy.  The issue,

21  then, is whether the Supreme Court's decision in <u>Massachusetts v. EPA</u> is likely to simplify

22  the narrower scope of legal issues that remain before the court following resolution of all but

23  two of Plaintiffs' claims.  The other notable difference between the situation when the court

24  considered a <u>Landis</u> stay in its August 25 Order and the situation here is that the stay

25  contemplated in August of 2006 was on the order of one year.  The term of the stay

26  contemplated here is on the order of six months.

27        In the August 25 Order, this court expressed doubt that the Supreme Court would

28  reach the merits of its case, and reasoned that even if the Supreme Court did reach the merits,

15

the holding would not affect the disposition of Plaintiff's EPCA or foreign policy preemption claims in this case.  Based on an examination of the pleadings filed before the Supreme Court in Massachusetts v. EPA, this court finds cause to revisit its prior determination.

The issues before the Supreme Court include: (1) whether the appellants (State of Massachusetts and other states and state agencies) have Article III standing to bring a suit to compel EPA enforcement of standards given that the remedy would not significantly reduce worldwide greenhouse gas emissions, Respondents' Brief, 2006 WL 3023028 at *1; (2) whether the "Administrator of the EPA has authority to regulate air pollutants associated with climate change under section 202(a)(1) of the Clean Air Act [. . . ]," Appellants' Brief, 2006 WL 2563378; and, (3) whether "the EPA Administrator may decline to issue emissions standards for motor vehicles based on policy considerations not enumerated in section 202(a)(1) of the clean air act." Id.

Although at first blush it appears the issues of EPCA preemption or foreign policy preemption are not directly before the Supreme Court, closer examination reveals that the legal issues in this case will be greatly simplified if the Supreme Court reaches the merits of the Massachusetts v. EPA case.

While the states have considerable power to regulate emissions from stationary sources, the field of regulation of *emissions* from on-road motor vehicles is expressly preempted by the Clean Air Act. 42 U.S.C., § 7543(a); see California ex rel. State Air Res. Bd. v. Dep't of Navy, 431 F.Supp. 1271, 1275 (N.D. Cal. 1977).  Since the only entree for states into the preempted field of regulation of emissions from on-road motor vehicle engines is through the waiver provision of § 7543(b), states, including California,  may only regulate to the extent EPA grants a waiver of preemption.  EPA can only grant such a waiver if it has the power to regulate.  Thus, if the Supreme Court holds on the merits that EPA lacks power under the Clean Air Act to issue orders regulating greenhouse gas emissions from automobiles, that decision appears likely to foreclose the possibility that any state, including California, could successfully apply to  EPA for a waiver of federal preemption to establish state controls over greenhouse gas emissions because EPA would lack the power to issue the

16

waiver.[2]

If the Supreme Court decides on the merits that EPA lacks authority to regulate greenhouse gas emissions pursuant to the Clean Air Act, and consequently that California may not receive a waiver of preemption to regulate the same greenhouse gases, then the court may not need to reach the issue of preemption under EPCA or foreign policy. The reason for this is prudential. If the Supreme Court determines that the Clean Air Act, as currently set forth, *does not* empower the EPA, and by extension California, to regulate greenhouse gas emissions from automobiles, then it is self-evident that congressional amendment of the Clean Air Act, or the creation of some other, currently non-existent statutory scheme, would be required in order for states or the federal government to attempt regulation of greenhouse gas emissions. Once the court assumes a scenario where the Supreme Court determines EPA lacks authority under the Clean Air Act, logic dictates that the required amendment of the Clean Air Act, or any new legislation to empower EPA or some other agency to regulate carbon dioxide or other greenhouse gas emissions, will necessarily address and eliminate the preemptive force of EPCA or foreign policy. In other words, any future legislation that would empower EPA to issue waivers of federal preemption for the purpose of regulating carbon dioxide emissions  will necessarily address any preemptive impediment to such regulation either directly by statutory language, or indirectly by the declaration of

---

[2]     The issue may arise as to whether, if the Supreme Court holds EPA lacks authority to regulate greenhouse gas emission, the states may be free to regulate greenhouse gas emissions because the regulation of emissions that are not within the scope of EPA's regulatory power are not preempted under the Clean Air Act. Although the court need not decide this issue here, as a preliminary matter it appears the states would continue to be preempted from the field of automobile emissions regulations. 42 U.S.C., § 7521 defines the scope of regulatory power of the EPA pursuant to the Clean Air Act as encompassing  "standards applicable to the emission of any *air pollutant* . . . ." Id. (emphasis added). The preemptive provision of section § 7543, on the other hand, provides that "[n]o state or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the *control of emissions* . . . ." Id. (emphasis added). The preemptive scope of the Clean Air Act is therefore broader than the potential scope of EPA's authority to control emissions with respect to automobiles. Congress's apparent intent is to keep the states out of the field of motor vehicle emissions regulation absent an express waiver.

