1

2

3

4

5

6

7

8

9

10

11

12            IN THE UNITED STATES DISTRICT COURT FOR THE

13                  EASTERN DISTRICT OF CALIFORNIA

14

| | | |
|---|---|---|
| 15 | **CENTRAL VALLEY CHRYSLER-JEEP, INC. et al.,** ) | **CV F 04-6663 AWI LJO** |
| 16 | ) | |
| 17 | **Plaintiffs,** ) | **MEMORANDUM OPINION AND ORDER ON PLAINTIFF-INTERVENOR'S MOTION** |
| 18 | **v.** ) | **FOR RECONSIDERATION AND PLAINTIFFS' MOTION** |
| 19 | **James N. GOLDSTENE, in his official capacity as Executive Officer of the California Air Resources Board,** ) | **FOR MODIFICATION OF TERMS OF INJUNCTIVE** |
| 20 | ) | **RELIEF** |
| 21 | **Defendant,** ) | |
| 22 | **THE ASSOCIATION OF INTERNATIONAL AUTOMOBILE MANUFACTURERS,** ) | |
| 23 | ) | |
| 24 | **Plaintiff-Intervenor,** ) | |
| 25 | **SIERRA CLUB, NATURAL RESOURCES DEFENSE COUNCIL, ENVIRONMENTAL DEFENSE, BLUE WATER NETWORK, GLOBAL EXCHANGE, AND RAINFOREST ACTION NETWORK,** ) | [Documents 665 and 672] |
| 26 | ) | |
| 27 | ) | |
| 28 | **Defendant-Intervenors.** ) | |

In its memorandum opinion and order filed January 16, 2007, the court enjoined the

"State of California and/or any of its political subdivisions and agencies:"

> from the enforcement of any provision of California Health and Safety Code, section 43018.5(b)(1), such injunction to remain in effect until the earlier of such time as [Environmental Protection Agency ("EPA")] may issue a waiver of federal preemption to the State of California or the time Congress may pass, and the President may sign into law, legislation permitting California to carry out such regulation.

Doc. # 606 at 23 (hereinafter, the "January 16 Order").  The court's memorandum opinion

and order filed December 11, 2007, and refiled as corrected on March 26, 2008, (the "March

26 Order") granted  motions for summary judgment by defendant State of California

("Defendant") and defendant intervenors, Sierra Club, et al. ('Defendant-intervenors') as to

the remaining claims in this case and left the injunction established by the January 16 Order

undisturbed.  As of the present time, EPA has not granted a waiver of federal preemption, nor

has Congress passed any legislation that would allow California to implement the fuel

economy provisions of California Health and Safety Code section 43018.5(b)(1) (hereinafter

the "AB1493 regulations").

Now before the court are two motions, one by Plaintiff-intervenor, Association of

International Automobile Manufacturers ("AIAM") and the other by plaintiffs Central Valley

Chrysler-Jeep, et al. ("Plaintiffs"), that together request the court modify the scope of

injunctive relief granted by the January 16 Order and re-visit its interpretation of the

preemptive force of the Clean Air Act.  For the reasons that follow, the court will deny the

motions.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

AIAM filed its motion to modify the scope of the injunction and to re-interpret the

preemptive language of section 209 of the Clean Air Act, 42 U.S.C. § 7543, on April 4, 2008.

Doc. # 665.  Opposition to AIAM's motion was filed on April 25, 2008, and AIAM's reply

was filed on May 5, 2008.  Plaintiffs filed their motion to modify injunctive relief on April

28, 2008.  Defendant and Defendant-intervenors filed their opposition on May 23, 2008.

Plaintiffs filed their corrected reply on June 12, 2008.  The court vacated the scheduled

2

hearing date of May 12, 2008, set a further briefing schedule, and took the matter under

submission as of June 9, 2008.