17

1   congressional intent to allow such regulation notwithstanding EPCA or foreign policy

2   considerations.

3         The court concludes that if Supreme Court in the <u>Massachusetts</u> case were to hold that

4   EPA lacks authority to regulate greenhouse gases, California will likely be completely

5   foreclosed from the implementation of any controls on greenhouse gas emissions by

6   automobiles, absent enabling legislative changes.  Thus, any decision by this court with

7   regard to EPCA or foreign policy preemption would likely be superfluous, unnecessary and

8   prudentially unsound.  If, on the other hand, the Supreme Court should hold with respect to

9   EPA's regulatory that EPA lacks regulatory authority <u>and</u> the states are not preempted under

10  the Clean Air Act, this court's determination with respect to all of Plaintiffs' remaining

11  claims, including Plaintiffs' claim under the Clean Air Act, would be greatly affected and

12  simplified.

13        Similarly, if the Supreme Court were to decide on the merits that EPA *does posses*s

14  the authority to regulate carbon dioxide and other greenhouse gas emissions, that decision

15  would necessarily have a clarifying effect on Plaintiffs claims of EPCA and foreign policy

16  preemption.

17        The court has received and reviewed the briefs submitted to the Supreme Court in

18  <u>Massachusetts</u> by the petitioner states, the Federal Respondent (EPA) and by the respondent

19  automotive dealers and manufacturers associations.  Copies of the briefs were submitted to

20  the court on December 21, 2006.  Doc. # 573, attachments #1 (Petitioners' Brief), #2 (Federal

21  Respondents' Brief), and #3 (respondent Associations' Brief).  The same documents are

22  available at 2006 WL 2563378 (U.S.), 2006 WL 3043970 (U.S.), and 2006 WL 3023028

23  (U.S.), respectively.

24        Both the federal and association respondents in the <u>Massachusetts</u> case supported

25  their arguments that congressional intent to regulate carbon dioxide emissions through the

26  Clean Air Act is lacking by pointing to the apparent decision by Congress to vest exclusive

27  authority to regulate fuel efficiency, and therefore carbon dioxide emissions, with the

28  Department of Transportation through EPCA.  The Federal Respondent's Brief in

18

<u>Massachusetts</u> argues that the Clean Air Act cannot coherently be applied to greenhouse gas emissions, in part because:

> [T]he only practical way of meaningfully reducing motor-vehicle emissions of the greenhouse gases at issue here by improving fuel economy. [. . . .] Because the emissions limits that petitioners advocate would function in practical effect as fuel-economy regulations, EPA's adoption of such limits would subvert the implementation by the Department of Transportation (DOT) of the [EPCA].  ¶  In EPCA, Congress has already created a detailed set of mandatory standards governing the fuel economy of cars and light duty trucks, and has authorized DOT – not EPA – to implement those standards.

Federal Respondents Brief  <u>Massachusetts v. EPA</u>, No. 05-1120 at p. 24-25; 2006 WL 3043970 (U.S.).

The association respondents make essentially the same argument, <u>see</u> Brief for Respondents Alliance of Automobile Manufacturers, et al., <u>Massachusetts v. EPA</u>, No. 05-1120 at p. 37, which is opposed by the petitioners in their brief at page 31.  The arguments presented by the parties in <u>Massachusetts v. EPA</u>, are not *identical* to the arguments in the instant case in the sense that the arguments put forth by the parties in <u>Massachusetts</u> are intended to underpin the respondents' argument that Congress did not intend EPA to regulate greenhouse gas emissions under the Clean Air Act.  In contrast, the point of the argument presented by Plaintiffs in this case is to show the preemptive force of EPCA or foreign policy.  Nevertheless, the elements of the arguments regarding EPCA that are set forth in <u>Massachusetts v. EPA</u> exactly mirror the structure and elements of the arguments presented by Plaintiffs in this case.  Fundamentally, that argument is that the regulation of carbon dioxide emissions from automobiles is tantamount to the regulation of fuel efficiency, which is an area exclusively delegated by Congress to DOT through EPCA.