The focus of both AIAM's and Plaintiffs' motions is an executive order promulgated

by California Air Resources Board ("CARB") that Plaintiffs and AIM contend constitute an

attempt by CARB to enforce the AB1493 regulations (the "Executive Order"). The

Executive Order, as provided by AIAM in their moving brief, states as follows in pertinent

part:

> A January 16, 2007 Order currently enjoins the Executive Officer from
> enforcing any provision of California Health and Safety Code section
> 43018.5(b)(1) concerning certification to the requirements for 2009 and
> subsequent model passenger cars, light duty trucks and medium-duty vehicles
> adopted pursuant to AB 1493. (Document 606, Case No. 1:04-CV-06663 -
> AWI - GSA, U.S. Dist. CT. E. Dist. Of CA (Fresno Div.)). *If said injunction
> ceases to be in effect, the manufacturer will have 45 days from the ARB
> notification to demonstrate compliance with AB 1493 requirements*,
> including determination of the greenhouse gas values for the test group listed
> in this Executive Order. Nothing in this Executive Order is intended to
> constitute enforcement of any requirement under AB 1493 for 2009 model
> year vehicles.

Doc. # 665 at 4:10-4:16 (emphasis provided by AIAM).

## LEGAL STANDARD

AIAM's contends, in part, that section 209(a) of the Clean Air Act, which generally

preempts state regulation of motor vehicle emissions, should be interpreted as being

disjunctive from the provisions of 209(b) of the Clean Air Act, which provides that EPA may

grant a waiver of federal preemption for automotive emissions standards developed by

California. Because the court did not adopt this interpretation of section 209 of the Clean Air

Act in either the January 16 or the March 26 Orders, the court construes AIAM's request for

re-interpretation of the Clean Air Act as a motion for reconsideration pursuant to Rule 60(b)

of the Federal Rules of Civil Procedure.

Rule 60(b) permits a district court to relieve a party from a final order or judgment on

grounds of: "(1) mistake, inadvertence, surprise, or excusable neglect; (3) fraud . . . of an

adverse party, . . . or (6) any other reason justifying relief from the operation of the

judgment." The motion for reconsideration must be made within a reasonable time, in any

event "not more than one year after the judgment, order, or proceeding was entered or taken." Id.

Motions to reconsider are committed to the discretion of the trial court. Combs v. Nick Garin Trucking, 825 F.2d 437, 441 (D.C.Cir. 1987); Rodgers v. Watt, 722 F.2d 456, 460 (9th Cir. 1983) (en banc).  To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.  See, e.g., Kern-Tulare Water Dist. v. City of Bakersfield, 634 F.Supp. 656, 665 (E.D.Cal. 1986), aff'd in part and rev'd in part on other grounds, 828 F.2d 514 (9th Cir. 1987), cert. denied, 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988).

AIAM and Plaintiffs also request that the court exercise its power to modify the existing injunction.  A court's authority to modify the terms of injunctive relief is inherent, A&M Records, Inc. v. Napster, Inc., 284 F.3d 1091, 1098 (9th Cir. 2002), being derived both from the court's powers in equity and from Rule 60(b).  Earth Island Inst. v. S. California Edison, 166 F.Supp.2d 1304, 1309 (S.D. Cal. 2001).  A court has discretionary power to modify an injunction when changing circumstances, or a better appreciation of the facts in light of experience indicate existing injunctive orders are not well adapted to the purpose for which they were made.  Id.; see also System Federation No. 91 v. Wright, 364 U.S. 642, 647-648 (1961).

**DISCUSSION**

**I. Re-interpretation of Section 209 of the Clean Air Act**

Section 209(a) of the Clean Air Act provides as follows, in pertinent part:

No state or political subdivision shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part.

42 U.S.C. § 7543(a).  Section 209(b) provides, in pertinent part:

(1) The Administrator shall, after notice and opportunity for public hearing, waive application of this section to any State which has adopted standards (other than crankcase emission standards) for the control of emissions from new motor vehicles or new motor vehicle engines prior to March 30, 1966, if the State determines that the State standards will be, in the aggregate, at least as protective of public heath and welfare as applicable Federal standards.  No such waiver shall be granted if the Administrator finds that –

4

1

¶ . . . . ¶

2
       (C) such State standards and accompanying enforcement
procedures are not consistent with section 7521(a) of this title

3

4
    (2) If each State standard is at least as stringent as the comparable applicable
Federal standard, such State standard shall be deemed to be at least as
protective of health and welfare as such Federal standards for purposes of
paragraph (1).