If the Supreme Court reaches the merits of the petitioners' case in <u>Massachusetts v. EPA</u>, the Supreme Court will necessarily be required to address the issues of whether the regulation of carbon dioxide is, in fact, tantamount to regulation of fuel efficiency, and whether Congress left no room for EPA to regulate such emissions through the Clean Air Act.  These issues, if decided, will greatly simplify the resolution of the issues now before the court in this case.

1    In this Court's August 25 Order, the court agreed with the magistrate judge's

2    determination that there is a substantial chance that the Supreme Court in <u>Massachusetts v.</u>

3    <u>EPA</u> will not reach the merits, but will instead base their decision on the Plaintiffs lack

4    standing to bring suit against EPA to regulate greenhouse gasses.  The court's August 25

5    Order observed that, if the Supreme Court declined, as some consider likely, to reach the

6    merits presented in <u>Massachusetts v. EPA</u>, the Court's opinion would not serve to simplify

7    any of the issues that remain to be decided in this case.

8    Based on this court's recent review of the briefs now before the Supreme Court in

9    <u>Massachusetts v. EPA</u>, this court is now persuaded that even if the Supreme Court does not

10   reach the merits but dismisses the case on grounds of standing, such a decision may

11   nonetheless serve to simplify to some extent the resolution of Plaintiffs' claim in this case

12   with respect to foreign policy preemption.  In <u>Massachusetts v. EPA</u> Petitioners argue, inter

13   alia, that they have standing because  the regulation of greenhouse gases by EPA under the

14   Clean Air Act would substantially reduce greenhouse gases in part because regulation would

15   engender parallel regulation by foreign countries that would have the effect of multiplying the

16   relatively small effect that regulation in this country alone would produce.  Against this

17   argument, the Federal Respondent argued in their brief:

18   Petitioners' forecasts concerning foreign governments' likely responses to
     EPA regulation are even more speculative.  Foreign sovereigns are
19   paradigmatic "independent actors whose exercise of broad and legitimate
     discretion the courts cannot presume either to control or predict." [Citations.]
20   [. . . .] [¶] At least absent a treaty or similar binding arrangement whereby a
     foreign government has *committed* to respond in specific ways to particular
21   United States actions, it is neither feasible nor appropriate for a federal court
     to predict the likely response of a foreign sovereign to EPA regulation in the
22   domestic sphere. [. . . .] Moreover, those forecasts are directly contrary to
     EPA's expressed concern that "[u]nilateral EPA regulation of motor vehicle
23   [greenhouse gas] emissions could * * * *weaken* U.S. efforts to persuade key
     developing countries to reduce the [greenhouse gas] intensity of their
24   economies . . . ."

25   Federal Respondents' Brief <u>Massachusetts v. EPA</u>, No. 05-1120 at 17-18 (italics in original).

26   Consideration of United States foreign policy crop up in the parties' briefs both with

27   respect to standing and with respect to Congress's evident intent to authorize or not authorize

28   EPA to regulate greenhouse gas emissions through the Clean Air Act.  Consideration of U.S.

foreign policy was also evident in oral argument before the Supreme Court.  Although the probability is somewhat remote that the court will directly confront this issue if it declines to reach the merits of the case in <u>Massachusetts</u>, the possibility remains that the Supreme Court may at least touch on the issue of foreign policy in finding the petitioners lack standing and thereby provide guidance for, if not resolution of, Plaintiffs' foreign policy preemption claim now before this court.

The court must balance the potential simplification of issues that may accrue as a result of staying proceeding in this case pending the Supreme Court's decision in <u>Massachusetts</u>  against the probable harm to Plaintiffs if the court does not proceed immediately to decide the remaining EPCA and foreign policy preemption claims.  <u>Lockyer</u>, 398 F.3d at 1110.  The court will declare in favor of Plaintiffs that any attempt by Defendants to regulate greenhouse gas emissions absent a waiver of federal preemption by EPA is prohibited by the Clean Air Act.  In light of this, the harm Plaintiffs can reasonably claim if a stay is now imposed is limited to the differential between the protection afforded by injunctive relief on Plaintiffs' Clean Air Act claim, which will be granted, and the additional quantum of relief Plaintiffs could receive if relief were to be granted under their EPCA and/or foreign policy claims.  The court concludes the additional quantum of relief is small and does not warrant the sacrifice of whatever simplification of issues the Supreme Court's decision in <u>Massachusetts</u> may afford.