5

6
    (3) In the case of any new motor vehicle or new motor vehicle engine to
which State Standards apply pursuant to a waiver granted under paragraph (1),
compliance with such State standards shall be treated as compliance with
applicable Federal standards for purposes of this subchapter.

7

8
42 U.S.C. § 7543(b) (italics added).

9

10
    "In statutory interpretation, courts must adhere to the plain language of a statute

11
unless 'literal application of a statute will produce a result demonstrably at odds with the

12
intentions of its drafters.' [Citation.]"  <u>Resolution Trust Corp. v. Bayside Developers</u>, 43 F.3d

13
1230, 1236 (9th Cir. 1995).  AIAM contends that the disjunctive wording in section 209(a),

14
providing that no "political subdivision shall adopt *or* attempt to enforce any standard"

15
means that "adopting a regulation and enforcing it are two statutorily, and indeed

16
conceptually, different government activities and must be treated as such by courts."  Doc. #

17
665 at 7: 8-9.  AIAM contends that because the word "or" indicates disjunction between the

18
two categories of adoption and enforcement, the doing of either by a state violates the terms

19
of section 209(a).  <u>See</u> <u>Zorich v. Long Beach Fire Dept.</u>, 118 F.3d 682, 684-685 (9th Cir.

20
1997) ("or" rather than "and" shows intent to apply statutory provision to each category listed

21
so long as congressional intent is not defeated).

22
    It is not necessary to resort to the cannons of statutory interpretation to see the flaw in

23
AIAM's argument.  The use of the word "or" in section 209 indicates a disjunction between

24
the two verbs on either side of the word "or;" those verbs being "adopt" and "attempt to

25
enforce."  There is absolutely no support for the proposition that, because the word "or" is

26
used to indicate a disjunction between two verbs in subsection 209(a), that the provisions of

27
the entire subsection are somehow disjoined from the provisions of any other subsection,

28
including subsection 209(b). The meaning and purpose of subsection 209(b) is plain on its

face – it constitutes an exception to the preemptive force of section 209(a).  Subsection 209(b) provides that where California (the only state that fits the qualifying description of having regulated prior to March 30, 1966), has *adopted* a regulation of motor vehicle engine emissions, those regulations *shall* be granted a waiver from the preemptive force of subsection 209(a) *if* the specified requirements are met.  Although section 209(a) may prohibit a state from adopting *or* attempting to enforce "any standard relating to the control of emissions from new motor vehicles," that prohibition simply does not apply where California *adopts* regulations under the terms and conditions specified by section 209(b).  There is absolutely rule of statutory construction that does what AIAM invites the court to do; that is, to invalidate the exception because the rule contains the word "or."

AIAM contends its interpretation of the interplay between subsections 209(a) and 209(b) of the Clean Air Act must prevail because that interpretation does not negate congressional intent.  This is simply not the case.  Without any support for the proposition, AIAM contends that it was Congress's intent to prevent the sort of harm that AIAM alleges the automobile manufacturers will suffer – being burdened with the dilemma of whether to invest in carbon dioxide reducing technology or risk being out of compliance with standards that may or may not be granted waiver of preemption sometime in the future.  Whether or not Congress actually had that intent, it is indisputable that the plain language of subsection 209(b) provides an exception to subsection 209(a) that allows California to *adopt* automobile emissions regulations and submit same to EPA for their consideration.   AIAM cannot escape the fact that their interpretation of the interplay between subsections 209(a) and 209(b) would require that courts thwart the clearly stated intent of Congress to allow California to *adopt* regulations under subsection 209(b) that would be granted waiver from the application of subsection 209(a) if the statutory prerequisites are met.

The court will decline AIAM's invitation to interpret the provisions of subsection 209(a) of the Clean Air Act as disjunctive from the provisions of subsection 209(b) because the interpretation requested is without support in law, logic, or grammar.