The reason that the additional benefit Plaintiffs can derive from injunctive relief under either their EPCA or foreign policy claims small or non-existent is that such relief is unlikely to be of any longer duration or greater extent than injunctive relief under their Clean Air Act.  This is because any event that would foreseeably lead to the reversal of EPA's decision that it lacks authority under the Clean Air Act to regulate greenhouse gas emissions will also likely reverse or invalidate any injunctive relief under either EPCA or foreign policy.  If, for example and as previously discussed, EPA's decision is overridden by the Supreme Court decision in <u>Massachusetts</u>, that decision will necessarily address and overcome Plaintiffs' claims with respect to EPCA and foreign policy preemption.  Similarly, if the ability of either

states or EPA, or some other federal agency to regulate greenhouse gas emissions is granted by Congress, Congress can  remove any preemptive impediments to that end through the legislative process.  The same is true if there is an intervening fundamental change in administrative philosophy with respect to global warming.

In sum, the court finds that, as a practical matter, Plaintiffs are unlikely to suffer any inequity or hardship from a six-month stay of proceedings in this case because any event that is likely to negate injunctive relief based on the Clean Air Act is also very likely to sweep away any injunctive protection Plaintiffs may enjoy under either their EPCA or foreign policy preemption claims.  Fundamentally, the amount of time that Plaintiffs will be free from the specter of regulation of greenhouse gas emissions or fuel efficiency is very likely to be determined by political currents that lie outside the judicial sphere.  If the political process determines the regulation of either greenhouse gases or fuel economy is necessary, no injunctive relief granted by this court, whether on the grounds of Clean Air Act, EPCA, or foreign policy, is likely to prevent that regulation.

The court finds Plaintiffs' exposure to potential inequity or hardship if injunctive relief on their EPCA and foreign policy claims is delayed for six months is negligible and not sufficient to warrant this court moving forward in these proceedings without the benefit of whatever simplification of the issues the Supreme Court's decision in Massachusetts may afford.   Having found that a stay pending the Supreme Court's decision in Massachusetts may simplify the issues in this case, and that the party opposing the stay is unlikely to suffer appreciable inequity therefrom, and finding the extent of the stay is modest, the court finds the criteria for imposition of temporary stay of proceedings set forth in Landis and Lockyer are met. See Lockyer, 398 F.3d at 1110.

THEREFORE, in accordance with the foregoing discussion, it is hereby ORDERED that:

1.    The court hereby DECLARES that California's program to regulate greenhouse gas emissions pursuant to California Health and Safety Code, section 43018.5(b)(1), is PREEMPTED by section 209(a) of the Federal Clean Air Act, 42 U.S.C. § 7543(a).

22

2.      The State of California, and/or any of its political subdivisions and agencies are hereby ENJOINED from the enforcement of any provision of California Health and Safety Code, section 43018.5(b)(1), such injunction to remain in effect until the earlier of such time as EPA may issue a waiver of federal preemption to the State of California or the time Congress may pass, and the President may sign into law, legislation permitting California to carry out such regulation.

3.      Further proceedings in this case are hereby STAYED pending decision by the Supreme Court in <u>Massachusetts v. EPA</u>, No. 05-1120.  Pursuant to this stay, any petition for certification of interlocutory appeal of this court's decision to grant relief on Plaintiffs' Clean Air Act claim will not be granted.  Consideration by the court of Defendants' motion for summary judgment on the ground of lack of associational standing is not stayed by this order.

4.      All trial dates and orders relating to the trial currently set are hereby VACATED.

5.      Defendants' motion for dismissal of Plaintiffs' claim under EPCA or foreign policy preemption on the grounds such claims are either unripe or moot is DENIED.

IT IS SO ORDERED.

**Dated:    January 12, 2007**                              **/s/ Anthony W. Ishii**
0m8i78                                                          UNITED STATES DISTRICT JUDGE