**II. Scope of Injunctive Relief**

Both Plaintiffs and AIAM contend that the Executive Order quoted above constitutes an attempt by CARB to enforce the terms of the AB 1493 regulations even though a waiver of federal preemption has been denied by EPA. In addition, Plaintiffs contend that EPA's denial of California's request for waiver of federal preemption constitutes a change in circumstances such that the injunctive relief previously granted by the court should be modified to prevent California's attempt to enforce the AB 1493 regulations.

*A. The Executive Order Does Not Attempt Enforcement of the AB 1493 Regulations*

Plaintiffs and AIAM contend that the Executive Order is an impermissible attempt to enforce the AB 1493 regulations because it requires proof of compliance from manufacturers within 45 days of notification by CARB following the grant of waiver of federal preemption by EPA. Plaintiff's contention derives from the undisputed fact that compliance with substantially more stringent carbon dioxide emissions standards requires a multi-year period of research and development before necessary changes can be made at the level of the production line. Plaintiffs contend the need for a multi-year development period means that manufacturers will be forced into the unpalatable Hobson's choice of undertaking substantial current investment to meet standards they believe may never be imposed or to forego current investment and be caught in non-compliance if and when the standards are granted waiver of preemption.

Plaintiffs contend that EPA's determination of whether proposed California Regulations allow sufficient lead time to implement the changes necessary uses the state's final adoption of their AB 1493 regulations as the starting point for the EPA's determination of sufficient lead time for purposes of 42 U.S.C. § 7521(a)(2). Thus, they argue, the clock for compliance with the terms of AB 1493 began to run in 2004, when California adopted the AB 1493 regulations, rather than at some future time when EPA may grant the waiver of federal preemption. Defendant does not dispute this contention and evidence offered by Defendant supports the contention. See California State Motor Vehicle Pollution Control

7

Standards; Waiver of Federal Preemption; Decision of the Administrator (Medium-duty

Waiver); 59 Fed. Reg. 48625 (Sept 22, 1994) and supporting Decision Document Excerpt;

Exhibit 1 to Defendant's Request for Judicial Notice, Doc. # 670-3 (hereinafter the "Decision

Document") at 39 (holding that the "lead time clock" starts when California "adopts" the

regulations).

From these undisputed facts, Plaintiffs contend that CARB's Executive Order

announcing its intent to enforce the AB 1493 regulations if and when EPA grants a waiver of

federal preemption without committing to the provision of further lead time is tantamount to

enforcement of the AB 1493 regulations.  Plaintiffs content CARB's stated intent to enforce

the AB 1493 regulations presents the manufacturers with a Hobson's choice that requires

manufacturers to investing now to comply with regulations that may never be promulgated so

that they are not caught at some later time out of compliance with regulations whose lead

time is inadequate by the time the regulations are finally put into effect.  The court disagrees

with Plaintiff's characterization of CARB's Executive Order.

CARB's Executive Order does not, on its face, invoke the provisions of AB 1493 or

impose any present restriction on manufacturers' ability to market automobiles that are not in

compliance with the emissions regulations of AB 1493 in California.  The Executive Order,

to the extent it has been quoted by Plaintiffs, merely states what has been assumed, or should

have been assumed by the parties all along – California intends to enforce its AB 1493

regulations if and when it can.

In its January 16 Order, the court enjoined California or any of its political

subdivisions from enforcement of the provisions of AB 1493 until such time as EPA may

grant a waiver of federal preemption or the legislature may pass and the President sign a law

otherwise permitting enforcement of the AB 1493 regulations.  The court's January 16 order

acknowledged that CARB would be able to enforce the AB 1493 regulations so far as the

Clean Air Act is concerned if and when a waiver of federal preemption is granted.  EPA to

this point has refused to grant the waiver.  So far as the Clean Air Act is concerned, CARB is

in no more or less of a position to enforce its AB 1493 regulations now than it was at the time

8

1   the January 16 Order was filed.  While it is true that the court's March 26 Order made the

2   imposition of the AB 1493 regulations more of a present possibility by holding that those

3   regulations were not preempted by the Energy Policy Conservation Act ("EPCA") or by the

4   foreign policy of the United States, the preemptive effect of the Clean Air Act on the AB

5   1493 regulations remains the same.  CARB's Executive Order changes absolutely nothing.

6        Characterizations of CARB's Executive Order aside, the substance of Plaintiff's

7   contentions with regard to CARB's Executive Order are no different, qualitatively or

8   quantitatively, from their contentions with regard to the scope of the injunctive relief offered

9   by the January 16 Order.  Plaintiffs' and AIAM's basic contention is that the court should

10  broaden the scope of the injunctive relief so that the manufactures are not subjected to the

11  Hobson's choice of unnecessary research and development or risk of regulatory non-

12  compliance.  The court will next undertake examination of Plaintiffs' and AIAM's arguments

13  with respect to the scope of the court's injunctive orders with the understanding that CARB's

14  Executive Order is a non-issue in that discussion.

15        ***B.  Changing Circumstance and the January 16 Injunctive Order***

16        As previously noted, changing circumstance justifies a court's reexamination of

17  previously-issued injunctive orders.  Earth Island Inst., 166 F.Supp.2d at 1309.  Plaintiffs and

18  AIAM allege two circumstances have changed since the court issued its injunctive relief in

19  the January 16 Order.  First, Plaintiffs contend that CARB's Executive Order, to the extent

20  quoted above, constitutes a changed circumstance.  The court has examined and rejected that

21  contention.  Second, Plaintiffs and AIAM contend that the fact EPA has rejected California's

22  request for waiver of federal preemption with respect to its AB 1493 regulations is a changed

23  circumstance warranting re-examination of the injunctive orders.  This contention is similarly

24  not persuasive.

25        While it is certainly true that the Administrator has issued a rejection of California's

26  application for waiver of federal preemption, the rejection cannot be considered final where

27  California has made clear its intent to appeal the decision and the DC Circuit has not made

28  any determination of the validity of EPA's rejection as yet.  Indeed, if the decision of the

1  EPA were final, there would be no point in the instant motions because the January 16

2  injunction against enforcement by California would remain in effect.  The fact that Plaintiffs

3  and AIAM have moved to enlarge the scope of the court's injunctive relief in light of EPA's

4  action on California's waiver request is implicit recognition that EPA's rejection of

5  California's request for waiver remains very much a contested issue that is subject to reversal

6  either by EPA or by judicial review or by legislative action at sometime in the future.

7       While EPA's refusal to grant California its request waiver of federal preemption is an

8  event of sorts in California's effort to enforce its AB 1493 regulations, it does not represent a

9  change of circumstances that would compel reexamination of this court's injunctive relief

10 granted in the January 16 Order.  At the time the January 16 Order was filed, California had

11 not been granted a waiver of federal preemption.  That remains the case as of this writing.

12 Plaintiffs are not entitled to a revision of the injunctive relief granted by this court on a theory

13 of changing circumstances.

14       ***C. Equitable Considerations and the Scope of Injunctive Relief***

15       The remainder of Plaintiffs' arguments concerning the scope of relief granted by the

16 January 16 Order focus on the inequity Plaintiff-manufacturers claim they face in confronting

17 the Hobson's choice of committing financial resources to compliance with regulations that

18 may never be implemented, but will place non-compliant manufacturers at a significant

19 disadvantage if they ever are implemented.  In its January 16 Order, the court held:

20       Plaintiffs' concerns with respect to the lead time necessary for regulatory
         compliance, as expressed in their opposition to the Plaintiffs' instant motion
21       for summary judgment, cannot be redressed by the court because the FAC
         does not request the court to mandate some particular lead time for
22       compliance should an EPA waiver become effective and does not offer any
         legal basis for altering the California legislation to require such a mandate.

23 January 16 Order at 10:9-13.  The court further opined in its order that discretion to make the

24 determination of adequate lead time was vested in EPA by the terms of the Clean Air Act and

25 there is no legal support for the contention this court has authority to modify or circumscribe

26 the authority vested in EPA by the Clean Air Act.

27       Plaintiffs contend that the court was erroneous to the extent it opined that EPA has

28

authority to modify or determine lead times for the enforcement of new standards adopted by California.  As Plaintiffs put it, EPA is without "plenary authority to modify a California regulation in the manner suggested by Defendant."  Combining this assertion with the undisputed fact that the starting point for the running of the lead-time clock is the date of final adoption of the regulation by California, Plaintiffs assert that EPA is not able to address inequities that may arise from the eventual grant of a waiver of federal preemption where, as here,  the waiver may occur at a time well after a substantial part of the lead time has run.  From this, Plaintiffs contend that it is this court that must prevent an inequitable outcome by expanding the scope of injunctive relief so that the Plaintiff auto manufacturers are not unfairly burdened.

For purposes of Plaintiffs' motions under consideration here, the court need not make a determination of whether EPA can, in fact, make adjustments to the lead time provided by California's AB 1493 regulations.[1]  In its January 16 Order, the court observed:

> . . . whatever California may seek to impose by way of enforcement dates, the fact is that the final decision with respect to the establishment of reasonable enforcement dates rests with EPA's discretion.  EPA is not a party to this case, and this court consequently has no authority to impose limits on EPA's exercise of discretion, should it choose to exercise that discretion at some time in the future.

January 16 Order, Doc. # 606, at 10:10-14.  The court's observation derives from the statutory structure of the waiver process.  The waiver provisions of the Clean Air Act provide that a waiver of federal preemption shall be granted if, *inter alia*, the Administrator [i.e., the Director of the EPA] finds that the proposed regulations and enforcement procedures are not inconsistent "with section 7521(a) of this title."  42 U.S.C. § 7543(b)(1)(C).  Section 7521(a)(2) provides that:

Any regulation prescribed under paragraph (1) of this subsection (and any

---

[1]      At a minimum, information submitted by Defendants strongly suggests that, should EPA determine that lead time provided by California be insufficient, EPA can make that determination thereby forcing California to revise and re-adopt its regulation incorporating lead-times that are in accord with EPA findings.  The re-adopted regulation is then approved by EPA.  See Decision Document at 40.

> revision thereof) shall take effect after such period as the *Administrator finds*
> *necessary* to permit the development and application of the requisite
> technology, giving appropriate consideration to the cost of compliance within
> such period.

Id. (italics added).  Thus, Congress has allocated the determination of what lead-time is required to implement a given regulation to the Administrator [Director of the EPA] in the first instance, not the courts.

Defendant and Defendant-intervenors contend, and the court has agreed, that the issue of determination of the required lead time for implementation of changes necessary to comply with the AB 1493 regulations has been committed to the EPA, not the courts.  Defendant disputes Plaintiffs' contention that EPA lacks power to adjust the starting point for the running of any time limits for compliance imposed by the AB 1493 regulations.  Defendants cite Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie, 508 F.Supp.2d 295, 349 (D. Vt. 2007), to illustrate their point that EPA may, if it finds the statutory lead-time insufficient, delay implementation of the waiver in order to provide adequate lead time.  Defendants also allege in their opposition, somewhat in passing, that experts for Plaintiff automobile manufacturers are currently capable of complying with the near-term standards set by the AB 1943 regulations.

In their reply, Plaintiffs seize upon Defendant's allegation that compliance with the near-term standards set by the AB 1493 regulations is not possible and that injunctive relief is necessary to avert future economic harm.  Plaintiffs devote a good deal of effort and a great deal of documentation to show that, should EPA grant a waiver of federal preemption now, there is no reasonable possibility that the Plaintiff auto manufacturers will be able to comply with the AB1493 regulations within the time limits that began to run when California adopted the regulations.  Plaintiffs look to this court to supply protection against what they perceive as the possibility of exposure to economic harm from non-compliance with a regulatory regime whose requirements they are unprepared to meet.

In requesting this court modify the scope of injunctive relief granted by the January 16 Order, Plaintiffs and AIAM fundamentally misperceive the purpose of the court's injunction.

12

The court's purpose in granting the injunction was to prevent California from enforcing the terms of their AB1493 regulations so long as such enforcement is unlawful under the Clean Air Act, nothing more.

While the court is mindful of the concerns raised by Plaintiff automobile manufacturers in their motion, it is not this court's role to assure that they will have sufficient time to actually implement the required changes if and when the waiver of federal preemption is granted.  This court is not empowered to make the necessary determination of how much lead time is necessary where Congress has clearly and unequivocally delegated that determination to EPA.

To the extent it is Plaintiffs' contention that the court has jurisdiction to preemptively override any possible future determination by EPA as to the appropriate lead-time, Plaintiffs have not provided adequate legal support for that contention.  However, even if the court was empowered to address the equitable concerns raised by Plaintiffs by expanding the scope of the injunctive relief, Plaintiffs have failed to demonstrate any entitlement to equitable relief from the application of California's AB 1493 regulations.

Equitable relief is the result of, among other things, a balancing of hardships in favor of the party requesting the injunctive relief.  International Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 822 (9th Cir.1993).  While Plaintiffs complain of the unfairness to them from being forced into the previously discussed Hobson's choice, they fail to address how the harm they may experience in having to make a difficult business decision outweighs the harm to California from lost opportunity to reduce greenhouse gas emissions and harm to those automobile manufacturers who made the decision to devote resources to meeting the AB 1493 regulations within the lead time provided.  See Int'l Harvester Co. v. Ruckelshaus, 478 F.2d 615, 637,638 (D.C. Cir. 1973) (examining adequacy of EPA's examination of effects of relaxation of lead-time provisions on public welfare and on companies that invested in methodologies to achieve compliance within the original lead time).  To the extent Plaintiffs claims there is an inherent inequity in being force to make the complained-of decision, Plaintiffs are obliged to recognize and address the burdens that a court-imposed modification

13

1    of the proper lead time as determined by EPA would place on others.  Plaintiffs are then

2    required to show how the burden placed on them by the un-modified regulations is more

3    weighty.  This balancing of burdens has not been addressed to any significant degree.

4         At an even more fundamental level, Plaintiffs have failed to show how issues of

5    equity are implicated here.  Plaintiffs' argument invites the court to view the choice the auto

6    manufacturers feel forced into as being inequitable in and of itself, but provides no legal

7    foundation for such a view.  Environmental regulation is a constantly evolving part of the

8    normal business landscape and Plaintiffs provide no basis for the notion that courts should

9    insulate businesses from the consequences of business decision that are related to pending

10   environmental regulation.

11        There is no suggestion by any party that Plaintiffs were unaware of California's AB

12   1493 regulations at the time of their adoption, if not before.  Plaintiffs' arguments suggest,

13   without actually so stating, that at least some of the Plaintiff auto manufacturers made a

14   conscious decision to proceed on the assumption that a waiver of federal preemption would

15   never be granted by EPA.  If it turns out that the manufacturers that made that assumption are

16   wrong, those Plaintiff auto manufacturers may well be at a significant disadvantage relative

17   to auto manufacturers that are currently positioned more favorably with respect to

18   compliance.  But, so far as this court can discern, the choice to proceed as though California

19   would never be granted waiver of federal preemption is fundamentally just a business

20   decision that, like any other, may have negative consequences if wrongly made.  It is not up

21   to the courts to deflect the burden of such business decisions.

22

23        In accordance with the foregoing discussion, the motions of Plaintiffs and AIAM to

24   modify the injunctive relief granted by this court's January 16 Order is DENIED.  AIAM's

25   motion to reexamine the court's prior interpretation of section 209 of the Clean Air Act is

26   likewise DENIED.  The parties are ORDERED to meet and confer to determine if there are

27   any remaining issues in this case.  The parties shall file a stipulation, or, if agreement is not

28   reached, shall file separate letters stating their determinations of whether any issues remain

14

for this court to decide. If the parties agree that no issues remain for decision in this case, the parties shall jointly or separately file a proposed order of judgment.  Letters or stipulations regarding issues remaining in this case and/or joint or separate proposed orders of judgment shall be filed not later that thirty (30) days from the date of service of this order.

IT IS SO ORDERED.

**Dated:**   **June 23, 2008**                              **/s/ Anthony W. Ishii**
                                                    UNITED STATES CHIEF DISTRICT JUDGE